IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MOBILITY WORKX, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> Defendant. | Civil Action No.: 4:17-CV-00872-ALM <br><br> JURY TRIAL DEMANDED |

**DEFENDANT'S MOTION TO STRIKE AND EXCLUDE CERTAIN PORTIONS OF THE EXPERT TESTIMONY OF SUKUMARAN NAIR, Ph.D.**

# TABLE OF CONTENTS

                                                                      **Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF EXHIBITS ................................................................................................ iii

I.     INTRODUCTION ............................................................................................. 1

II.    LEGAL STANDARD ....................................................................................... 1

        A.     Legal Standard for Motions to Strike ................................................... 1

        B.     Legal Standard for *Daubert* Motions .................................................. 2

III.   ARGUMENT ..................................................................................................... 3

        A.     Dr. Nair Improperly Introduces New Theories of Infringement Absent from Mobility's ICs That Should Be Stricken. ........................ 3

                1.     The '417 Patent ......................................................................... 3

                1.     The '330 Patent ......................................................................... 4

        B.     Dr. Nair's Incomplete and Conclusory Opinions Fail to Meet the Threshold Under *Daubert* and Should Be Excluded. ............................ 5

                1.     The '417 Patent ......................................................................... 5

                2.     The '330 Patent ......................................................................... 9

IV.   CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
   No. 6:09–cv–116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ................................................1

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................................2

*Genband US LLC v. Metaswitch Networks Corp.*,
   No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688 (E.D. Tex. Jan. 7, 2016) ................................2

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007) ...................................................................................................2

*Johnson v Arkema, Inc.*,
   685 F.3d 452 (5th Cir. 2012) ...................................................................................................6

*KlausTech, Inc. v. Google LLC*,
   No. 10-cv-05899-JSW-DMR, 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) ........................2

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................................2

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006) ...............................................................................................2

*Opal Run LLC v. C & A Mktg., Inc.*,
   No. 2:16-CV-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017) ........................2, 4

*ROY-G-BIV Corp. v. ABB, Ltd.*,
   63 F. Supp. 3d 690, 699 (E.D. Tex. 2014) ..............................................................................2

*Saffran v. Johnson & Johnson*,
   No. 2:07-CV-451, 2011 WL 197871 (E.D. Tex. Jan. 20, 2011) ..........................................2, 7

*Sycamore IP Holdings LLC v. AT&T Corp., et al.*,
   No. 2:16-CV-588 (E.D. Tex. Oct. 10, 2017) (Bryson, J., sitting by
   designation) .............................................................................................................................5

**RULES**

FED. R. CIV. P. 26(a)(2) ..................................................................................................................2

L.R. CV-7(l) ....................................................................................................................................1

# TABLE OF EXHIBITS

| Exhibit | Reference |
|---|---|
| **Ex. 1** | U.S. Patent No. 8,213,417 ("'417 Patent") |
| **Ex. 2** | U.S. Patent No. 7,231,330 ("'330 Patent") |
| **Ex. 3** | Chart of Asserted Claims of the '417 and '330 Patents |
| **Ex. 4** | Plaintiff's P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions for the '417 Patent |
| **Ex. 5** | Plaintiff's P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions for the '330 Patent |
| **Ex. 6** | Updated Expert Report by Dr. Sukumaran Nair dated June 20, 2019 |
| **Ex. 7** | Expert Report by Dr. Sukumaran Nair dated May 16, 2019 |
| **Ex. 8** | Excerpts from Verizon's Rebuttal Expert Report of James A. Proctor, Jr., M.S.E.E. Regarding Non-Infringement of the Asserted Claims dated July 4, 2019 |
| **Ex. 9** | Excerpts from "Verizon Wireless Requirement Plan" dated February 2019 (MWVZ00001843–2092) |

## I. INTRODUCTION

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") respectfully moves to strike and exclude certain opinions contained in the Updated Expert Report of Dr. Sukumaran Nair with regard to the alleged infringement of Claims 1, 4, and 7 of U.S. Patent No. 8,213,417 ("'417 Patent") and Claims 1, 3, and 4 of U.S. Patent No. 7,231,330 ("'330 Patent") served by Plaintiff Mobility Workx, LLC ("Mobility") on June 20, 2019.[1]  Specifically, Verizon moves to strike new infringement theories improperly introduced in Dr. Nair's report that were absent in Mobility's Infringement Contentions ("ICs"), and to exclude under *Daubert* certain opinions of Dr. Nair that are incomplete, conclusory, and/or conflicting with the Court's claim construction.[2]

