**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| **MOBILITY WORKX, LLC,** | |
| **Plaintiff,** | |
| | **Civil Action No.: 4:17-CV-00872-ALM** |
| **v.** | |
| **CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,** | |
| | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**VERIZON'S MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

MIL 1. Preclude references by Mobility to discovery disputes, including any suggestion that Verizon has not engaged in good-faith discovery, withheld, or failed to produce material to which Mobility claims to be entitled, and any reference to the assertion of objections or the assertion of privileges or confidentiality that occurred pre-trial or during discovery. .............................................................. 1

MIL 2. Exclude evidence and arguments on conspiracy theories. ................................... 2

MIL 3. Exclude arguments or expert testimony outside the context of the experts' Rule 26 reports, including new theories raised in Mobility's MSJ briefing and proposed supplemental expert reports. ........................................................................... 3

MIL 4. Exclude any evidence, argument, or suggestion regarding the Court's claim construction order other than the constructions themselves, including any reference to the parties' positions, the Court's rationale, and arguments inconsistent with the Court's claim construction............................................................ 5

MIL 5. Exclude any discussion of the size, total value, net worth, or total revenue of Verizon or its suppliers; any mention of the price of what end users pay for cell phone service, or the total amount paid to Verizon by its wireless subscribers. ................ 6

MIL 6. Exclude evidence, argument, or suggestion of copying or theft by Verizon or any of Verizon's vendors.................................................................................... 7

MIL 7. Exclude evidence, argument, or suggestion that any alleged conception date is earlier than July 31, 2002.................................................................................. 7

MIL 8. Exclude evidence, argument, or suggestion regarding expert witnesses who are not called at trial, or expert analyses conducted by experts for parties not in this case....................................................................................................................... 8

MIL 9. Exclude evidence, argument, or suggestion concerning the revenues or profits from products that are not accused products in this case.................................... 8

MIL 10.      Exclude discussion or introduction of exhibits not produced during discovery. ........................................................................................................ 9

MIL 11.      No reference to the presumption of validity at trial.............................. 9

MIL 12.      No reference to indemnification. ......................................................... 10

MIL 13.      Exclude arguments that prior art does not qualify as prior art............................ 10

MIL 14.      Exclude characterization of the burden of proof for the "clear and convincing" standard. ...................................................................................... 11

MIL 15.        Exclude arguments/evidence regarding indirect infringement. ........................... 11

MIL 16.        Exclude arguments/evidence regarding doctrine of equivalents. ........................ 12

MIL 17.        Exclude arguments/evidence regarding Verizon's "Can you hear me now?" advertisements. ................................................................................................ 12

MIL 18.        Exclude arguments/evidence/testimony regarding unaccused products and systems. .......................................................................................................................... 13

MIL 19.        Exclude evidence, argument, or suggestion that commercial success, long-felt need, or other secondary considerations of non-obviousness have a nexus to asserted patents ................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Apple, Inc. v. Motorola Mobility, Inc.*,
 No. 11-cv-178-bbc, 2012 WL 5416941 (W.D. Wis. Oct. 29, 2012) ...................................9, 11

*Barry v. Medtronic*,
 1:14-cv-104-RC (E.D. Tex. Oct. 28, 2016) ............................................................................2

*Black v. Ce Soir Lingero Co.*,
 2:06-cv-544, 2008 WL 3852722 (E.D. Tex. Aug. 15, 2008)..................................................14

*BMC Software, Inc. v. ServiceNow, Inc.*,
 2:14-cv-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ................................................7

*Bosch Automotive Serv. Sols., LLC v. Matal*,
 878 F.3d 1027 (Fed. Cir. 2017)..............................................................................................13

*Chiron Corp. v. Genentech, Inc.*,
 363 F.3d 1247 (Fed. Cir. 2004)................................................................................................9

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
 No. 2:14-cv-911-JRG-RSP, 2016 WL 4374961 (E.D. Tex. Aug. 16, 2016)............................5

*Demaco Corp. v. F. Von Landroff Licensing Ltd.*,
 851 F.2d 1387 (Fed. Cir. 1988)..............................................................................................14

*Elbit Sys. Land & C4I Ltd. V. Hughes Network Sys., LLC*,
 No. 2:15-cv-37-RWS-RSP (E.D. Tex. July 25, 2017)........................................................2, 11

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.*,
 No. 6:09-cv-116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ..............................................13

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
 No. 2:15-cv-1202-WCB, 2017 WL 959592 (E.D. Tex. Mar. 13, 2017)..................................10

*Ericsson v. D-Link*,
 773 F.3d 1201 (Fed. Cir. 2014).................................................................................................6

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
 705 F.3d 518 (5th Cir. 2013) ....................................................................................................8

*Fosmire v. Progressive Max Ins. Co.*,
 277 F.R.D. 625 (W.D. Wash. 2011) .........................................................................................8

*Genband US LLC v. Metaswitch Networks Corp.*,
 2:14-cv-33-JRG-RSP, 2016 WL 12911530 (E.D. Tex. Sept. 30, 2015)...................................1

i

*Halladay v. Verschoor*,
    381 F.2d 100 (8th Cir. 1967) ....................................................................................10

