# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| HUAWEI TECHNOLOGIES CO. LTD, | § § | |
| v. | § § | Case No. 2:16-CV-00052-JRG-RSP |
| T-MOBILE US, INC., T-MOBILE U.S.A., INC. | § § § | |

## ORDER ON MOTIONS *IN LIMINE*

The parties' joint motions *in* limine, Dkt. 297, the motions *in limine* filed by Plaintiff Huawei Technologies Co. LTD. ("Huawei"), Dkt. 304, and the motions *in limine* filed by Defendants T-Mobile US, Inc. and T-Mobile U.S.A. Inc. (collectively, "T-Mobile") and Intervenors, Dkt. 302, are resolved as follows. A party must approach the bench before introducing evidence or argument about the subject matter of a granted motion *in limine*.

\* \* \*

### I. Joint Motions *In Limine* (GRANTED)

#### MIL 1

The parties are precluded from making statements that are inconsistent with the Federal Judicial Center's patent video, and from praising or criticizing the performance, reliability, or credibility of the USPTO or the examiners that work at the USPTO. The parties are not precluded from introducing evidence that a particular prior art reference was or was not considered during prosecution of an asserted patent. The parties are also not precluded from arguing that an asserted claim is valid or invalid, or from making statements consistent with the Federal Judicial Center's patent video.

### MIL 2

The parties are precluded from making statements referring to mock trials, jury research, jury consultants, or shadow juries.

### MIL 3

No party shall reference or imply problems with intellectual property protection in China (e.g., that China does not adequately protect U.S. intellectual property).

### MIL 4

No party shall reference or imply a relationship between Huawei and the Chinese government.

### MIL 5

No party shall reference the military background of Mr. Ren Zhenfei, the CEO and founder of Huawei.

### MIL 6

No party shall refer to any party's closure of offices or businesses in the United States.

\* \* \*

## II.  Huawei's Motions *In Limine*

### MIL 1

**GRANTED BY RECIPROCAL AGREEMENT**. The parties are precluded from presenting evidence or argument regarding the petition for, or outcome of, *inter partes* review (IPR) proceedings, including any decisions to institute or not institute review. The parties are not precluded from presenting evidence or argument regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are

admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements "made to the Patent Office," without identifying the existence of IPR proceedings.

## MIL 2

**GRANTED IN PART** and **DENIED IN PART**. Whether Huawei complied with FRAND obligations is relevant to this case, and the Court will not preclude T-Mobile from presenting evidence or argument regarding the fact that T-Mobile filed a trade secret theft lawsuit against Huawei and how that lawsuit may have triggered or provided motive for Huawei's allegedly discriminatory conduct. Details of the lawsuit itself, including details regarding the underlying trade secret theft allegations, and the merits and outcome of the lawsuit, may not be presented. *See* Fed. R. Evid. 403.

## MIL 3

**CARRIED**. The parties dispute whether a Huawei document originally written in Chinese refers to Huawei patents or patent applications not disclosed to ETSI as "lurking patents," as T-Mobile's translation suggests, or "embedded patents," as Huawei's translation suggests. Huawei moves to exclude reference to "lurking patents" because according to Huawei, that phrase is "both incorrect and highly prejudicial given the correct translation of 'embedded patents.'" Dkt. 304 at 3. T-Mobile's reference to "lurking patents," however, would not be unfairly prejudicial if Huawei in fact used the Chinese equivalent of that phrase. Accordingly, the dispute will be resolved in the context of any objections to the admission of the translated document as an exhibit.

Whether T-Mobile's translation is admissible appears to depend solely on whether the translation is authentic because the document is not hearsay. *See* Fed. R. Evid. 802(d)(2). A written translation is authentic if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." *See Trapaga v. Cent. States Joint Bd. Local 10*, No. 05 C

3

5742, 2007 WL 1017855, at *7 (N.D. Ill. Mar. 30, 2007) (quoting Fed. R. Evid. 901(a)). The proponent is required to offer evidence showing that the document was properly translated by a competent translator. *See id.*

If T-Mobile's translation is admissible, T-Mobile may refer to "lurking patents" because there will be record evidence to support that characterization. Although Huawei's translation refers to "embedded patents," the question of which translation is most accurate is a credibility determination, and hence a question for the fact finder. *See, e.g.*, *Mitsubishi Chem. Corp. v. Barr Labs., Inc.*, 435 F. App'x 927, 932 (Fed. Cir. 2011); *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1142-43 (Fed. Cir. 1986); *U.S. v. Onori*, 535 F.2d 938, 946 (5th Cir. 1976); *U.S. v. Linas*, 603 F.2d 506, 509 (5th Cir. 1979) ("If the government's translation was inaccurate, it was petitioner's burden to challenge its accuracy by presenting another translation, so that the jury could choose which to believe."). Thus, if the parties wish to pursue this dispute at trial, either party may bring a witness or evidence establishing that its respective translation is the correct one.

