# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| MOBILITY WORKX, LLC,<br><br>                    **Plaintiff,**<br><br>  v.<br><br>CELLCO PARTNERSHIP D/B/A<br>VERIZON WIRELESS<br><br>                    **Defendant.** | Case No. 4:17-CV-00872 ALM<br><br>**JURY TRIAL DEMANDED**<br><br><u>Final Pretrial Conference:</u><br>Date:      November 19, 2019<br>Time:     9:00 a.m.<br>Judge.:    Honorable Amos L. Mazzant<br><br>Trial:      December 2, 2019 |

## MOBILITY WORKX LLC'S OPPOSITION TO VERIZON'S MOTIONS IN LIMINE

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

MIL 1.    Re Verizon's Discovery Failures and wrongful withholding. ............................... 1

MIL 2.    Verizon Improperly Attempts to Exclude Evidence and Argument Highly Relevant to why the License Mobility Workx Gave to T-Mobile is not Comparable. ........................................................................................................ 4

MIL 3.    The Court Should Reject Verizon's Attempt to Exclude Mobility's Evidence and Argument Related to Its Expert's Belatedly Produced Drive Test Report, Particularly Given that Verizon Was Having Its Expert Generate a Special Drive Test While Simultaneously Refusing Mobility's Legitimate Discovery Requests to Produce Drive Test Reports Within Verizon's Possession, of which Verizon has Tens of Thousands. ....................................................................................... 5

MIL 4.    Verizon's Attempt To Stifle the Testimony of Mobility's Witnesses Through the Pre-text that They Will Testify Contrary to the Claim Construction Ruling. ........ 7

MIL 5.    Verizon's Improper Attempt To Suppress Evidence of the Value of Mobility's Patents and the Value Obtained by Verizon through its Infringement.................. 7

MIL 6.    Verizon's Improper Attempt to Exclude Evidence Regarding Its Wrongful Use of Plaintiff's Patents Without a License. ............................................................... 9

MIL 7.    Verizon's Improper Attempt to Exclude evidence regarding the history of the inventions. ............................................................................................................ 9

MIL 8.    Verizon's Attempt to Exclude evidence regarding Walter Bratic ......................... 9

MIL 9.    Verizon's Attempt to Exclude evidence, argument, or suggestion concerning the revenues or profits from products that are not accused products in this case. .... 10

MIL 10.    Exclude Discussion or Introduction of Exhibits not Produced During Discovery. ............................................................................................................................. 10

MIL 11.    No Reference to the Presumption of Validity at Trial. ........................................ 11

MIL 12.    No reference to indemnification. ......................................................................... 12

MIL 13.    Verizon Improperly Attempts to Shift the Burden on Issues Related to Validity to Mobility. .............................................................................................................. 12

MIL 14.    Exclude characterization of the burden of proof for the "clear and convincing" standard. .............................................................................................................. 13

| | | |
|---|---|---|
| MIL 15. | Exclude arguments/evidence regarding indirect infringement. | 13 |
| MIL 16. | Exclude arguments/evidence regarding doctrine of equivalents. | 14 |
| MIL 17. | Exclude arguments/evidence regarding Verizon's "Can you hear me now?" advertisements. | 14 |
| MIL 18. | Exclude arguments/evidence/testimony regarding unaccused products and systems. | 14 |
| MIL 19. | Exclude evidence, argument, or suggestion that commercial success, long-felt need, or other secondary considerations of non-obviousness have a nexus to asserted patents. | 15 |

**MIL 1.         Re Verizon's Discovery Failures and wrongful withholding.**

Federal Rule of Civil Procedure 37(c) provides in relevant part:

(1) Failure to Disclose or Supplement**. If a party fails to provide information or identify a witness as required by *Rule 26(a)* or (e**), the party is not allowed to use that information or witness to supply evidence . . . . at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, **the court,** on motion and after giving an opportunity to be heard: . . .

**(B) may inform the jury of the party's failure** . . .

As discussed in Mobility's MIL 1, defendant purposefully, knowingly and strategically decided not to provide documents showing precisely how their network worked so they could argue "Plaintiff has no evidence." Fortunately, the Verizon LTE Network and publicly available documents were sufficient to establish infringement.