## II. LEGAL STANDARD

### A. Legal Standard for Motions to Strike

This Court requires a party claiming infringement to serve proper ICs that provide a defendant with notice of a plaintiff's infringement theories. *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09–cv–116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010).  "Expert infringement reports may not introduce theories not previously set forth in infringement

---

[1] To be sure, Mobility initially served its original Expert Report of Dr. Nair on May 16, 2019. *See* Ex. 7.  Pursuant to the Court's partial grant of Mobility's Emergency Motion to Amend the Scheduling Order, Mobility served its Updated Expert Report, which is substantially identical to the initial report and which supersedes the initial report.  Dkt. 88; *compare* Ex. 6 *with* Ex. 7.  Accordingly, Verizon need only move to exclude the Updated Expert Report.

[2] In addition, Verizon believes that the Rebuttal Expert Report of Dr. Sukuraman Nair Regarding the Validity of U.S. Patent Numbers 8,213,417 and 7,231,330 ("Rebuttal Report") should be stricken as untimely, where Mobility served the report two days late on Saturday, July 6, 2019, without any explanation, excuse, or request for leave, and the Court ordered rebuttal reports to be filed on July 4, 2019.  Dkt. 92.  This is just the latest in a string of incidents in which Mobility flouts the Court's local rules and deadlines; Mobility has now filed three "emergency" motions that fail to conform to L.R. CV-7(l), filed an oversize Markman brief without previously seeking leave (Dkt. 66), failed to timely respond to 30 Requests For Admission, and failed to follow the requirements of the Court's scheduling order regarding the service of reports for "ALL" experts.

contentions." *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014); *see also Opal Run LLC v. C & A Mktg., Inc.*, No. 2:16-CV-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017) (striking newly introduced infringement theories when plaintiffs could have identified them in their infringement contentions based on publicly available information). The inquiry is whether the undisclosed theory "is in fact a new theory or new element of the accused product to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the theory is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation." *KlausTech, Inc. v. Google LLC*, No. 10-cv-05899, 2018 WL 5109383, at *3 (N.D. Cal. Sept. 14, 2018).

### B. Legal Standard for *Daubert* Motions

The trial court acts as a "gatekeeper" to expert testimony by assessing the soundness of the expert's methodology to exclude junk science, but the existence of sufficient facts and a reliable methodology is in all instances mandatory. *See, e.g.*, *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Daubert*, 509 U.S. at 589-90. "Expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *ROY-G-BIV Corp.*, 63 F. Supp. 3d at 699 (citing FED. R. CIV. P. 26(a)(2)). Conclusory opinions unsupported by facts or data and based on no discernable principles and methods are inadmissible. *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at *2 (E.D. Tex. Jan. 7, 2016). Moreover, expert testimony that conflicts with the Court's constructions is neither relevant nor helpful to the jury. *See, e.g.*, *Saffran v. Johnson & Johnson*, No. 2:07-CV-451, 2011 WL 197871, at *3–4 (E.D. Tex. Jan. 20, 2011); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 & n.2 (Fed. Cir. 2006).

## III. ARGUMENT

For brevity, the asserted claims of the '417 and '330 Patents are reproduced in Exhibit 3 and Verizon makes reference to each claim element by the bracketed annotations in Exhibit 3.

### A. Dr. Nair Improperly Introduces New Theories of Infringement Absent from Mobility's ICs That Should Be Stricken.

Dr. Nair's report improperly introduces several new theories of infringement that were absent from Mobility's ICs. As such, these new arguments should be stricken.