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
    2:16-cv-52-JRG-RSP (E.D. Tex. Sept. 29, 2017) ......................................................6

*Imperium IP Holdings (Cayman) v. Samsung Elecs. Co., et al.*,
    No. 4:14-CV-371, 2016 U.S. Dist. LEXIS 106535 (E.D. Tex. Feb. 1, 2016) ...........7

*Implicit, LLC v. Trend Micro, Inc.*,
    6:16-cv-80-JRG (E.D. Tex. Oct. 3, 2017) ..................................................................6

*In re Antor Media Corp.*,
    689 F.3d 1282 (Fed. Cir. 2012) ................................................................................14

*In re Gabapentin Patent Litigation*,
    No. 00-cv-2931 (FSH), 2011 WL 1807448 (D.N.J. May 12, 2011) ..........................10

*Intellectual Ventures I LLC v. T-Mobile USA Inc.*,
    2:17-cv-577-JRG (E.D. Tex. Jan. 8, 2019) ................................................................6

*LaserDynamics Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ......................................................................................6

*Mobile Telecommc'ns Techs., LLC v. ZTE (USA) Inc.*,
    No. 2:12-cv-00946, 2016 WL 8260584 (E.D. Tex. July 22, 2016) ...........................3

*Opal Run LLC v. C & A Mktg., Inc.*,
    No. 2:16-CV-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017) ..............13

*Polaris PowerLED Techs. LLC v. Samsung Elecs. Am., Inc.*,
    No. 2:17-cv-00715-JRG (E.D. Tex. June 7, 2019) .....................................................9

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    2:13-cv-213-JRG-RSP (E.D. Tex. Jan. 31, 2015) ......................................................2

*ROY-G-BIV Corp. v. ABB, Ltd.*,
    63 F. Supp. 3d 690 (E.D. Tex. 2014) .......................................................................11

*SimpleAir, Inc. v. Google Inc.*,
    No. 2:14-cv-11-JRG (E.D. Tex. Oct. 6, 2015) ...........................................................7

*Stragent, LLC v. Intel Corp.*,
    No. 6:11-cv-421-TBD-JDL (E.D. Tex. Feb. 27, 2014) .............................................11

*Sycamore IP Holdings LLC v. AT&T Corp. et al.*,
    No. 2:16-CV-588-WCB, 2017 U.S. Dist. LEXIS 167297 (E.D. Tex. Oct. 10,
    2017) ........................................................................................................................12

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)................................................................................................6

*Williams v. McCarthy*,
    No. 05-CV-10230 (SAS), 2007 WL 3125314 (S.D.N.Y. Oct. 25, 2007)................................10

*ZiiLabs Inc., Ltd. v. Samsung Elecs. Corp.*,
    No. 2:14-cv-203-JRG-RSP, 2015 WL13617214 (E.D. Tex. Oct. 28, 2015)......................2, 10

## RULES

Fed. R. Civ. P. 26.............................................................................................................................3

Fed. R Civ. P. 37(c) .......................................................................................................................14

Fed. R. Evid. 402 ...............................................................................................................1, 6, 7, 9

Fed. R. Evid. 403 .................................................................................................1, 6, 7, 9, 10, 13

Fed. R. Evid. 411 ...........................................................................................................................10

Fed. R. Evid. 701 .............................................................................................................................4

## STATUTES

35 U.S.C. § 102.................................................................................................................................7

**TABLE OF EXHIBITS**

| Exhibit | Reference |
|:---:|---|
| **1** | Excerpts of the Rough Draft Deposition Transcript of Dr. Sukumaran Nair dated September 6, 2019 ("Nair Rough Tr.") |
| **2** | Excerpts of the June 20, 2019 Updated Expert Report by Dr. Sukumaran Nair ("Updated Nair Report") |
| **3** | Excerpts of Plaintiff's Supplemental Responses to Defendant's First Set of Requests for Admission Number 46 and Beyond to Plaintiff, dated June 14, 2019 ("Supplemental RFA Responses") |
| **4** | Excerpts of the June 29, 2018 P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions for U.S. Patent No. 8,231,417 ("'417 Infringement Contentions") |
| **5** | Excerpts of the June 29, 2018 P.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions for U.S. Patent No. 7,231,330 ("'330 Infringement Contentions") |
| **6** | Excerpts of Plaintiff's Responses and Objections to Plaintiff's [*sic*] First Set of Interrogatories to Defendant [*sic*], dated June 10, 2019 ("Mobility Response to Interrogatories") |
| **7** | Excerpts of the Rebuttal Expert Report of Dr. Sukumaran Nair Regarding the Validity of U.S. Patent Numbers 8,231,417 and 7,231,330, dated July 5, 2019 ("Nair Rebuttal Report") |
| **8** | *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 2:15-cv-37-RWS-RSP (E.D. Tex. July 25, 2017) |
| **9** | *Barry v. Medtronic*, 1:14-cv-104-RC (E.D. Tex. Oct. 28, 2016) |
| **10** | *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2:13-cv-213-JRG-RSP (E.D. Tex. Jan. 31, 2015) |
| **11** | *Intellectual Ventures I LLC v. T-Mobile USA Inc.*, 2:17-cv-577-JRG (E.D. Tex. Jan. 8, 2019) |
| **12** | *Implicit, LLC v. Trend Micro, Inc.*, 6:16-cv-80-JRG (E.D. Tex. Oct. 3, 2017) |
| **13** | *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2:16-cv-52-JRG-RSP (E.D. Tex. Sept. 29, 2017) |
| **14** | *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-11-JRG (E.D. Tex. Oct. 6, 2015) |
| **15** | *Polaris PowerLED Techs. LLC v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00715-JRG (E.D. Tex. June 7, 2019) |
| **16** | *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421-TBD-JDL (E.D. Tex. Feb. 27, 2014) |