## MIL 4

**GRANTED** under Rule 403. T-Mobile and Intervenors must approach the bench before presenting evidence or argument regarding any government investigation concerning Huawei or the results of any such investigation, including any reference to the Congressional Report discussed at the pretrial conference.

Huawei is cautioned not to open the door to such evidence. Addressing issues raised at the pretrial conference, the door may be opened if:

(1) Huawei presents evidence or argument that Huawei generally respects intellectual property rights or has a general practice to not steal or infringe others' intellectual property.

4

(2) Huawei presents evidence or argument that its United States subsidiary is independent from its Chinese parent company, or that Huawei is an "American" company.

Huawei will likely not open the door to evidence or argument concerning any government investigation if Huawei presents evidence or argument that merely suggests that:

(1) Huawei is "innovative" inasmuch as Huawei was responsible for the inventions claimed in the patent(s)-in-suit or that Huawei has been "innovative" in contributing to the relevant cellular standards, such as the LTE standard, because Huawei owns patents it alleges are essential to the standard.

(2) Huawei is an "ethical" company generally.

(3) Huawei relies on its Research & Development.

## MIL 5

**GRANTED-IN-PART** and **DENIED-IN-PART**. While reference to related cases would ordinarily be precluded under Rule 403, the cases related to this action, 2:16-cv-00055, -56, and -57, are integral, and in fact necessary, to T-Mobile and Intervenors' response to Dr. Vander Veen's damages opinion. Accordingly, reference to the related cases is not precluded. The motion is granted as to as other litigation.

With respect to the *Unwired Planet* case, T-Mobile seeks to reference statements made by Huawei's counsel concerning the ETSI Policy. T-Mobile refers to the following three statements:

- In short, it is wholly inconsistent both with the express terms of the FRAND undertaking and with its underlying purpose for an SEP owner to refuse to license an SEP unless the licensee also takes a license under all of the SEP owner's other telecommunications patents (whether SEPs and non-SEPs or just SEPs) on a global "*all or nothing*" basis.

Dkt. 357-9 at 21.

5

- Specifically, an SEP holder should not seek an injunction against a willing licensee, nor should the threat of an injunction be used as a means to extract higher royalties and/or other concessions from a locked-in implementer of a standard. In determining FRAND rates, any uplift which has been obtained as a result of an explicit or implicit threat of an injunction must be discounted.

*Id.* at 17.

- Second, the ownership of an SEP will, or may, give rise to a dominant position on a market for the supply or licensing of the technology governed by that SEP and/or on related markets. That dominant position may be abused by the holder of the SEP, contrary to Article 102 TFEU, by its refusing to license that SEP and/or by it demanding excessive and unreasonable terms for such a license, and thus engaging in what has become known as "*patent hold up*."

*Id.* at 5.

There are at least two concerns with these statements. First, the statements were made by Huawei's attorney and as a result, they may be hearsay. Statements of fact relevant to a dispute, made by a lawyer for a party in the course of the representation, are sometimes admitted against the party.[1] However, courts are reluctant to admit attorney statements as evidence, limiting their admissibility, for example, to "clear and unambiguous admission[s] of fact." *See Kowalski v. Anova Food, LLC*, No. CIV. 11-00795HG-RLP, 2015 WL 1117993, at *2 (D. Haw. Feb. 12, 2015) (quoting *Blood*, 806 F.2d at 1221). The statements by Huawei's attorneys concern legal argument rather than a clear admission of fact, and thus the Court is not convinced the statements would be admissible under Rule 801(d)(2)(D) or as judicial admissions.