Defendant attempts to mischaracterize their wrongful behavior throughout this case by referencing matters that make no difference. For example, they offer some testimony of Dr. Suku Nair that says he was able to opine that defendant infringes Mobility's patents based upon the publicly available information provided to him by Plaintiff. That does not imply he did not need to see any further documents. To the contrary he said as more information is made available to him, he can review it, analyze it and then opine. He should not, however, see any new material (that should have been produced in discovery) for the first time on the witness stand. Also, defendant complains that Mobility did not take the deposition of one of defendant's corporate representatives, but that was based upon defendant's failure to produce documents from which Mobility could question that corporate representative. [See Generally Dkt No. 130-5 ¶¶ 3-7, 16 and the accompanying exhibit Dkt Nos 130-1  ]

Defendants ought not be able to benefit from violating its discovery obligations and this Court's orders. Defendant is a frequent litigant in this District and their attorneys, members of a 1000 man and woman firm, obviously are no strangers to Rule 26 and this District's local rules.

This Court's Order states, "**A party that fails to disclose any information required to be disclosed by any order of this court or the Patent Rules of this court will not, unless such failure is harmless, be permitted to use such evidence at trial, hearing or in support of a motion.**"

Accordingly, not only should Verizon be precluded from introducing evidence intentionally withheld during discovery, Plaintiff ought to be able to explain to the jury why it does not have any documentary evidence describing exactly how the Verizon network works. Furthermore, a jury instruction regarding this should be given.

In *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2nd Cir 2002), after first mentioning the legal standard for an adverse jury instruction for the destruction of evidence, the Court continues, "Similarly, where, as here, an adverse inference instruction is sought on the basis that the evidence was not produced in time for use at trial, the party seeking the instruction must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

In *Premier Dealer Services, Inc. v. Duhon*, 2013 WL 6150602 *9, a case in which an adverse inference instruction was found to be appropriate regarding the destruction of the emails approvingly, the Court cites *Gatto v. United Air Lines, Inc.,* 2013 WL 1285285 (D.N.J. Mar. 25, 2013) holding that an adverse inference instruction was appropriate where a party harmed in that case were prejudiced by the absence of such information even though the offending party many not have specifically intended to deprive the harmed party of the relevant evidence. Here in this case, Plaintiff does not allege Verizon destroyed evidence; instead the intentional withholding and

failure to produce the evidence has the same effect as if they did destroy it, and as such the legal standard for imposing sanctions should be the same as stated in *Residential Funding Corp. supra.*

*See also Optowave Co., Ltd. v. Nikitin,* 2006 WL 3231422, at * 12 (M.D.Fla.Nov.7, 2006) (giving an adverse inference instruction after defendant permitted reformatting of hard drives after notice of possible litigation). See also, *Condrey v. SunTrust Bank of Ga.,* 431 F.3d 191, 203 (5th Cir.2005)) (adverse inference jury instructions are available only upon a showing of bad faith conduct). *See also Whitt v. Stephens County,* 529 F.3d 278, 284 (5th Cir.2008) ("[A] jury may draw an adverse inference 'that party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party.' " (quoting *Russell v. Univ. of Tex. of the Permian Basin,* 234 Fed. Appx. 195, 207 (5th Cir.2007)); *King v. Ill. Cent. R.R.,* 337 F.3d 550, 556 (5th Cir.2003); *see also United States v. Wise,* 221 F.3d 140, 156 (5th Cir.2000)).

The net effect of destroying evidence or suppressing evidence is the same; either way the deprived party is without the useful evidence. Thus in *Wise,* supra, at 156, within its discussion of spoliation of evidence, the Fifth Circuit cites the 10th Circuit case of *Higgins v. Martin Marietta Corp.*, 752 F.2d 492 (10th Cir. 1985) concerning failure to produce records, "**absent a showing of bad faith, failure to produce records is insufficient to warrant a spoliation or missing evidence instruction**") suggesting approval of an adverse jury instruction when bad faith is shown for failure to produce evidence, in agreement with the Second Circuit, *Residential Funding Corp. supra at 107 and also FRCP 37(c)(1)(B).*

As described in the Machat Decl defendant Verizon has acted in bad faith from the get-go, first trying to intimidate Mobility's attorneys from representing Mobility by sending out overly aggressive Rule 11 letter threatening without basis sanctions against Mobility's attorneys for

3

daring to step into the case and represent Mobility.  Then they refused to produce obviously relevant evidence ignoring this Court's Order Governing Proceedings [Dkt 16], the local rules, FRCP 26 and 37.  Moreover, they continue to flagrantly mark documents as Confidential Outside Attorneys Eyes Only without any good faith basis in order to thwart Mobility's defense.  The improper wholesale designation prevents counsel from discussing the evidence with the two inventors who qualify as expert witnesses.  (In fact, Verizon even marked its motions in limine (including the exhibits) as confidential without any apparent good faith reason to do so.)  The appropriate sanction is an adverse inference instruction as proposed in Mobility's Proposed Jury Instructions submitted separately to the Court.