#### 1. The '417 Patent

Without any analysis, Dr. Nair introduces a new theory of induced infringement absent from Mobility's ICs. *See* Ex. 6, ¶ 23. Regarding Claim Element [417.1c] requiring a "home agent," Mobility's ICs accused the network node called the Serving Gateway (S-GW). Ex. 4, 14-15. In contrast, Dr. Nair identifies the PDN Gateway (P-GW) as the "home agent." Ex. 6, ¶¶ 210-15. Likewise, regarding Claim Element [417.1d] requiring a "foreign agent," Mobility's ICs accused only the "Evolved Node B (eNB)," but Dr. Nair identifies "the eNodeB/S-GW component by itself or in conjunction with the S-GW." Ex. 4, 16-17; Ex. 6, ¶¶ 216-23. As his own report shows, the S-GW and P-GW are completely different network nodes with different functionalities and responsibilities. *See* Ex. 6, ¶¶ 202-05; *see also* Ex. 8, ¶¶ 37-68.

Regarding Claim Element [417.7c], Dr. Nair introduces several new, independent theories of infringement—*i.e.*, triangulation, E911 requirements, Minimized Drive Test, and "Proximity Indication" for femtocells.[3] Ex. 6, ¶¶ 246-50. None of these theories were in Mobility's ICs, which only identified certain handover events and a "LocationInfo" element that allegedly "determine[s] a distance." Ex. 4, 43-45. While the theories in the ICs bore some

---

[3] These theories are also discussed in more detail in Verizon's Motion for Summary Judgment of Non-Infringement. Dkt. 95, 17-20.

relation to the accused LTE handovers, Dr. Nair's newly introduced theories have no connection to the accused handovers, and his "Proximity Indication" theory involves entirely different network equipment called CSG cells and different processes that were also never accused and are not within the scope of this lawsuit. *See* Ex. 6, ¶¶ 250-51. Further, his analysis for Claim Element [417.7d] is entirely based on this "Proximity Indication" theory, which again is absent from Mobility's ICs. *See* Ex. 4, 46-47; Ex. 6, ¶¶ 251-52.

### 1. The '330 Patent

Dr. Nair's report as to the '330 Patent relies on several theories that were not disclosed in Mobility's Complaint or ICs: (1) a theory of induced infringement; (2) a doctrine-of-equivalents theory ("DOE"); and (3) accusations against previously undisclosed manufacturers and products. First, Dr. Nair and Mobility's entire theory of infringement appears to be that Verizon *induces* infringement by mobile device manufacturers performing compliance tests. Ex. 6, ¶ 22. This theory of indirect infringement is based on Verizon Open Network Development specifications intended for third-party consumption and is completely new; Mobility's Complaint and ICs only alleged that Verizon directly infringes the Asserted Claims of the '330 Patent. Dkt. 1, ¶ 63; Ex. 5, 3, 7, 11, 14, 17, 23, 30, 32. Dr. Nair's entire analysis for the '330 Patent is premised on this new theory of induced infringement, and should be stricken. *See* Ex. 6, ¶¶ 19, 22, 82-89, 91-102, 104-109, 113, 115-116, 120, 131-149, 152-161. The introduction of new theories of inducement in the first instance in an expert report is impermissible.

Next, Dr. Nair relies on DOE theories in his report, whereas Mobility's Complaint and ICs *only* asserted that Verizon literally infringes the Asserted Claims of the '330 Patent. Dkt. 1, ¶¶ 63, 65; Ex. 5, 2, 3. Dr. Nair's sole contention with respect to DOE was a bare recitation of the "function-way-result" test and that "any differences . . . are insubstantial." Ex. 5, 2. "[B]oilerplate allegations . . . [in] infringement contentions are insufficient" to preserve such

arguments.[4] *Sycamore IP Holdings LLC v. AT&T Corp., et al.*, No. 2:16-CV-588 (E.D. Tex. Oct. 10, 2017) (Bryson, J., sitting by designation).

Finally, Dr. Nair lists a variety of equipment and manufacturers throughout his report that were not included in the Complaint and the ICs and as such are not included within the scope of this lawsuit. Ex. 6, ¶¶ 87, 104-109, 140, 152. In the Complaint and ICs, Mobility only identified Verizon's Accused Testing Service as comprising various Spirent products. Dkt. 1, ¶¶ 68, 69; Ex. 5, 5. In contrast, in his report, Dr. Nair identifies manufacturers such as Rohde & Schwarz, ANITE, Anritsu, Cetecom, Comprion, Setcom, SGS, W2BI, WITS, and 7 Layers, for example. Ex. 6, ¶ 106. Notably, all of the evidence that Dr. Nair relies upon in identifying these manufacturers is publicly available information. *See Opal Run*, No. 2:16-CV-24-JRG-RSP, 2017 WL 3381344. Although Dr. Nair's analysis with respect to these manufacturers is woefully deficient and conclusory as explained further *infra* Section III.B.2, his opinions should be stricken for the independent reason that these manufacturers and products were not adequately disclosed in the Complaint or the ICs.