███████████████████████████

Cellco Partnership d/b/a Verizon Wireless ("Verizon") respectfully moves *in limine* as follows.

**MIL 1.   Preclude references by Mobility to discovery disputes, including any suggestion that Verizon has not engaged in good-faith discovery, withheld, or failed to produce material to which Mobility claims to be entitled, and any reference to the assertion of objections or the assertion of privileges or confidentiality that occurred pre-trial or during discovery.**

The Court should preclude any reference to discovery disputes between Mobility and Verizon. *See, e.g.*, *Genband US LLC v. Metaswitch Networks Corp.*, 2:14-cv-33-JRG-RSP, 2016 WL 12911530, at *4 (E.D. Tex. Sept. 30, 2015). For example, Mobility should not be permitted to suggest that Verizon failed to comply with its discovery obligations, has not engaged in good-faith discovery, or otherwise made evidence unavailable or inconvenient. In addition, Mobility should not be permitted to reference pre-trial objections or assertions of privilege or confidentiality. In particular, Mobility should not be permitted to blame any failure of proof on its part on Verizon by insinuating that evidence exists but Verizon failed to comply with its discovery obligations and is hiding such evidence from Mobility and from the jury.

Any such allegations of withheld evidence are irrelevant to any issue properly triable to the jury in this case. FED. R. EVID. 402. Moreover, any conceivable probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and wasting time in this case, by distracting the jury from the merits and devolving into a side-show of the parties' discovery conduct. FED. R. EVID. 403. This is particularly true here where Mobility never filed any motions to compel and declined to take the depositions of Verizon's corporate representative on numerous issues, including technical issues related to the '417 Patent. Indeed, Mobility's technical expert, Dr. Suku Nair, testified in his deposition that he "could render [his] opinion with the information [he] had" and that he "got everything that [he] needed" in order to render his opinions. Ex. 1 (Nair Rough Tr.), at 12:16-13:9. This shows that any such complaint by

1

███████████████████████████████

Mobility would not only be prejudicial, but incorrect.

To the extent Mobility had any concern regarding discovery conduct, such concerns should have been timely raised in a motion addressed to the Court, and not the jury. This Court routinely grants motions in *limine* precluding similar evidence. *See, e.g.*, *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 2:15-cv-37-RWS-RSP, at *4 (E.D. Tex. July 25, 2017) (Ex. 8); *Barry v. Medtronic*, 1:14-cv-104-RC, Dkt. 379, at *7 (E.D. Tex. Oct. 28, 2016) (Ex. 9); *Ziilabs Inc. v. Samsung Elecs. Co.*, 2:14-cv-203-JRG-RSP, 2015 U.S. Dist. LEXIS 191430, at *12 (E.D. Tex. Oct. 28, 2015); *Genband US*, 2:14-cv-33-JRG-RSP, 2016 WL 12911530, at *8; *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2:13-cv-213-JRG-RSP, at *11 (E.D. Tex. Jan. 31, 2015) (Ex. 10).

**MIL 2.   Exclude evidence and arguments on conspiracy theories.**

Mobility has repeatedly espoused conspiracy theories in pleadings, expert reports, and deposition testimony, including that the licensing negotiations between at least Mobility and ██ ███ were entered into pursuant to a "criminal conspiracy" between Mobility's prior litigation counsel, its prior patent brokers, and Alston & Bird LLP. *See* Dkt. 102, Ex. 5, 290:1-301:9 (Dr. Hernandez testifying that he was "under suspicion that [Alston & Bird] was in cahoots with ██ ███ and [his] attorneys" and that he "collected evidence" and "sent all this information to the FBI, including the communications between [his] counsel and [them]selves."). In fact, Mobility identified Verizon's trial counsel—Michael Newton at Alston & Bird—in its list of witnesses for trial. Obviously, these allegations are deeply troubling, outlandish, and reflect a disconnect with the facts.

Mobility should not be permitted to present testimony to the jury regarding or suggesting the existence of a conspiracy involving Alston & Bird, its prior counsel, and/or its patent brokers. Similarly, Mobility should not be permitted to present testimony to the jury regarding the

competency or allegedly conflicting interests of its prior counsel and/or patent brokers. If Mobility is not prevented from introducing such unsupported and potentially slanderous testimony, Verizon may be forced to subpoena Mobility's prior counsel (who reside in the Dallas area) to testify at trial. Therefore, all evidence or arguments regarding conspiracy theories should be excluded.