Second, even if the statements were not hearsay, the statements were made by a foreign attorney in a foreign dispute. Although the statements relate to a similar issue as that disputed in

---

[1] *See, e.g.*, *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 306 n.29 (5th Cir. 1978); *United States v. Blood*, 806 F.2d 1218, 1221 (4th Cir. 1986); *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir.1984); *Frank v. Bloom*, 634 F.2d 1245, 1251 (10th Cir.1980) *Reaves v. Pennsylvania State Police*, No. 1:09-CV-2549, 2013 WL 5411952, at *2 (M.D. Pa. Sept. 26, 2013); *Weaver v. Conrail, Inc.*, No. CIV.A 09-5592, 2010 WL 2773382, at *8 (E.D. Pa. July 13, 2010).

this case, it is not clear that the governing legal authority is the same. The third statement, for example, refers to Article 101(1) of the Treaty on the Functioning of the European Union ("TFEU"). As a result, the statements present a significant risk of jury confusion and unfair prejudice. *See* Fed. R. Evid. 403. Accordingly, on the basis of Rule 403, T-Mobile may not present evidence or argument referencing statements made by Huawei's attorney in the *Unwired Planet* case. If T-Mobile believes the door has been opened to such evidence at trial, T-Mobile may approach the bench.

This ruling does not apply to any declaration or testimonial evidence from a related proceeding, including the *Unwired Planet* case, that may be admissible for impeachment purposes or as substantive evidence. The Court will address objections to any such evidence at the next pretrial conference on exhibits.

## MIL 6

**GRANTED-IN-PART** and **DENIED-IN-PART**. T-Mobile may not argue that an inference should be drawn from the fact that certain patents were once asserted but are no longer asserted. The motion is otherwise denied. The court ordinarily precludes reference to dropped patents to encourage the practice of narrowing disputes for trial. And while reference to a party's decision to narrow its case is typically precluded under Rule 403, the patents dropped in this action are integral to T-Mobile and Intervenors' response to Dr. Vander Veen's damages opinion.

## MIL 7

**GRANTED-IN-PART BY AGREEMENT** and **DENIED-IN-PART**. T-Mobile and Intervenors agree not to disparage Huawei or any of Huawei's witnesses because of their Chinese nationality or the fact that they are not "American" or "un-American." The motion is otherwise denied.

## MIL 8

**DENIED**.

## MIL 9

**GRANTED-IN-PART** and **DENIED-IN-PART**. The parties will not present evidence or argument before the jury that is *only* relevant to an equitable issue (absent agreement between counsel). Any evidence or argument related to T-Mobile's counterclaims and affirmative defenses, however, that is relevant to both a jury issue *and* an equitable issue, is not precluded.

## MIL 10

**GRANTED-IN-PART** and **DENIED-IN-PART**. T-Mobile and Intervenors may not present improper evidence or argument comparing an accused product to the prior art for purposes of establishing noninfringement or invalidity. Additionally, T-Mobile and Intervenors may not present improper evidence or argument that Huawei's infringement theories read on or encompass the prior art. T-Mobile and Intervenors may, however, present evidence or argument that there are contradictions or inconsistencies between Huawei's infringement theories and Huawei's validity theories.

## MIL 11

**DENIED**.

## MIL 12

**WITHDRAWN** for purposes of Case No. 2:16-cv-00052.

## MIL 13

**WITHDRAWN** as to the Nokia source code. **DENIED** as to the Cisco source code. As the Court has already explained, the Cisco source code was produced after the close of discovery, but the code did not exist during the discovery period. *See* Dkt. 346 at 2. Huawei's motion *in limine*

8

raises precisely the same issue the Court considered and rejected in a prior Order. *See id.* If Huawei had wanted to minimize any prejudice resulting from the lateness of the Cisco source code, it could have pursued a supplemental report or other accommodation, which T-Mobile offered. *See id.*

## MIL 14

**DENIED AS MOOT**.

## MIL 15

**WITHDRAWN** for purposes of Case No. 2:16-cv-00052.

## MIL 16

**GRANTED-IN-PART BY RECIPROCAL AGREEMENT** and **DENIED-IN-PART**. The parties agree not to present evidence or argument that any foreign patent application related to the patent(s)-in-suit was withdrawn from prosecution, rejected as unpatentable, or not issued. The motion is otherwise denied.

## MIL 17

**GRANTED-IN-PART** and **DENIED-IN-PART**. T-Mobile and Intervenors may not argue that Huawei has a policy to compensate employees for not disclosing patents or patent applications to a standard setting organization that are or might be essential to a standard. The motion is otherwise denied.

## MIL 18

**GRANTED BY AGREEMENT**. T-Mobile and Intervenors agree not to disparage Huawei or any witness on the basis of the witness's native language or the witness's choice to testify in the witness's native language.