Not only should defendant's motions in limine number 1 be denied, the case law supports giving an adverse jury instruction as a result of defendant's intentional withholding of evidence. Of course, if Verizon had non-incriminating evidence that showed how they operated their network without infringing, surely, they would not have hidden it.  Instead they withheld the evidence for obvious reasons.  The jury ought to be told such and Plaintiff should be allowed to argue this as well.[1]

**MIL 2.** **Verizon Improperly Attempts to Exclude Evidence and Argument Highly Relevant to why the License Mobility Workx Gave to T-Mobile is not Comparable.**

Verizon continue to insult the founders of Mobility Workx and refer to their arguments as conspiracy theories.  They do so to distract from the circumstances and surroundings regarding the issuance of a license for the '417 patent to T-Mobile.  Obviously, the State of Mind of the Patent

---

[1] It should also be noted that defendant's motions in limine illustrate once again how defendant habitually violates the Protective Order by designating documents as Confidential that obviously are not, such as the irrelevant opinions attached as Exhibits and Mobility's Infringement Contentions which also are not Confidential.  They cannot possibly have a reasonable belief that any of this is confidential, which is a requirement for marking a document as Confidential under the Protective Order. [Dkt No 32]

4

Owners is relevant to the Georgia Pacific hypothetical negotiation. If defendant insists on using the '417 license as a point of reference for valuation purposes, then the State of Mind of the parties obviously is relevant. The fact remains that Mr. Newton[2] and T-Mobile's in-house counsel Alice Gerber did in fact improperly engage in *ex-parte* talks with Mobility's principals at a pre-arranged "no outside attorneys/principals only meeting" while they were without counsel. The fact remains that the principals of Dominion Harbor, Mobility's patent broker, were good friends with T-Mobile's and Verizon's lawyer Michael Newton, and this was not disclosed to Mobility. It is also true that according to *Taurus IP, LLC v. DaimlerChrysler Corp*, 559 F. Supp. 2d 947, 970 - 975 (W.D. Wis. 2008). Michael Newton and David Pridham (CEO of Dominion Harbor) and Patrick Anderson (CTO of Dominion Harbor) were involved in a witness tampering matter in Wisconsin. It was only after reading that case did Drs. Helal and Hernandez learn that they were all close friends who had worked together. This was never disclosed to Mobility. So, Mobility fired Dominion Harbor and the lawyers Dominion Harbor appointed because they could no longer trust their counsel. Faced with an impending trial date and no lawyers and no time to find one, Mobility took a terrible deal rather than obtain nothing. Surely the background of the T-Mobile negotiation is relevant and needs to come out to explain that license. Alternatively, Verizon do not have to point to the T-Mobile license as a typical license. A more detailed discussion of the wrongdoing can be found in Dkt No. 110.

**MIL 3.** **The Court Should Reject Verizon's Attempt to Exclude Mobility's Evidence and Argument Related to Its Expert's Belatedly Produced Drive Test Report, Particularly Given that Verizon Was Having Its Expert Generate a Special Drive Test While Simultaneously Refusing Mobility's Legitimate Discovery**

---

[2] Defendant has six attorneys of record. So, any claim that Michael Newton is an essential lawyer for defendant simply makes no sense, especially considering that it is Ross Barton that has been leading this litigation