### B. Dr. Nair's Incomplete and Conclusory Opinions Fail to Meet the Threshold Under *Daubert* and Should Be Excluded.

#### 1. The '417 Patent

For every limitation of the asserted claims of the '417 Patent, Dr. Nair's analysis is incomplete, based on insufficient evidence, and/or outright conclusory. Beginning with Claim Element [417.1a], which both parties agree is a limiting preamble, Dr. Nair boldly alleges that "Proxy Mobile IPv6 is part of the requirement set by Verizon for all LTE products," but his only basis is a quote from a *draft* document dated February 2019 relating only to Verizon's LTE Band

---

[4] These DOE theories are also addressed in Verizon's Motion for Summary Judgment of Non-Infringement. *See* Dkt. 95, 24.

13 network access that states: "IP mobility shall be handled by GTP *and/or* Proxy Mobile IPv6." Ex. 6, ¶ 207 (emphasis added); Ex. 8, ¶¶ 155-63; Ex. 9, 1, 33, 81. That is, Dr. Nair makes an extreme generalization of Verizon's entire LTE network over the entire period of alleged infringement based on a very recent document about one particular segment of Verizon's network which refers to an *optional feature*. This faulty analysis fails to meet the *Daubert* standard as a matter of law. *See Johnson v Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) ("The reliability prong [of *Daubert*] mandates that expert opinion be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief.").

For Claim Elements [417.1c] and [417.1d], Dr. Nair provides an incomplete analysis for his identification of the P-GW as the "home agent" and the "eNodeB/S-GW component by itself or in conjunction with the S-GW" as the "foreign agent." The Court construed "foreign agent" as "a network node *on a visited network* that assists the mobile node in receiving communications," yet he fails to explain what aspect of Verizon's LTE network satisfies the required claim element of a "visited network." *See* Ex. 6, ¶¶ 216-23. Similarly, he defines a "home agent" as "the agent that resides *in the home network*," but fails to identify what satisfies the required claim element of a "home network." *See id.*, ¶¶ 210-15. Clearly the definition and identification of the "home network" and "foreign network"—which both parties agree are *separate* networks—is critical to proving infringement of claims requiring a "home agent" and "foreign agent," respectively. *See id.*, ¶ 219 ("[W]hen a mobile phone moves away from its home network and away from the home agent's local network, it will be in a foreign network or visited network."); *see also* Ex. 8, ¶¶ 106-19, 166-93. Without identifying the underlying "home network" and "visited network," Dr. Nair's identification of the "home agent" and "foreign agent" is baseless. Further, Dr. Nair tries to redefine "visited network" on the basis of IP

6

addresses and tunneling (Ex. 6, ¶¶ 220-22), but the Court specifically rejected Mobility's attempt to do the same during claim construction:

> Plaintiff presented no evidence that tunneling is always necessary for the claims to be operable, and Plaintiff cited nothing in the specification that defines "foreign agent" in terms of tunneling. . . . Plaintiff has neither submitted evidence demonstrating that "network prefix" has a readily understood meaning nor shown that this limitation is compelled by any particular evidence. Indeed, Plaintiff has urged the Court *not* to limit the claims to Mobile IP . . .

*See* Dkt. 74, 7-13; *Saffran*, 2011 WL 197871, at *3–4.

For Claim Element [417.1e] requiring "a ghost-foreign agent," the parties' agreed construction is "a virtual node corresponding to a foreign agent that can make a mobile node aware of the corresponding foreign agent's presence in a communication network ***proximate to the predicted future location of the mobile node***." Dkt. 74, 6. Dr. Nair briefly identifies certain system messages but provides no analysis whatsoever as to how the future location of a mobile node is "predicted" and why the alleged foreign agent(s) identified are proximate to that "predicted future location." *See* Ex. 6, ¶¶ 224-30. Similarly, Claim Element [417.1f] requires a "ghost-mobile node that ***creates replica IP messages*** . . . ***triggering signals based on a predicted physical location of such mobile node or distance*** with relation to the at least one foreign agent," but Dr. Nair fails to address these limitations in his analysis.[5] *Id.*, ¶¶ 231-37.