**MIL 3.   Exclude arguments or expert testimony outside the context of the experts' Rule 26 reports, including new theories raised in Mobility's MSJ briefing and proposed supplemental expert reports.**

Experts are limited to the express disclosure of their respective expert reports. Fed. R. Civ. P. 26(a)(2)(B), 37(c)(1); *see also Mobile Telecommc'ns Techs., LLC v. ZTE (USA) Inc.*, No. 2:12-cv-00946, 2016 WL 8260584, at *3 (E.D. Tex. July 22, 2016).   Mobility's attorneys have repeatedly demonstrated their willingness to make arguments that are far beyond the scope of their expert reports.

First, Mobility served "expert witness designations" that purport to designate Dr. Helal and Dr. Hernandez, the principals of Mobility and inventors of the patents-in-suit, as experts on practically every topic in the case, without serving an expert report on the same. This Court's Scheduling Order states that the parties are to provide "expert witness reports, to include for ALL experts all information set out in Rule 26(2)(B)." Dkt. No. 88, 1. Mobility did not serve any expert report from Dr. Helal, despite the fact that Mobility designated Dr. Helal to testify as an expert on any "matters that may be necessary or appropriate to rebut any of Defendant's defenses." Dkt. No. 101, Ex. 1, 3. Mobility should therefore be prevented from presenting Dr. Helal as an expert witness. Although Mobility did serve expert reports on behalf of Dr. Hernandez, they were limited to damages issues. Therefore, Mobility should be prevented from providing testimony by Dr. Hernandez on any issues other than damages, subject to Verizon's *Daubert* motion regarding the same. *See* Dkt. Nos. 101, 102.  For the same reasons, any purported expert opinion or other expert testimony from any expert witness not timely designated as an expert should be excluded.

Second, in opposition to Verizon's summary judgment motion of non-infringement, Mobility's counsel asserted new infringement theories and interpretations that Mobility should be prevented from presenting at trial. For example, Mobility asserted for the first time that the theoretical possibility that the "S" value "represent[ing] the sum of individual cell and frequency offsets" can be negative somehow demonstrates that a "ghost mobile node [is] capable of registering with a foreign agent and allocating resources for the mobile node before the mobile node arrives in the physical area covered by the foreign agent." *See* Dkt. No. 118, 3-4, 10-21. Mobility did not cite to any evidence that Verizon's LTE network could in fact implement a negative "S" value; rather, Mobility's assertion is based purely on conjecture, a mistaken understanding of Verizon's expert's drive test analysis, and a faulty simulation that *assumes* a negative "S" value. *See id.*; Dkt. No. 125, 3-6. Further, Mobility asserted for the first time in its opposition to Verizon's motion for summary judgment that "fixedly located" does not require that the entirety of the wireless network node be "set at a particular location." Rather, Mobility argued that the antenna of the wireless network node may rotate about the body of the wireless network node. *See* Dkt. No. 118, 25-27. Dr. Nair failed to provide *any* analysis that any alleged wireless network nodes are fixedly located. *See* Dkt. 95, Ex. 5, ¶¶ 94-129. Also in opposition to Verizon's summary judgment motion of non-infringement, Mobility filed expert "declarations" on behalf of Dr. Nair. These 71- and 39-page declarations amount to supplemental expert reports on infringement for which Mobility dd not seek leave to serve out of time. As such, Mobility should be prevented from presenting any of their contents to the jury. Therefore, Mobility should be prevented from presenting any expert testimony on these newly alleged theories.

Finally, for the same reasons described above, Mobility should be precluded from presenting lay or fact witnesses offering expert opinions, including whether an asserted prior art

reference or accused product reads on the asserted claims, and what a reasonable royalty would be under a hypothetical negotiation. Such testimony would not be appropriate as presented by a lay witness under Rule 701 of the Federal Rules of Evidence and should therefore be excluded. FED. R. EVID. 701. If Dr. Helal and Dr. Hernandez are excluded as experts, Mobility should not be permitted to attempt to present its expert-witness case under the guise of lay testimony by Dr. Helal and Dr. Hernandez.

**MIL 4.    Exclude any evidence, argument, or suggestion regarding the Court's claim construction order other than the constructions themselves, including any reference to the parties' positions, the Court's rationale, and arguments inconsistent with the Court's claim construction.**

Consistent with this Court's practice, Mobility should be precluded from presenting arguments or evidence that conflict with this Court's claim construction or claim construction order. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 WL 4374961, at *4 (E.D. Tex. Aug. 16, 2016). Two examples are illustrative but not exhaustive.