## MIL 19

**WITHDRAWN** for purposes of Case No. 2:16-cv-00052.

MIL 20

**DENIED**.

\* \* \*

### III. T-Mobile and Intervenors' Motions *In Limine*

MIL 1

**GRANTED-IN-PART BY AGREEMENT** and otherwise **DENIED**. Experts are confined to their written reports. Any expert testimony concerning a new technical theory, for example, or any other expert testimony related to a claim or defense, may not be offered at trial unless it was disclosed in the expert's written report. *See* Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 37(c)(1).

MIL 2

**GRANTED-IN-PART** and **DENIED-IN-PART AS MOOT**. Huawei may not inquire into privileged communications related to T-Mobile's decision to deploy an MME product that does not include the Cause Source bit allegedly within the scope of the '462 patent claims. As for the dispute relating to the '365 and '617 patents, the motion is denied as moot in light of the joint stipulation to drop those two patents. *See* Dkt. 422.

MIL 3

**GRANTED IN PART** and **DENIED IN PART**. Huawei may not present evidence or argument that the benefits from the asserted patent(s) are derived from "the value of the standard as a whole or any increased value the patented feature gains from its inclusion in the standard." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1235 (Fed. Cir. 2014). The motion is otherwise denied.

MIL 4

**GRANTED BY RECIPROCAL AGREEMENT**. *See* Huawei MIL 1.

MIL 5

**WITHDRAWN** for purposes of Case No. 2:16-cv-00052.

MIL 6

**GRANTED-IN-PART** and **DENIED-IN-PART**. Huawei may not introduce evidence or argument disclosing T-Mobile's past annual revenue, estimated future annual revenue, or overall capital expenditures. Similarly, Huawei may not argue through a demonstrative or otherwise that the royalty rate it seeks is only a "fraction," "small percentage," etc., of T-Mobile's average revenue per customer per month, or otherwise compare the royalty rate to any revenue other than Dr. Vander Veen's estimation of T-Mobile's revenue per customer per month attributable solely to LTE technology. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012). Dr. Vander Veen may explain how he calculated the revenue per customer per month attributable to the LTE network from his starting estimate of the average revenue per customer per month. *See* Vander Veen Rep. ¶ 145, Dkt. 302-4.

MIL 7

**DENIED**.

MIL 8

**GRANTED**. Huawei may not argue that T-Mobile knew, should have known about, or had any duty to investigate any patent-in-suit before the lawsuit was filed. Huawei contends, apparently for purposes of willfulness, that a letter Huawei sent T-Mobile identifying the '365 and '617 patents gave rise to a duty to investigate the other patents-in-suit, and thus T-Mobile knew or should have known about those patents.

A party's failure to exercise due care in investigating patents is unquestionably insufficient to support a finding of willfulness. Willfulness requires conduct that has been described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016). A prerequisite to such conduct is, at minimum, an accused infringer's subjective belief that he is infringing a valid patent. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 240 F. Supp. 3d 605, 618 (E.D. Tex. 2017) (Bryson, J., sitting by designation). Huawei admitted at the pretrial conference that it had no evidence of T-Mobile's knowledge of any patent other than the '365 and '617 patents, which are no longer in the case. *See* Dkt. 422. By definition, then, Huawei cannot show that T-Mobile willfully infringed any other patents. Even knowledge of an asserted patent, without more, cannot support a willfulness finding. *See Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 2190055, at *3 (E.D. Tex. May 18, 2017) (Bryson, J., sitting by designation).

## MIL 9

**GRANTED**. Huawei may not present evidence or argument that Huawei has an internal policy ("IPOS Patent and Standard Work Instruction", Dkt. No. 282-18) requiring or encouraging compliance with ETSI disclosure obligations because Huawei has withheld on the basis of privilege the communications that are required by the policy. The Court has reviewed the policy and finds that discussing it would cause the jury to assume that the required communications were made and that they support Huawei's contention that it did make timely disclosure. Such an inference would constitute an improper comment on communications as to which the attorney-client privilege has been claimed.

<u>MIL 10</u>

**GRANTED**. Huawei may not present evidence or argument that T-Mobile or Intervenors "copied" the patent(s)-in-suit or are otherwise "copyists". This ruling does not preclude Huawei from presenting evidence or argument that T-Mobile complied with the relevant cellular standard.

**SIGNED this 29th day of September, 2017.**

                                                                ROY S. PAYNE
                                                                UNITED STATES MAGISTRATE JUDGE