### Requests to Produce Drive Test Reports Within Verizon's Possession, of which Verizon has Tens of Thousands.

Under normal circumstances, of course experts should be limited to testifying about matters presented in their expert reports. This case is far from normal, however, due to Verizon's brazen disregard of this Court's orders regarding the self-production of relevant documents (without waiting for a request) as required by FRCP 26 and the local rules. Verizon held back Test Reports, even though they were specifically requested by Mobility's counsel. Even worse, at the same time while Verizon's lawyers were writing that the Test Reports were not relevant, their expert James Proctor was conducting drive tests. These tests were not disclosed until July 5, 2019, three days before Verizon filed a motion for summary judgment. Fortunately, Mobility's expert was available to review the test report belatedly produced and give a declaration. Then after Mobility filed its Opposition to the motion for summary judgment attaching Dr. Nair's declaration, defendants produced the test logs relating to the drive test it didn't produce. Again Dr. Nair had to prepare another declaration, this time analyzing the test logs, which demonstrated that Verizon infringes the patents in suit. Each of Dr. Nair's declarations prepared as a result of Verizon's suppression of evidence and only very late production of some evidence should be considered as part of his expert report, and of course he should be able to testify about what he wrote. The purpose of an expert report is to give an adversary notice of what the expert might testify about. Here notice was achieved. Verizon took Dr. Nair's deposition several weeks after Dr. Nair submitted his last declaration. Thus, the purpose of the expert report was achieved. Verizon's arguments are simply disingenuous.

Verizon's third motion also improperly seeks to limit the testimony of Drs Helal and Hernandez. Even if for the sake of argument, they were precluded from testifying as experts, as the inventors of the patent, they have a factual basis to testify as to how their inventions work, as

well as the value.  In fact, they would know better than anyway else how the patents work.  Defendant is simply trying to silence the smartest people in the Court Room from testifying.

**MIL 4.** **Verizon's Attempt To Stifle the Testimony of Mobility's Witnesses Through the Pre-text that They Will Testify Contrary to the Claim Construction Ruling.**

The jurors will be instructed what the terms in this case mean.  Verizon's MIL is an attempt to stifle the testimony of Plaintiff's witnesses.  Defendant does here what it accuses Plaintiff of doing.  With respect to the issue of tunnels and the claim construction of "foreign agent," the Court actually gave a broader interpretation of "foreign agent" than Mobility requested, and the explanation involving "tunnels" and "different network prefixes" does not conflict with the Court's claim construction, and whether it did or not would be for the jury to decide.  Similarly, with respect to defendant's argument regarding the definition of "wireless", that too is for the jury to decide whether or not Plaintiff's testimony is within the bounds of this Court's claim construction order.

**MIL 5.** **Verizon's Improper Attempt To Suppress Evidence of the Value of Mobility's Patents and the Value Obtained by Verizon through its Infringement.**

In figuring out what a reasonable royalty might be, the *Georgia Pacific*[3] Factors include amongst other factors, "The extent to which the infringer has made use of the invention; and *any evidence probative of the value of that use."* In addition, a jury must consider "The portion of the realizable profit that should be credited to the invention." *Id* Simply put, the'417 patent allows the Verizon network to arrange for a handover before a mobile phone leaves its current cellphone coverage so there is no dropped call.  The '417 patent is the wheels on a suitcase.  It is extremely valuable.  Who would want to buy a suitcase now-a-days without wheels?  Similarly, who would want to use the Verizon network if it dropped calls when cellphone users were mobile?  Verizon

---

[3] *Georgia Pacific v US Plywood Corp,* 318 F.Supp. 1116, 1120 (1970)

7

brags it has the best most reliable network.  Of course, the financial factors are relevant so the jury can assess the over-all value of the invention.  Verizon argue this information may be prejudicial, but all evidence is harmful—otherwise it would serve no purpose.  The evidence is entirely relevant, and any attempt by Verizon to argue otherwise merely is an attempt to invite error.  As in almost all motions in limine, of course there are situations where courts have ruled as the proponent of a motion suggests, but the bottom line is, in this case, as in most others, the motions in limine are usually fact specific.  Contrary to Verizon's argument, the entire market rule is applicable here.  It is for the jury to decide if it is not.  It is not for Verizon to decide this based upon their say-so in a MIL.  Imagine if every-time one drove a mile or so down the road and the phone call dropped causing one to have to redial.  That's the benefit of the '417 patent.  With regards to the '330 patent, it saves Verizon countless dollars not having to conduct drive-time tests exclusively.  The jurors will be able to figure out what is right.  None of the evidence defendant seeks to preclude should be precluded.

The AIPLA model jury instruction, 10.2.5.3 specifically provides that all of the following are factors a jury must use in determining a reasonable royalty.

8. The *established profitability of the product* made under the [abbreviated patent number] patent; its commercial success; and its popularity.