For Claim Element [417.4], Dr. Nair mistakenly recites Claim Element [417.1f] and leaps to the conclusion that "Verizon infringes Claim 4." *Id.*, ¶¶ 238-40. In that leap, he fails to provide any analysis of Claim 4, which requires "the at least one ghost mobile node is ***a proxy element*** for the at least one foreign agent and the at least one mobile node, the at least one ghost-

---

[5] The absence of a "predicted physical location of such mobile node or distance" is discussed in more detail in Verizon's Motion for Summary Judgment of Non-Infringement. *See* Dkt. 95, 17.

7

mobile node *triggering registration based on a distance to a foreign agent by relaying security and shared secrets from a mobile node*, and *at least one advertisement message from a foreign agent in a vicinity of the ghost-mobile node*," especially the emphasized elements.

For Claim Element [417.7b], Dr. Nair cites to the same Verizon-branded document discussed above to state that "[t]he location information or position [of a mobile node] is copied over to the eNodeB by Verizon. This is done by the Measurement Report and it contains device's location." Ex. 6, ¶ 244. As stated earlier, the information cited from this document is not representative of Verizon's LTE network as a whole, and Dr. Nair relies on information related to "Minimization of Drive Test," which is directed to testing and not for regular use of Verizon's LTE network. *See* Ex. 8, ¶¶ 162, 257-60; Ex. 9, 145-146.

For Claim Element [417.7c], Dr. Nair provides newly introduced infringement theories, as discussed above, but for each one he fails to provide an explanation of how it "determin[es] a distance, in the ghost mobile node . . . , to a closest foreign agent with which the mobile node can complete a handover" as required. *See* Ex. 6, ¶¶ 246-50; *see also* Ex. 8, ¶¶ 262-71.

For Claim Element [417.7d], Dr. Nair opines that "this elementi [sic] is met by Verizon's X2 handover and CSG cells/eNodeBs," but his cursory analysis only discusses a particular handover process involving CSG cells, which is not accused in this case. *See* Ex. 6, ¶¶ 251-53.

For Claim Element [417.7e], in the most conclusory manner possible, Dr. Nair simply restates the claim language—"upon completion of the handover a registration is updated in the mobile node"—and provides no further analysis. *See id.*, ¶¶ 254-55.

Finally, Dr. Nair alleges that "Verizon actively induces its customers and end users (who use the Verizon LTE Network) to infringe," but no analysis of induced infringement is present in the entirety of Dr. Nair's report for the '417 Patent. *See* Ex. 6, ¶ 23.

8

### 2. The '330 Patent

Like the '417 Patent, for nearly every limitation of the Asserted Claims, Dr. Nair's analysis is based on insufficient evidence and conclusory allegations. First, for Claim Element [330.1b], critically requiring "a plurality of *fixedly-located* wireless network nodes," Dr. Nair fails to provide any analysis regarding whether any of the alleged wireless network nodes that he has identified are "fixedly-located," as required by all Asserted Claims.[6] *See* Ex. 6, ¶¶ 94-134. Indeed, they are not "fixedly-located,"—a fact that is fatal to Mobility's claim.

For Claim Element [330.1c], requiring a mobile node that "*wirelessly* communicate[s]" with the wireless network nodes, Dr. Nair fails to provide any allegations or analysis as to how the connection between the mobile node and the wireless network nodes is *wireless*. Rather than provide any analysis based on documentary evidence, Dr. Nair makes conclusory allegations and then jumps to conclusions, such as, wireless tests are "the most effective way to test a phone" and therefore the mobile node is "configured to wirelessly communicate with the wireless network nodes." Ex. 6, ¶¶ 131-34. But nowhere does Dr. Nair provide any analysis of a specific mobile node being configured to wirelessly communicate with any specific wireless network node, nor identify any accused equipment that allegedly implements that wireless network node. Rather, Dr. Nair generally alleges in the abstract, without support, that unidentified mobile nodes are "configured to wirelessly communicate with the [unidentified] wireless network nodes." This amounts to a bare recitation of the claim language and should be stricken for failure to adequately support his opinions.