First, the Court construed the term "wireless" as "without wires or cables, and *only* through air or vacuum" as *agreed* by the parties. Dkt. No. 74 at 7 (emphasis added). But then, Mobility's technical expert, Dr. Nair, asserted that he "interpret[s] the Court's definition of 'wireless' to mean that the communication path that is 'wireless' must be without wires and through air, and *not to mean that there can be absolutely no wires or circuits anywhere in the accused system*." Ex. 2 (Updated Nair Report), at ¶ 114 (emphasis added). Having realized the damage that the agreed-to construction inflicts on its infringement case, Mobility and Dr. Nair must be precluded from presenting this new argument to the jury that a "wireless" connection can consist of a wire.[1]

Second, in construing the term "foreign agent," the Court specifically *rejected* Mobility's

---

[1] For the same reasons, Mobility should be precluded from offering constructions of "fixedly located" inconsistent with the Court's claim construction, as explained further in MIL 3.

attempt to define the term based on having "a different network prefix" and requiring "a tunnel." *See* Dkt. No. 74 at 7-13. However, this is *precisely* the manner in which Dr. Nair analyzes this term in his report. *See* Ex. 2 (Updated Nair Report), at ¶ 220-22; *see also* Dkt. No. 99, 6-7. Mobility and Dr. Nair must be precluded from presenting this argument to the jury that was directly rejected by the Court during claim construction.

**MIL 5.** **Exclude any discussion of the size, total value, net worth, or total revenue of Verizon or its suppliers, any mention of the price of what end users pay for cell phone service, or the total amount paid to Verizon by its wireless subscribers.**

Mobility should be precluded from discussing the size, total value, net worth, number of employees, or total revenue of Verizon or its suppliers, any mention of the price of what end users pay for cell phone service, or the total amount paid to Verizon by its wireless subscribers, or similar information. Such information is irrelevant and unfairly prejudicial. *See* FED. R. EVID. 402, 403. Reference to total company revenue and similar financial information is unfairly prejudicial, because it suggests that Verizon or its suppliers can afford to pay a larger damages award than might otherwise be supported by the evidence. Such references would also risk violating the entire market value rule, which prohibits using the entire market value of an accused product to establish damages, absent a showing that the patented feature drives demand for the entire accused product. *Ericsson v. D-Link*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *LaserDynamics Inc. v. Quanta Computer, Inc*., 694 F.3d 51, 67-68 (Fed. Cir. 2012). Any opinion that Dr. Hernandez has asserted alleging that the asserted patents drive consumer demand or the prices consumers pay for cell phone services is improper and is subject to Verizon's *Daubert* motion regarding the same (Dkt. No. 102). Thus, overall revenue figures, whether at the company or end-user level, are legally irrelevant and only risk to "skew the damages horizon for the jury," and prejudice the jury towards an inflated damages award. *See Uniloc USA, Inc. v. Microsoft Corp*., 632 F.3d 1292, 1320 (Fed. Cir. 2011). For these reasons, this Court routinely precludes reference to total revenue and other

similar financial information. *See, e.g.*, *Intellectual Ventures I LLC v. T-Mobile USA Inc.*, 2:17-cv-577-JRG, at *5 (E.D. Tex. Jan. 8, 2019) (Ex. 11); *Implicit, LLC v. Trend Micro, Inc.*, 6:16-cv-80-JRG, at *6 (E.D. Tex. Oct. 3, 2017) (Ex. 12); *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, 2:16-cv-52-JRG-RSP, at *11 (E.D. Tex. Sept. 29, 2017) (Ex. 13); *BMC Software, Inc. v. ServiceNow, Inc.*, 2:14-cv-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016); *Imperium IP Holdings (Cayman) v. Samsung Elecs. Co., et al.*, No. 4:14-CV-371, 2016 U.S. Dist. LEXIS 106535, at *4-5 (E.D. Tex. Feb. 1, 2016); *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-11-JRG, at *4 (E.D. Tex. Oct. 6, 2015) (Ex. 14). Mobility should be similarly precluded.

**MIL 6.   Exclude evidence, argument, or suggestion of copying or theft by Verizon or any of Verizon's vendors.**

Pursuant to FED. R. EVID. 402 and 403, the Court should exclude arguments, testimony, or evidence stating, suggesting or referencing copying or theft by Verizon or any vendor. Mobility never alleged copying or theft of the purported inventions of the asserted patents during discovery, and has no evidence of copying or theft.

**MIL 7.   Exclude evidence, argument, or suggestion that any alleged conception date is earlier than July 31, 2002.**

The Court should exclude evidence, argument, and suggestion related to any alleged conception date that is earlier than the one-year bar date for the patents because such information is irrelevant, confuses the issues, and is unfairly prejudicial. *See* FED. R. EVID. 402, 403. The prior art presented by Verizon is largely § 102(b) art or § 102(e) art. Mobility cannot antedate (or "swear behind") § 102(b) prior art from before July 31, 2002 as a matter of law. 35 U.S.C. § 102(b). Certain § 102(e) art offered by Verizon, such as U.S. Patent Publication No. 2002/0131386 to Gwon filed January 26, 2001, was indisputably filed months before Mobility's earliest alleged conception date. Thus, arguments, evidence, and suggestion of a conception date earlier than the statutory one-year bar date (for § 102(b) art) but after the admitted filing dates of § 102(e) art is

irrelevant to the issues to be decided by the jury in this case and can only be used to unfairly confuse the jury into improperly questioning the prior art status of the art. FED. R. EVID. 402, 403.