9. The *utility and advantages of the patented invention* over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; *and the benefits to those who have used the invention.*

11. The extent to which [the Defendant] has made use of the invention; and any evidence that shows the *value of that use.*

Verizon's argument is contrary to established law found in Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1230-32 (Fed. Cir. 2014); Apple Inc. v. Motorola Inc., 757 F.3d 1286 (Fed. Cir. 2014); LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 60 (Fed. Cir. 2012). Preventing Mobility from introducing evidence relating to these factors would constitute reversible error.

**MIL 6.** **Verizon's Improper Attempt to Exclude Evidence Regarding Its Wrongful Use of Plaintiff's Patents Without a License.**

The bottom line is the unlicensed use of another's intellectual property is theft. Verizon's attempt to characterize it as something akin to forgetting to return a video to the video store (when such stores existed) or forgetting to return a book to a library is absurd. The complaint charged Verizon with patent infringement, which is theft. Mobility will of course be polite in Court, but its voice should not be unlawfully constrained.

**MIL 7.** **Verizon's Improper Attempt to Exclude evidence regarding the history of the inventions.**

Again, Verizon attempts to improperly constrain Mobility's right to speak. Of course, the inventors (Mobility's principals) should be able to describe the origins of their inventions to the jury. The relevant date(s) from which the jurors should apply alleged prior art can simply be told to the jurors in a jury instruction at the appropriate time. Verizon's MIL is just an improper attempt to restrain Mobility's right to tell its story to the jury. All of what Mobility will say is prejudicial to Verizon. That is the nature of evidence. Otherwise, it would be simply irrelevant. There is nothing in the background story to the inventions that is unduly prejudicial to even consider invoking FRE 403. Instead any relevant dates can be given to the jury by the Court.

**MIL 8.** **Verizon's Attempt to Exclude evidence regarding Walter Bratic**

As explained in Mobility's reply to Verizon's motion to supplement its motion to exclude expert testimony of Dr. Hernandez (Dkt Nos 136 and 136-1), Dr. Hernadez did not rely upon the

expert report of Walter Bratic; instead he did what all lawyers and experts do. He took a commonly accepted format referencing commonly accepted legal principals, i.e., a list of the Georgia Pacific Factors, and then prepared his own report. It makes no difference if he gathered the list of Georgia Pacific factors from the Bratic report of if he went online and downloaded the Georgia Pacific case himself personally. Dr. Hernandez does not intend to testify about what Walter Bratic opined about in the past concerning different defendants. As written, "any experts" is too broad to exclude testimony about. Otherwise, everything could be excluded as the testimony of another expert. Here the only concern is Bratic, and Dr. Hernandez will not testify about Bratic's findings in the prior case. Therefore, Verizon's motion in limine 7 should be denied.

**MIL 9.** **Verizon's Attempt to Exclude evidence, argument, or suggestion concerning the revenues or profits from products that are not accused products in this case.**

Here again, Verizon's motion is too broad and unnecessary and intended to restrict Mobility's ability to describe the LTE Network, how it works, its benefits, etc. to the jurors. Obviously, Verizon would be free to comment that Mobility should not be compensated for what it's competitors, AT&T and Sprint do. Since Mobility is accusing the Verizon network, it needs to discuss the individual components of the network. For similar reasons discussed in Mobility's opposition to MIL No. 5, this motion in limine must also be denied.

**MIL 10.** **Exclude Discussion or Introduction of Exhibits not Produced During Discovery.**

Amazingly, Verizon have the bravado to accuse Mobility of not producing documents during discovery. Of course, neither party should be permitted to introduce discussion or introduce evidence not produced so far. Mobility has even proposed a special jury instruction on this subject. Mobility should be able to produce all documents and discuss all pertinent

information in response to Verizon's belatedly produced test reports and use the information discussed in Dr. Nair's declarations submitted in this case, as discussed in Mobility's response to Verizon's MIL No. 3.

**MIL 11.** **No Reference to the Presumption of Validity at Trial.**

On the surface, it seems that Verizon want to change the law. Patents are presumed valid, and the jury will be instructed as such. During examination of witnesses, it would seem illogical to ask a witness whether or not a patent is presumed to be valid. During closing, of course a party is entitled to point to jury instructions and emphasize them to the jury. Here Verizon are hoping the jury will be confused as to the shifting burdens and they want to improperly constrain Mobility's closing argument. At the same time, of course Mobility does not intend to argue incorrect jury instructions to the jury. This Court has routinely and properly given instructions that references the presumption of validity.