For Claim Element [330.1d], requiring a "network emulator communicatively linked to

---

[6] This limitation is discussed in more detail in Verizon's Motion for Summary Judgment of Non-Infringement. Dkt. 95, 21-23.

each of said plurality of wireless network nodes" and configured to emulate various attributes of a packet-based wired communications network, Dr. Nair merely points to various uses of the term "network emulator" in various documents. Ex. 6, ¶¶ 135-140. But, again, Dr. Nair fails to examine how any of these references to "network emulators" satisfy other limitations of this element, including how those emulators might be "communicatively linked" to the wireless network nodes, as required by the claim language. Indeed, for each limitation, Dr. Nair fails to provide an analysis of how any of the identified equipment is used in combination to form the "system" that, as a whole, allegedly infringes Claim 1. Rather, Dr. Nair's "analysis" comprises scattershot references to the terms in the limitations, without any discussion as to the relevance of those terms.

Finally, for Claim Element [330.1e], Dr. Nair again simply identifies various pieces of equipment as the "controller" without analysis. *See* Ex. 6, ¶ 152. For example, Dr. Nair opines that "Spirent, Anritsu, ANITE, and all other providers use a laptop or controller to turn on and control the simulation." *Id.* But Dr. Nair does not identify how or whether the alleged controllers infringe the various limitations of Element [330.1e], such as requiring that the controller simulate mobile communication conditions "without changing operating parameters" of the mobile node. Dr. Nair's conclusory allegations to the contrary should be stricken.

## IV. CONCLUSION

Because "[e]xpert infringement reports may not introduce theories not previously set forth in infringement contentions," and "[e]xpert reports must include a complete statement of the expert's opinions, the basis and reasons for them," *ROY-G-BIV*, 63 F. Supp. 3d at 699, Verizon respectfully requests that the Court strike Dr. Nair's opinions and preclude Dr. Nair from testifying as set forth above.

Dated: July 12, 2019                                   Respectfully submitted,

By: */s/ Ross R. Barton*
Ross R. Barton (NC Bar No. 37179)
ALSTON & BIRD LLP
101 South Tyron Street, Suite 4000
Charlotte, North Carolina, 28280
Phone: (704) 444-1000
Fax:     (704) 444-1111
ross.barton@alston.com

Michael J. Newton (CA Bar No. 156225)
ALSTON & BIRD LLP
1950 University Avenue
5th Floor
East Palo Alto, CA 94303
Phone: (650) 838-2000
Fax: (650) 838-2001
mike.newton@alston.com

Sang (Michael) Lee (TX Bar No. 24083378)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
michael.lee@alston.com

Darlena H. Subashi (NC Bar No. 53142)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY  10016
Phone: (212) 210-1277
Fax: (212) 210-9444
darlena.subashi@alston.com
*Admitted to practice in North Carolina and Massachusetts only.

E. Leon Carter (TX Bar No. 03914300)
Scott W. Breedlove (TX Bar No. 00790361)
CARTER ARNETT PLLC
8150 N. Central Expressway, Suite 500
Dallas, TX 75206
Phone: (214) 550-8188
Fax: (214) 550-8185
lcarter@carterarnett.com

sbreedlove@carterarnett.com

*Attorneys for Defendant Cellco Partnership, D/B/A Verizon Wireless*

## CERTIFICATE OF CONFERENCE

Pursuant to Eastern District of Texas Local Rule CV-7(h), I certify that counsel met and conferred telephonically on June 28, 2019, July 1, 2019, and July 10, 2019, in a good faith effort to resolve all issues regarding Verizon's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. The parties met and conferred on June 28, 2019, July 1, 2019, and July 10, 2019 (which included Ross R. Barton on behalf of Verizon and Michael Machat on behalf of Mobility), but the parties were unable to resolve their differences and an impasse was declared.

*/s/ Ross R. Barton*
Ross R. Barton

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that certain exhibits to this document that were designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" are being filed under seal pursuant to the Court's authorization in Paragraph 15 of the Protective Order entered in this matter.

*/s/ Ross R. Barton*
Ross R. Barton

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2019, a true and correct copy of certain exhibits to this document that are being filed under seal have been served via e-mail on all counsel or parties of record.

*/s/ Ross R. Barton*
Ross R. Barton