**MIL 8.   Exclude evidence, argument, or suggestion regarding expert witnesses who are not called at trial, or expert analyses conducted by experts for parties not in this case.**

Mobility should be precluded from offering arguments, evidence, or suggestion against Verizon regarding expert witnesses who are not called at trial. Although an expert witness may properly rely on hearsay under Rule 703, "Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013).

Here, Dr. Hernandez, one of the inventors of the asserted patents and Mobility's damages expert, admitted during deposition that he used the expert report of Mr. Walter Bratic from another case as a "baseline" for his expert report in this matter. In his deposition, Dr. Hernandez was unable to explain the bases for many of his opinions. *See, e.g.*, Dkt. No. 132, at 6 ("Q. Okay, so now eight business days should actually be 20 business days. Is that your testimony? A. I would have to revisit these numbers, honestly."). Because Mr. Bratic is not going to testify in this case, Dr. Hernandez cannot present evidence or opinions regarding Mr. Bratic's opinions and analysis[2] because it will constitute impermissible hearsay. *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629 (W.D. Wash. 2011).

**MIL 9.   Exclude evidence, argument, or suggestion concerning the revenues or profits from products that are not accused products in this case.**

For reasons similar to those explained in MIL No. 5, neither party should introduce

---

[2] Because Mobility refuses to produce the Bratic report to Verizon to allow for a determination of which opinions are actually those of Mr. Bratic versus those of Dr. Hernandez, Dr. Hernandez should not be permitted to present any damages theories. *See generally* Dkt. Nos. 102, 132-33.

evidence, argument, or suggestion of revenues or profits from any non-accused products, because such revenue information is irrelevant, confuses the issues, and is unfairly prejudicial. FED. R. EVID. 402, 403. Mobility's damages expert, Dr. Hernandez, improperly relies on revenue from un-accused products in determining Mobility's respective reasonable royalties, as further detailed in Verizon's *Daubert* motion regarding the same, Dkt. No. 102. Introducing such evidence risks the jury using revenue information for un-accused products, including those with no conceivable relationship to the asserted patents, to determine damages for the accused products, which invites legal error.

### MIL 10. Exclude discussion or introduction of exhibits not produced during discovery.

Mobility should be precluded from presenting any discussion or introduction of exhibits not produced during discovery, contrary to how Mobility served new evidence in response to Verizon's pleadings. *See, e.g.*, Dkt. No. 125, 1-3; *see also* Dkt. No. 114, 1-3. Mobility was obligated to produce relevant documents during discovery (*see* Dkt. No. 65, 4). Mobility should not be allowed to introduce any such exhibits at trial as doing so would be in contravention of the spirit and the letter of the Federal Rules, the Local Rules, and the Discovery Order in this case. *See Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *17 (W.D. Wis. Oct. 29, 2012).

### MIL 11. No reference to the presumption of validity at trial.

Courts routinely preclude parties from referring to a presumption of validity at trial and prefer simply to explain the parties' respective burdens of proof. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (affirming district court decision not to instruct jury on the presumption of validity); *Polaris PowerLED Techs. LLC v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00715-JRG, at 9 (E.D. Tex. June 7, 2019) (Ex. 15) ("Any discussion of the appropriate legal standard that goes beyond the Court's prior instructions requires leave"). "[U]se of the

phrase 'presumption of validity' would add little to the jury's understanding of the burden of proof on the validity issues," and instead "might be confusing to the jury." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,* No. 2:15-cv-1202-WCB, 2017 WL 959592, at *4 (E.D. Tex. Mar. 13, 2017). This Court should thus bar references to the "presumption of validity" in accordance with Rule 403.

**MIL 12. No reference to indemnification.**

In *ZiiLabs Inc., Ltd. v. Samsung Elecs. Corp.*, No. 2:14-cv-203-JRG-RSP, 2015 WL 13617214, at *14 (E.D. Tex. Oct. 28, 2015), the Court granted Defendants' motion in *limine* precluding all "argument, evidence, testimony, insinuation, reference, or assertion regarding any defense or indemnification agreement(s)" between the manufacturer, Samsung, and the retailer defendants. *See also* FED. R. EVID. 411. The same result should apply here: All evidence and references to Verizon's indemnification agreements is prejudicial and excludable per FRE 403 and 411. Courts generally "exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award." *Williams v. McCarthy*, No. 05-CV-10230 (SAS), 2007 WL 3125314, at *7 n.46 (S.D.N.Y. Oct. 25, 2007); *see also Halladay v. Verschoor*, 381 F.2d 100, 112 (8th Cir. 1967). It is well-settled that "[u]se of evidence of . . . an indemnification agreement to establish that Defendants 'acted . . . wrongfully' runs afoul of Rule 411." *In re Gabapentin Patent Litigation*, No. 00-cv-2931 (FSH), 2011 WL 1807448, at *9 (D.N.J. May 12, 2011).