Verizon's reference to *Chiron Corp. v. Genentech, Inc.,* 363 F.3d 1247 (2004), a case where the presumption of validity was left out of the jury instructions, is misplaced because that opinion explains the presumption of validity of a patent and defendant's requirement to prove invalidity by clear and convincing evidence are two heads of the same coin. "[T]he presumption of validity and heightened burden of proving invalidity "are static and in reality, different expressions of the same thing—a single hurdle to be cleared." *Id* at 561. While *Chiron Corp* found no reversible error in failing to instruct on presumption of validity, an order not to discuss the flip side of the coin would be entirely legal error. *See Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346-BBC, 2014 WL 4955302, *1 (W.D. Wis. Oct. 1, 2014) (denying motion *in limine* seeking to preclude reference to presumption of validity). Also, the presumption of validity is *expressly mandated* by the patent statute at 35 U.S.C. § 282 ("A patent shall be presumed valid."), and it is not redundant or confusing to inform the jury of this statutorily-mandated presumption.

11

Although it certainly would not be error to allow Mobility to discuss the presumption of validity at trial, it very well might be reversible error not to allow Mobility to state what the patent statute specifically says. Thus, Verizon's MIL No. 11 must be denied.

**MIL 12.    No reference to indemnification.**

Although Mobility does not intend to offer evidence that Verizon is being indemnified by its equipment suppliers, there is no reason for Mobility to mention this if Verizon opens the door to such evidence coming in.

**MIL 13.    Verizon Improperly Attempts to Shift the Burden on Issues Related to Validity to Mobility.**

Verizon's MIL13 is a complete tautology, to wit: "Exclude evidence that <u>prior art</u> does not qualify as <u>prior art</u>." The simple fact of the matter is that it is Verizon's burden, as part of its invalidity case, to establish the prior art status of any given reference, including whether such a reference constitutes a printed publication and whether the printed publication was published more than one year before the effective filing date a particular claim, *see* pre AIA 35 U.S.C. § 102(b) or prior to the date of invention of the challenged claim, *see* pre AIA 35 U.S.C. § 102(a), (e). Mobility was not required to admit the prior art status of any reference, much less the specific references mentioned in the cited requests for admission which have questions about when and whether they were actually made available to the public in a manner that would qualify them as prior art. Accordingly, Verizon's MIL 13 should be denied.

Mobility also notes, that Verizon has taken no steps to focus its invalidity case for trial. It is presently asserting dozens of references (in some cases related to the standards, Verizon and its expert even attempts to treat individual standards documents as a unitary publication), Mobility is only asserting three claims each from both the '330 and '417 patent. At this stage of the litigation, Verizon should be focusing its invalidity case to no more than three or four references per patent.

If Verizon was willing to focus its case, Mobility would be willing to make a good faith effort to try and narrow the issues to be tried to the jury.

**MIL 14.** **Exclude characterization of the burden of proof for the "clear and convincing" standard.**

As written, Verizon's request is overly broad, and their concerns are unduly worrisome. Of course, Mobility has no plans to refer to the burden of prove in a child custody case or mental commitment proceedings, but at the same time, Mobility should not be put under a gag order and not be able to talk about the presumption of validity and read the clear and convincing evidence instruction to the jury. This motion should be denied as irrelevant. Otherwise any litigant could dream up a silly scenario and ask the trial court to issue a ruling preventing the opponent from arguing the silly scenario.

**MIL 15.** **Exclude arguments/evidence regarding indirect infringement.**

Mobility's complaint focused on indirect infringement. With respect to the '330 patent, however, Verizon completely failed to produce any documents during discovery related to how Verizon requires 3rd party manufacturers to use network emulators according to the '330 patent in order for their 4G LTE compliant products to gain access to the Verizon LTE network. Verizon's 30(b)(6) witness stressed that Verizon has specifications for both branded and non-branded products. Although Mobility was able to find copies of certain of Verizon's Specifications that control its relationship with non-branded products, Verizon has yet to produce any documents with respect to its branded or non-branded programs. However, Mr. Venizelos (Verizon's 30(b)(6) witness) made clear during his deposition on July 9, 2019, that no mobile device is permitted on the Verizon LTE network without complying with these specifications. As indicated in Mobility's surreply, Mobility believes this is more than sufficient to establish direct infringement. Nonetheless, given Verizon's suppression of plainly relevant evidence, and Mr. Venizelos

testimony Verizon should not be able to preclude Mobility from also pursuing an Verizon for inducing infringement of the '330 patent, as an alternative theory. Any claim of prejudice rings hollow given Verizon's complete failure to produce relevant evidence.