**MIL 13. Exclude arguments that prior art does not qualify as prior art.**

Mobility failed to challenge the prior art status of Verizon's prior art to the Asserted Patents during discovery and should be prevented from presenting new evidence regarding prior art status at trial. In response to Verizon's requests for admission regarding the authenticity of certain pieces of prior art, Mobility denied requests by stating that it had no relevant knowledge. Ex. 3 (Supplemental RFA Responses), at 11, 14. Mobility should not be allowed to introduce any

arguments or evidence regarding the status of this prior art as doing so would be in contravention

of the spirit and letter of the Federal and Local Rules and the Scheduling Order in this case. *See*

*Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-cv-178-bbc, 2012 WL 5416941, at *17 (W.D. Wis.

Oct. 29, 2012).

## MIL 14. Exclude characterization of the burden of proof for the "clear and convincing" standard.

Mobility should be precluded from prejudicial characterizations of the burden of clear and

convincing evidence. For example, Mobility should be prohibited from referencing that the burden

of clear and convincing evidence is the same burden that is applied in child custody or mental

commitment proceedings, or using other analogies, such as calling it the "red zone." *See, e.g.*, *Elbit*

*Sys.*, No. 2:15-cv-37-RWS-RSP, at 5 (precluding "argument concerning the burden of proof in a

different area of law, *e.g.* the burden of proof required to commit an individual to an institution,

revoke parental rights, or terminate life support" and "any analogy . . . during voir dire" of the

same); *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421-TBD-JDL, at 2 (E.D. Tex. Feb. 27, 2014)

(Ex. 16). There is no need for such characterizations, given that the Court will instruct the jury as

to the meaning of the burden. As a result, these characterizations violate Rule 403 because their

probative value is substantially outweighed by the danger of unfair prejudice or misleading the

jury.

## MIL 15. Exclude arguments/evidence regarding indirect infringement.

For both asserted patents, Mobility's infringement expert, Dr. Nair, introduced new

theories of indirect, induced infringement absent from Mobility's infringement contentions. Dkt.

No. 99, 3-4. Indeed, Dr. Nair and Mobility's entire theory of infringement as to the '330 Patent

appears to be that Verizon induces infringement by manufacturers performing compliance tests.

*Id.* at 4. Mobility's infringement contentions rely solely on direct infringement, and the

introduction of new theories of inducement in the first instance in an expert report is impermissible. *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014). In addition, Dr. Nair testified that he does not "know what [induced infringement] means" in his deposition. Ex. 1 (Nair Rough Tr.), at 74:22-75:2. Mobility should thus be prevented from offering arguments or evidence regarding indirect infringement. *See also* Dkt. No. 99.

**MIL 16. Exclude arguments/evidence regarding doctrine of equivalents.**

For similar reasons as those explained in MIL 15, Mobility should be prevented from offering arguments or evidence regarding any theories under the doctrine of equivalents. For the '330 Patent, Dr. Nair relies on DOE theories in his report, whereas Mobility's Complaint and infringement contentions *only* asserted that Verizon literally infringes the Asserted Claims of the '330 Patent. The infringement contentions' sole contention with respect to the doctrine of equivalents was a bare recitation of the "function-way-result" test and that "any differences are insubstantial." Dkt. No. 99, Ex. 5, 2. Because "boilerplate allegations . . . [in] infringement contentions are insufficient" to preserve such arguments, Mobility should be precluded from offering any arguments or evidence regarding the doctrine of equivalents. *Sycamore IP Holdings LLC v. AT&T Corp. et al.*, No. 2:16-CV-588-WCB, 2017 U.S. Dist. LEXIS 167297, at *13 (E.D. Tex. Oct. 10, 2017).

**MIL 17. Exclude arguments/evidence regarding Verizon's "Can you hear me now?" advertisements.**

Mobility's technical expert, Dr. Nair, opined that "[b]efore the '330 Patented invention came to be, a company like Verizon would have no choice but to test and design its mobile phones through a time-consuming, difficult to reproduce, inaccurate, and expensive manual method, often called a 'Drive Test.'" Ex. 2 (Updated Nair Report), ¶ 68. Dr. Nair goes on to opine that "[i]n the case of Verizon Network, Verizon ran the 'Can you hear me now?' commercial for over a decade,

that symbolizes and interprets the true nature of 'Drive Testing.'" *Id.*, ¶ 69. In his deposition, however, Dr. Nair testified that he had "no idea" when the ad campaign started, when it ended, or whether the ads began before or after Verizon started using the accused system simulator. Ex. 1 (Nair Rough Tr.), at 177:13-24. As such, any arguments or evidence regarding these advertisements should be excluded. FED. R. EVID. 403.