**MIL 16.** **Exclude arguments/evidence regarding doctrine of equivalents.**

Verizon's MIL 16 should be denied. Mobility has provided clear notice of its infringement positions throughout, both in its infringement contentions and expert reports. If the jury should decline to find literal infringement, the jury should consider infringement under the doctrine of equivalents on the very infringement positions that Mobility has disclosed throughout. Further, Verizon cannot complain, as any late disclosures was directly caused by Verizon's intentional suppression of relevant evidence.

**MIL 17.** **Exclude arguments/evidence regarding Verizon's "Can you hear me now?" advertisements.**

MIL 17 should be denied. Whether there is a nexus between the commercial and either of the patents at issue is within the province of the jury. Also see opposition to MIL 5 and 19.

**MIL 18.** **Exclude arguments/evidence/testimony regarding unaccused products and systems.**

Verizon's 5G network is not an accused product in this case. It was commercialized after the filing of the complaint. The rest of Verizon's MIL 18 should be denied. With respect to the '417 patent, Mobility's infringement contentions make clear that it is the Verizon LTE Network that infringes. Further, Mobility's contends that in order to have an LTE compliant network, Verizon is required to infringe, regardless of equipment manufacturer that provides the individual components of its network. This is made clear by Mobility's infringement contentions, as well as Dr. Nair's expert report, and the various testimony in this case. It was also made clear by Mobility's opposition to Verizon's Summary Judgment motion. (Dkt. 119.) Likewise, Mobility's '330 contentions used the Spirent equipment as exemplary. As noted in MIL 15 above, Verizon

suppressed all of its test specification related to its branded and unbranded approval programs. It was only after extensive searching that Mobility was able to find non-branded test specs, and even then, Verizon refused to authenticate those documents. It was not until Mobility was able to take Verizon's 30(b)(6) witness on July 9th that mobility was able to confirm the test specs, which identify a multitude of other equipment manufactures that provide equipment that can be used in compliance with Verizon's test specs. Verizon's efforts to suppress evidence should not be rewarded. MIL should be 18 should be denied.

**MIL 19.** **Exclude evidence, argument, or suggestion that commercial success, long-felt need, or other secondary considerations of non-obviousness have a nexus to asserted patents.**

The question of whether there is a nexus between any given secondary consideration and the claimed invention is squarely within the province of the jury. Verizon's position is also contrary to its position on damages; Verizon should not be allowed to assert that Mobility's past licenses to the asserted patents are comparable in an effort to lower the reasonable royalty rate, and then turn around and prohibit Mobility from asserting those very same licenses provide secondary consideration evidence of the validity of the patents. Moreover, Verizon's own 30(b)(6) witness provided praise for the invention of the '330 patent and the importance of using emulation in the testing of LTE compliant devices for access to the Verizon network. (Dkt. 119-8 (Venizelos Depo) at 56:5 – 58:2; 174:3-19.) Further, contrary to Verizon's position, substantial detail was provided in both Mobility's responses to interrogatories (Dkt. 144-7; Ex. 6 at ¶¶ 27-28) and in Dr. Nair's Rebuttal Report (Dkt. 144-8; Ex. 7 at ¶¶ 64-72.) with respect to the Nexus between the claimed inventions and applicable secondary considerations. Accordingly, Verizon's MIL 19 should be denied.

Dated: September 26, 2019                /s/Michael Machat
                                         Michael Machat
                                    Machat & Associates, PC
                                         8730 W. Sunset Blvd., Ste. 250
                                         West Hollywood, CA 90069
                                         Tel: (310) 860-1833
                                         Michael@machatlaw.com

                                         Attorneys for Plaintiff Mobility Workx

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2019, a true and correct copy of the foregoing **MOBILITY WORKX LLC'S PROPOSED JURY INSTRUCTIONS AND VERDICT FORM** was filed with the Court via CM/ECF together with referenced Exhibits, which will send notification of such filing to all registered participants.

/s Michael Machat
Michael Machat