## MIL 18. Exclude arguments/evidence/testimony regarding unaccused products and systems.

Mobility has not accused Verizon's 5G network in this matter, and as such, any statement regarding whether the Asserted Patents purportedly cover such technology is unsupported and would only risk jury confusion. As such, any arguments or evidence regarding the same should be excluded. FED. R. EVID. 403. Mobility should be further precluded from introducing evidence or arguments regarding products, systems, or manufacturers not contained in Mobility's Infringement Contentions, as explained further in Verizon's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D., Dkt. No. 99. Specifically, for the '417 Patent, Mobility should be limited to introducing evidence and argument regarding the accused network components, manufacturers, and handover procedures specifically accused in its Infringement Contentions, including eNBs, MMEs, S-GWs, and UEs, and X2 and S1 handover procedures. Ex. 4 ('417 Infringement Contentions), at 5, 8, 50. As such, Mobility should be limited to introducing evidence and argument regarding infrastructure equipment provided by Nokia. For the '330 Patent, Mobility should be limited to introducing evidence regarding the Spirent testing systems identified in its Infringement Contentions. Ex. 5 ('330 Infringement Contentions), at 5. Evidence of any other products, manufacturers, procedures, or systems should be excluded as untimely disclosed. *See, e.g.*, *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010); *Opal Run LLC v. C & A Mktg., Inc.*, No. 2:16-CV-24-JRG-RSP, 2017 WL 3381344 (E.D. Tex. May 15, 2017).

**MIL 19. Exclude evidence, argument, or suggestion that commercial success, long-felt need, or other secondary considerations of non-obviousness have a nexus to asserted patents.**

For evidence of secondary considerations to be relevant to non-obviousness it must have a nexus to the claimed inventions. *Bosch Automotive Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1037 (Fed. Cir. 2017). Mobility failed to identify any evidence supporting a nexus during fact and expert discovery. *Demaco Corp. v. F. Von Landroff Licensing Ltd.*, 851 F.2d 1387, 1392-93 (Fed. Cir. 1988). Mobility should not be permitted to identify a nexus for the first time at trial.

Mobility provided a cursory response to an interrogatory seeking facts supporting secondary considerations that did not identify any evidence of a nexus between any secondary considerations and the claimed invention. Ex. 6 (Mobility Response to Interrogatories), 27-28. Mobility never supplemented its interrogatory response and should not be permitted to provide evidence or argument of a nexus to the jury that it failed to disclose in its discovery responses. Such evidence, argument, or suggestion unfairly prejudices Verizon, who have no notice of such evidence or argument. Fed. R Civ. P. 37(c).

Mobility's technical expert, Dr. Nair, also has failed to advance anything other than a cursory allegation or evidence of the requisite nexus between any secondary considerations of non-obviousness and the asserted patents in his report. *See, e.g.*, Ex. 7 (Nair Rebuttal Report) at ¶¶ 64-72, 451-457; *Black v. Ce Soir Lingero Co.*, 2:06-cv-544, 2008 WL 3852722, at *12 (E.D. Tex. Aug. 15, 2008); *In re Antor Media Corp.*, 689 F.3d 1282, 1293-94 (Fed. Cir. 2012). Dr. Nair should not be permitted to opine or otherwise suggest that there is a nexus at trial, as such testimony would exceed the scope of his expert report, amounts to unfair surprise, and unfairly prejudices Verizon. Fed. R. Civ. P. 26(a)(2)(B), 37(c).

*      *      *

Verizon respectfully requests that the Court grant its motions *in limine* as detailed above.

Dated: September 10, 2019

Respectfully submitted,

By: */s/ Ross R. Barton*
Ross R. Barton (NC Bar No. 37179)
ALSTON & BIRD LLP
101 South Tyron Street, Suite 4000
Charlotte, North Carolina, 28280
Phone: (704) 444-1000
Fax:    (704) 444-1111
ross.barton@alston.com

Michael J. Newton (CA Bar No. 156225)
ALSTON & BIRD LLP
950 Page Mill Road
Palo Alto, CA 94304
Phone: (650) 838-2000
Fax: (650) 838-2001
mike.newton@alston.com

Sang (Michael) Lee (TX Bar No. 24083378)
ALSTON & BIRD LLP
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
Phone: (214) 922-3400
Fax: (214) 922-3899
michael.lee@alston.com

Darlena H. Subashi (NC Bar No. 53142)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY  10016
Phone: (212) 210-1277
Fax: (212) 210-9444
darlena.subashi@alston.com
*Admitted to practice in North Carolina and
Massachusetts only.

E. Leon Carter (TX Bar No. 03914300)
Scott W. Breedlove (TX Bar No. 00790361)
CARTER ARNETT PLLC
8150 N. Central Expressway, Suite 500
Dallas, TX 75206
Phone: (214) 550-8188
Fax: (214) 550-8185
lcarter@carterarnett.com
sbreedlove@carterarnett.com

*Attorneys for Defendant Cellco Partnership,*
*D/B/A Verizon Wireless*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served electronically on September 10, 2019, on all counsel who have consented to electronic service.

*/s/ Ross R. Barton*

## CERTIFICATE OF CONFERENCE

Pursuant to Eastern District of Texas Local Rule CV-7(h), I certify that counsel met and conferred telephonically on September 9, 2019 in a good faith effort to resolve all issues regarding Defendant Verizon's Motions *In Limine*. On the September 9, 2019 meet-and-confer (which included myself on behalf of Verizon and Michael Machat on behalf of Mobility), the parties were unable to resolve their differences and an impasse was declared.

*/s/ Ross R. Barton*