# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MOBILITY WORKX, LLC, | § | |
| *Plaintiff*, | § | Civil Action No. 4:17-CV-00872 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| CELLCO PARTNERSHIP D/B/A | § | |
| VERIZON WIRELESS, | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99); Defendant's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin Hernandez (Dkt. #101); Defendant Verizon Wireless's Motion to Exclude the Opinion of Dr. Edwin A. Hernandez (Dkt. #102); and Plaintiff Mobility Workx, LLC's Motion to Strike Portions of James Proctor's Expert Report (Dkt. #104). Having considered the Motions and the relevant pleadings, the Court finds that: (1) Defendant's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99) is **DENIED** in part—the remaining disputes will be taken up at the Final Pretrial Conference; (2) Defendant's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin Hernandez (Dkt. #101) is **GRANTED**; (3) Defendant Verizon Wireless's Motion to Exclude the Opinion of Dr. Edwin A. Hernandez (Dkt. #102) is **DENIED**; and (4) Plaintiff Mobility Workx, LLC's Motion to Strike Portions of James Proctor's Expert Report (Dkt. #104) is **DENIED** in part—the remaining disputes will be taken up at the Final Pretrial Conference.

**BACKGROUND**

Plaintiff Mobility Workx, LLC, ("Mobility Workx") is a limited liability company organized and existing under the laws of the State of Florida (Dkt. #1). Mobility Workx owns several complex patents in various fields including communications systems and wireless network emulators (Dkt. #1). Among Mobility Workx' portfolio of patents are "patents that teach valuable innovations and improvements related to predictive systems for supporting wireless communications" (Dkt. #1). This action concerns three of those patents.

According to Mobility Workx, Defendants Verizon Communications, Inc. and Cellco Partnership D/B/A Verizon Wireless ("Verizon") infringed on three of Mobility Workx' patents: namely, Mobility Workx' "'508 Patent," "'417 Patent," and "'330 Patent" (Dkt. #1). The '508 Patent was issued on April 13, 2010 as U.S. Patent No. 7, 697, 508 (Dkt. #1). The patent was entitled "System, Apparatus, and Methods for Proactive Allocation of Wireless Communication Resources" and was invented by Edwin A. Hernandez and Abdelsalam A. Helal (Dkt. #1). According to Mobility Workx, the '508 Patent "teaches, among other things, a system for allocation of resources in a communication network for supporting wireless communications" (Dkt. #1). Specifically, the '508 Patent "leads to reduced delays and information losses in wireless communication networks by reducing registration overheard and setup times associated with mobile node handoffs" (Dkt. #1). This is achieved "by allocating communication network resources proactively rather than reactively" (Dkt. #1).

The '417 Patent was issued on July 3, 2012 as U.S. Patent No. 8,213,417 (Dkt. #1). The patent was also entitled "System, Apparatus, and Methods for Proactive Allocation of Wireless Communication Resources" and was also invented by Edwin A. Hernandez and Abdelsalam A.

Helal (Dkt. #1). The '417 Patent accomplishes the same feats as the '508 Patent discussed above (Dkt. #1).

The '330 Patent was issued on June 12, 2007 as U.S. Patent No. 7,231,330 (Dkt. #1). The patent was entitled "Rapid Mobility Network Emulator Method and System" and was invented by Edwin A. Hernandez-Mondragon and Abdelsalam A. Helal (Dkt. #1). The '330 Patent, according to Mobility Workx, "teaches, among other things, a system and method for emulating mobile network communications" (Dkt. #1). The '330 Patent is different than the '508 and '417 Patents. For instance, the '330 Patent provides "for the modeling and testing of various mobile network configurations and scenarios" (Dkt. #1). This is accomplished by "dynamically adjusting the signal reception sensitivity and signal transmission strength of each wireless node and by emulating at least one wireless network node attribute to stimulate network conditions by the mobile node in communicating with network-connected nodes" (Dkt. #1).

The '508 Patent, '417 Patent, and '330 Patent were all assigned by Dr. Hernandez and Dr. Helal—Mobility Workx' managing partners—to Mobility Workx. Consequently, Mobility Workx is "the owner of all substantial right, title, and interest in and to the Patents-in-Suit" (Dkt. #1). Despite Mobility Workx owning the rights to each patent, Mobility Workx asserts that Verizon has begun offering to sell a product ("the Accused Product") which infringes on all three of Mobility Workx' patents (Dkt. #1). Verizon denies infringing upon Mobility Workx' '508 Patent, '417 Patent, and '330 Patent (Dkt. #12).

After both parties served their respective Expert Reports, each party filed motions to strike and/or exclude specific experts or opinions. At the outset, it should be noted that each Motion filed by Mobility Workx or Verizon includes its own specific facts. For the sake of clarity, this portion of the Court's opinion only addresses an overview of the case and leave the Motion-

specific facts for each respective Part below. The Motions that those portions of the opinion will address are as follows.

Part I concerns Verizon's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99). In its Motion, Verizon claims that Dr. Nair's report contains new infringement theories that were absent from Mobility Workx Infringement Contentions ("ICs") (Dkt. #99). Verizon accordingly requests that these new theories be stricken (Dkt. #99). Additionally, Verizon claims that certain opinions of Dr. Nair "are incomplete, conclusory, and/or conflicting with the Court's claim construction" (Dkt. #99). Verizon requests that those opinions be excluded under *Daubert* (Dkt. #99). Mobility Workx opposes Verizon's Motion and claims that: (1) the Motion is untimely; (2) Dr. Nair does not introduce any new theories of infringement; and (3) Dr. Nair's opinions comply with the *Daubert* standard (Dkt. #111).

Part II addresses Verizon's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin A. Hernandez (Dkt. #101). In this Motion, Verizon argues that Mobility Workx designated Dr. Helal as an expert but failed to serve Verizon with an expert report as required by Rule 26(a)(2)(B) and the Court's Scheduling Order (Dkt. #101). Verizon further asserts that Mobility Workx designated Dr. Hernandez as an expert over certain topics that "were not contained within Dr. Hernandez's 'expert' report" (Dkt. #101). Thus, Verizon requests that the Court strike the expert disclosure of each of Mobility Workx' experts. Mobility Workx counters that: (1) Verizon's Motion is untimely; and (2) Dr. Helal and Dr. Hernandez concurred with Dr. Nair's revised expert report and thus there is no element of surprise for Verizon. Mobility Workx also requests that, should the Court grant Verizon's Motion, the Court additionally grant Mobility Workx leave to file a late expert report by Dr. Helal and Dr. Hernandez (Dkt. #109).

Part III then addresses Verizon's third Motion. Following its first two Motions, Verizon filed a Motion to Exclude the Opinions of Dr. Edwin A. Hernandez (Dkt. #102). Verizon claims that Dr. Hernandez is not qualified as a damages expert and that his royalty rate does not reflect "reliable principles and methods" and is not "based on sufficient facts or data" (Dkt. #102). Accordingly, Verizon requests that the Court exclude the opinions of Dr. Hernandez (Dkt. #102). Mobility Workx opposes Verizon's Motion (Dkt. #110). Mobility Workx claims that Dr. Hernandez is qualified to render opinions on damages and that the methodology he relied upon is sound (Dkt. #110).

Finally, Part IV addresses Mobility Workx' Motion to Strike Portions of James Proctor's Expert Report (Dkt. #104). Here, Mobility Workx requests that the Court strike Proctor's obviousness opinions, standards opinions, all portions referring to new references, discussion of the '330 background, all unsupported written description opinions, all portions contrary to the Court's claim construction, all references to incorporated invalidity charts, paragraph 208 referring to Claim 7, and any highlighted portions in Mr. Proctor's Expert Report not discussed in Mobility Workx' Motion (Dkt. #104). Verizon opposes Mobility Workx' Motion and claims that: (1) Proctor's obviousness opinion was properly disclosed; (2) Proctor's standards opinion was properly disclosed; (3) Proctor's reliance on Mobile IPv6, Gwon II, and 3G UMTS specifications is proper; (4) the '330 patent background section is proper; (5) Proctor's written description opinions are properly supported under *Daubert*; (6) Proctor's discussion of Claim 7 of the '417 Patent is proper; and (7) highlighted portions of Proctor's report are not properly the subject of Mobility's Motion (Dkt. #108). The Court now addresses Verizon and Mobility Workx' respective Motions.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally

accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

At the outset, the Court notes that both parties have raised arguments surrounding the timeliness of these disputes. Mobility Workx and Verizon each argue that the other party has waived any arguments surrounding the expertise, methodology, reliability, or conclusions of the other party's experts. While each party is required to adhere to the Court's Scheduling Order, equity and the Court's gatekeeping role under *Daubert* also factor in to whether the Court will consider arguably dilatory claims. To be sure, it is axiomatic that the Court serves as a gatekeeper over all expert testimony to ensure a fair judicial process. *See Kuhmo Tire Co.*, 526 U.S. at 152. Therefore, irrespective of Verizon and Mobility Workx' disputes over a potential waiver of claims, the Court finds that it must exercise its gatekeeping authority. The decision of the Court ensures that the judicial proceeding is equitable. Each party claims that the other party's arguments are waived yet asks for its own arguments to be preserved. By hearing all arguments, and foregoing the deadlines set out in the Scheduling Order *in this instance*,[1] each party receives the benefit of

---

[1] It must be noted that the Court's decision should not be misconstrued as precedential permission to violate the Court's deadlines as set out in its Scheduling Orders. This decision is grounded in the facts of this particular case and

having its own argument heard while facing the reality that the other party's countervailing arguments must also receive the same leniency. Because this is the most equitable manner for proceeding in this instance, the Court continues, without addressing Verizon and Mobility Workx' waiver arguments, to the merits.

As previously aforementioned, there are four pending disputes. Those disputes include: (1) Defendant's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99); (2) Defendant's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin Hernandez (Dkt. #101); (3) Defendant Verizon Wireless's Motion to Exclude the Opinion of Dr. Edwin A. Hernandez (Dkt. #102); and (4) Plaintiff Mobility Workx, LLC's Motion to Strike Portions of James Proctor's Expert Report (Dkt. #104). The Court addresses each in turn.

I. Defendant's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99);

Verizon first filed a Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99). Verizon claims that Dr. Nair's report contains new infringement theories that were absent from Mobility Workx' Infringement Contentions ("ICs"). Verizon also claims that certain opinions of Dr. Nair "are incomplete, conclusory, and/or conflicting with the Court's claim construction" (Dkt. #99). As a result of these contentions, Verizon requests that any new theories and unsupported opinions be stricken and/or excluded under *Daubert* (Dkt. #99). Mobility Workx opposes Verizon's Motion and claims that Dr. Nair does not introduce any new theories of infringement and, further, that Dr. Nair's opinions comply with *Daubert* (Dkt. #111). The Court first addresses Verizon's claim that Dr. Nair has inserted

---

controversy and hinges upon cross-motions to exclude and strike expert witnesses with competing claims that each party's motion is dilatory. It is only for those reasons that the Court finds it equitable to consider the merits of the arguments rather than deem the arguments waived.

new theories absent from Mobility Workx' Infringement Contentions.  Following that discussion, the Court will then address Verizon's *Daubert* arguments.

a.   Theories of Infringement

Under the Local Patent Rules, a party asserting infringement must "serve infringement contentions on each defending party."  *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. Aug. 8, 2014) (discussing U.S. DIST. CT. RULES E.D. TEX., Patent Rule 3–1).  These contentions must "set forth specific theories of infringement at the outset of the case."  *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. Jan. 9, 2006).  "Expert infringements reports may not introduce theories not previously set forth in infringement contentions."  *ROY-G-BIV Corp.*, 63 F. Supp. 3d at 699; *see also Realtime Data, LLC v. NetApp, Inc.*, 2017 WL 4844254, at \*1 (E.D. Tex. Oct. 26, 2017) (quoting the same language); *Godo Kaisha IP Bridge 1 v. Broadcom Limited*, 2017 WL 2869331, at \*1 (E.D. Tex. Apr. 27, 2017) (quoting the same language); *Core Wireless Licensing, S.A.R.L. v. LG Electronics, Inc.*, 2016 WL 3655302, at \*1 (E.D. Tex. Mar. 21, 2016) (quoting the same language); *SSL Services, LLC v. Cisco Systems, Inc.*, 2016 WL 727673 at, \*7 (E.D. Tex. Feb. 24, 2016); *Better Mouse Company, LLC v. SteelSeries APS*, 2016 WL 7665892, at \*1 (E.D. Tex. Jan. 8, 2016) (stating that the purpose of the Local Patent Rules is "to require the parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)).  As *ROY-G-BIV Corp.* continues, however:

> The scope of infringement contentions and expert reports are not [] coextensive. Infringement contentions need not disclose "specific evidence nor do they require a plaintiff to prove its infringement case," *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09–cv–116, 2010 WL 346218, \*2 (E.D. Tex. Jan. 21, 2010), whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them.  FED. R. CIV. P. 26(a)(2)(B).

*Id.* at 699. A degree of generality is permitted because "[i]nfringement contentions are not intended to act as a forum for argument about the substantive issues but rather serve the purpose of providing notice to the Defendants of infringement theories beyond the mere language of the patent claim." *Motion Games, LLC v. Nintendo Co.*, 2015 WL 1774448, at *4 (E.D. Tex. Apr. 16, 2015) (citing *Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. Sept. 19, 2008)).

Verizon argues that Dr. Nair improperly introduces a series of new theories of infringement that are absent from Mobility Workx' Infringement Contentions. Those allegedly new theories include, as to the '417 Patent: "(1) a new theory of induced infringement, (2) what serves as the 'home agent,' (3) what serves as the 'foreign agent,' and (4) alleged new theories related to Claim Elements [417.7c] and [417.d]" (Dkt. #111) (summarizing the arguments made in Dkt. #99). As to the '330 Patent, the allegedly new theories include: "(1) a theory of inducement, (2) a doctrine of equivalents argument, and (3) accusations against previously undisclosed manufacturers and products" (Dkt. #111) (summarizing the arguments made in Dkt. #99).

Mobility Workx' response is dedicated to factual support surrounding its new theories, rather than any response that these theories were already included in its Infringement Contentions or are not prejudicial to Verizon because Verizon had notice of the theories. Such arguments do not persuade the Court that these new theories should now be introduced. *See ROY-G-BIV*, 63 F. Supp. 3d at 699. With that being said, the Court is hesitant to strike allegedly new theories without adequate argument. Thus, the parties are hereby on notice that the arguments surrounding these purportedly new theories will be taken up at the final pretrial conference. Those theories to be taken up include: (1) as to the '417 Patent, the theory of induced infringement, what serves as a home agent, what serves as the foreign agent, and the new theories related to Claim Element 417.7c

and 417.d; and (2) as to the '330 Patent, the theory of inducement, doctrine of equivalents argument, and accusations surrounding previously undisclosed manufacturers and products.

###### b. *Daubert* Challenge

In determining the admissibility of expert testimony, proper deference should be accorded to the role of the jury "as the arbiter of disputes between conflicting opinions." *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore County, State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the Supreme Court stated in *Daubert*, any "absurd and irrational pseudoscientific assertions" can be properly remedied by the "capabilities of the jury and of the adversary system generally." *Daubert*, 509 U.S. at 595–96. It is for this reason that the Court may not judge the expert conclusions themselves. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see also Wallis v. Hornbeck Offshore Operators*, 2014 WL 3809743, at *1 (E.D. La. Aug. 1, 2014) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact."). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas,* 483 U.S. 44, 61 (1987)); *see also Primrose Operating Co. v. Nat'l Am. Ins. Co.,* 382 F.3d 546, 562 (5th Cir. 2004) ("It is the role of the adversarial system, not the court, to highlight weak evidence."). Put simply, a court "is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion

is reliable." *Wallis*, 2014 WL 3809743 at *1 (citing *Johnson v. Arkema, Inc.,* 685 F.3d 452, 459

(5th Cir. 2012)).

Here, Verizon argues that "[f]or every limitation of the asserted claims of the '417 Patent

[and '330 Patent], Dr. Nair's analysis is incomplete, based on insufficient evidence, and/or outright

conclusory" (Dkt. #99). Verizon's arguments are as follows:

- '417 Patent
  - 417.1a: "Dr. Nair boldly alleges that 'Proxy Mobile IPv6 is part of the requirement set by Verizon for all LTE products,' but his only basis is a quote from a *draft* document dated February 2019 relating only to Verizon's LTE Band 13 network access . . . ." This allegation, according to Verizon, is an "extreme generalization of Verizon's entire LTE network . . . based on a very recent document about one particular segment . . . ."
  - 417.1c & 417.1d: "Dr. Nair provides an incomplete analysis for his identification of the P-GWas the 'home agent' and the 'eNodeB/S-GW component by itself or in conjunction with the S-GW' as the 'foreign agent.' The Court construed 'foreign agent' as 'a network node **on a visited network** that assists the mobile node in receiving communications,' yet he fails to explain what aspect of Verizon's LTE network satisfies the required claim element of a 'visited network.' Similarly, he defines a 'home agent' as 'the agent that resides **in the home network**,' but fails to identify what satisfies the required claim element of a 'home network.'. . . . Further, Dr. Nair tries to redefine 'visited network' on the basis of IP addresses and tunneling, but the Court specifically rejected Mobility's attempt to do the same during claim construction."
  - 417.1e: "Dr. Nair briefly identifies certain system messages but provides no analysis whatsoever as to how the future location of a mobile node is 'predicted' and why the alleged foreign agent(s) identified are proximate to that 'predicted future location.'
  - 417.1f: "Claim Element [417.1f] requires a 'ghost-mobile node that **creates replica IP messages** . . . **triggering signals based on a predicted physical location of such mobile node or distance** with relation to the at least one foreign agent,' but Dr. Nair fails to address these limitations in his analysis."
  - 417.4: "Dr. Nair mistakenly recites Claim Element [417.1f] and leaps to the conclusion that 'Verizon infringes Claim 4.' In that leap, he fails to provide any analysis of Claim 4, which requires 'the at least one ghost mobile node is **a proxy element** for the at least one foreign agent and the at least one mobile node, the at least one ghost-mobile node **triggering registration based on a distance to a foreign agent by relaying security and shared secrets from a mobile node**, and **at least one advertisement message from a foreign agent in a vicinity of the ghost-mobile node**,' especially the emphasized elements."
  - 417.7b: "Dr. Nair cites to the same Verizon-branded document discussed above to state that '[t]he location information or position [of a mobile node] is copied over

to the eNodeB by Verizon. This is done by the Measurement Report and it contains device's location.' As stated earlier, the information cited from this document is not representative of Verizon's LTE network as a whole, and Dr. Nair relies on information related to 'Minimization of Drive Test,' which is directed to testing and not for regular use of Verizon's LTE network."

- 417.7c: "Dr. Nair provides newly introduced infringement theories, as discussed above, but for each one he fails to provide an explanation of how it 'determin[es] a distance, in the ghost mobile node . . . , to a closest foreign agent with which the mobile node can complete a handover' as required."

- 417.7d: "Dr. Nair opines that 'this elementi [sic] is met by Verizon's X2 handover and CSG cells/eNodeBs,' but his cursory analysis only discusses a particular handover process involving CSG cells, which is not accused in this case."

- 417.7e: "Dr. Nair simply restates the claim language—'upon completion of the handover a registration is updated in the mobile node'—and provides no further analysis."

- Finally, Dr. Nair alleges that 'Verizon actively induces its customers and end users (who use the Verizon LTE Network) to infringe,' but no analysis of induced infringement is present in the entirety of Dr. Nair's report for the '417 Patent."

- '330 Patent

  - 330.1b: "Dr. Nair fails to provide any analysis regarding whether any of the alleged wireless network nodes that he has identified are 'fixedly-located,' as required by all Asserted Claims."

  - 330.1c: "Dr. Nair fails to provide any allegations or analysis as to how the connection between the mobile node and the wireless network nodes is *wireless*. Rather than provide any analysis based on documentary evidence, Dr. Nair makes conclusory allegations and then jumps to conclusions, such as, wireless tests are 'the most effective way to test a phone' and therefore the mobile node is 'configured to wirelessly communicate with the wireless network nodes.' But nowhere does Dr. Nair provide any analysis of a specific mobile node being configured to wirelessly communicate with any specific wireless network node, nor identify any accused equipment that allegedly implements that wireless network node. Rather, Dr. Nair generally alleges in the abstract, without support, that unidentified mobile nodes are 'configured to wirelessly communicate with the [unidentified] wireless network nodes.' This amounts to a bare recitation of the claim language and should be stricken for failure to adequately support his opinions."

  - 330.1d: Dr. Nair merely points to various uses of the term 'network emulator' in various documents. But, again, Dr. Nair fails to examine how any of these references to 'network emulators' satisfy other limitations of this element, including how those emulators might be 'communicatively linked' to the wireless network nodes, as required by the claim language. Indeed, for each limitation, Dr. Nair fails to provide an analysis of how any of the identified equipment is used in combination to form the 'system' that, as a whole, allegedly infringes Claim 1. Rather, Dr. Nair's 'analysis' comprises scattershot references to the terms in the limitations, without any discussion as to the relevance of those terms.

- 330.1e: "Dr. Nair again simply identifies various pieces of equipment as the 'controller' without analysis. . . . Dr. Nair does not identify how or whether the alleged controllers infringe the various limitations of Element [330.1e], such as requiring that the controller simulate mobile communication conditions 'without changing operating parameters' of the mobile node. Dr. Nair's conclusory allegations to the contrary should be stricken.

(Dkt. #99) (internal citations omitted). Mobility Workx counters with a brief, two-paragraph response which claims that: (1) Verizon falsely claims that "'both parties agree Element [417.1a] is a limited preamble,'" but "Mobility never agreed to that, and the Court certainly has not construed it as limiting"; (2) the "draft documented dated February 2019" has been authenticated by Verizon's Rule 30(b)(6) witness; (3) "Verizon fails to address the fact that they are in possession of all 37 versions of this document but have failed to produce any single verions of this document in discovery . . ."; (4) Verizon "also wrongly claim[s] that Dr. Nair makes an extreme generalization based upon the supposedly inaccurate new document when in fact Dr. Nair cited to it as an example"; and (5) "[a]dditional argument with respect to the merits of defendants motion [will] be provided in connection with the opposition to the motion for summary judgment with supporting declarations" (Dkt. #111).

At the outset, the Court notes that Verizon is correct that the Local Rules state that "[t]he response and any briefing shall be contained in one document . . . A party's failure to oppose a motion in this manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion" (Dkt. #117) (citing L.R. CV-7(d)). With that being said, the Court has also already noted that it must exercise its gatekeeping role and allow for an equitable judicial proceeding. Verizon has not persuaded the Court that Dr. Nair's opinions should be forfeited in this case. Verizon's arguments are better characterized as disputes over weight and credibility than admissibility. *See Wallis*, 2014 WL 3809743, at *1. If Dr. Nair's claims are as unsupported or conclusory as Verizon claims, then

"vigorous cross examination" will reveal that. *See Daubert* 509 U.S. at 596. Indeed, cross-examination, rather than exclusion, is more a more appropriate means to establish the weight of the evidence, for it is not the role of the Court to weigh the strength of Dr. Nair's conclusions. *See Primrose Operating Co.,* 382 F.3d at 562 (5th Cir. 2004) ("It is the role of the adversarial system, not the court, to highlight weak evidence."). Thus, the Court finds that these disputes are better resolved by the jury and accordingly denies Verizon's Motion.

II.  Defendant's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin Hernandez (Dkt. #101);

Federal Rule of Civil Procedure 26(a)(2)(B) states:

(B) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, **this disclosure must be accompanied by a written report—prepared and signed by the witness—**if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B) (emphasis added). Federal Rule of Civil Procedure 26(a)(2)(C) states:

(C) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

FED. R. CIV. P. 26(a)(2)(C). Finally, the Court's Second Amended Scheduling Order (Dkt. #88) states, in relevant part: "June 17, 2019 – Parties with burden of proof to designate Expert Witnesses other than claim construction experts and provide their expert reports, to include for ALL experts all information set out in Rule 26(2)(B)."

Mobility Workx designated three experts for the present action. First, pursuant to Rule 26(a)(2)(B), Mobility Workx designated Dr. Suku Nair (Dkt. #101, Exhibit 1). Next, pursuant to Rule 26(a)(2)(C), Mobility Workx designated Dr. Edwin Hernandez and Dr. Sumi Helal (Dkt. #101, Exhibit 1). Verizon claims that: (1) Mobility Workx failed to serve an expert report written by Dr. Helal; and (2) designated Dr. Hernandez as an "expert to testify regarding certain topics that were not contained within Dr. Hernandez's 'expert' report" (Dkt. #101). The Court first addresses Verizon's claim that Mobility Workx has not provided an expert report prepared by Dr. Helal. The Court then addresses the scope of Dr. Hernandez' Expert Report.

a. Service of Expert Report

An expert report is a fundamental pre-trial requirement because it provides the opposing party with notice. *See Broadcom Limited*, 2017 WL 2869331 at *1 ("The purpose of both expert reports and infringement contentions is to provide the opposing party notice."); *Fenner Investments, Ltd. v. Hewlett–Packard Co.*, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010); *Smith & Nephew, Inc. v. Arthrex, Inc.*, 2010 WL 457142, at *8 (E.D. Tex. Feb. 5, 2010). Because of this, Rule 26(a)(2)(B) explicitly states that a written report *must* be "*prepared* and *signed* by the witness." FED. R. CIV. P. 26(a)(2)(B) (emphasis added). Preparing a witness report requires more than merely adopting another's report. As the Court has previously stated in *Quintel Technology*:

"Experts must undertake their own analyses and may not blindly rely on the opinions of others." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP,

2015 WL 12911530, at *2 (E.D. Tex. Sept. 30, 2015).  "Preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with [Federal Rule of Civil Procedure] 26(a)(2)(B)'s requirement that the expert 'prepare' the report."  *Seitz v. Envirotech Sys. Worldwide Inc.*, No. H-02-4782, 2008 WL 656513, at *2 (S.D. Tex. Mar. 6, 2008) (citations omitted).  "Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement."  *Id.*  (citation omitted).  "The party seeking to strike an expert's testimony has the burden of proving that the report was 'ghost-written.'"

*Quintel Technology Ltd. V. Huawei Technologies USA, Inc.*, 2018 WL 626355, at *9 (E.D. Tex Jan. 30, 2018).  The Court has addressed not only the requirements of an expert report, but the service of an expert report, too.

In *Motio, Inc. v. BSP Software LLC*, the Court held that Plaintiff Motio's failure to provide an expert report under Rule 26(a)(2)(B) for Motio's proposed expert, who was designated pursuant to Rule 26(a)(2)(C), precluded any testimony from the proposed expert.  2016 WL 74425, at *2 (E.D. Tex. Jan. 6, 2016).  Motio had argued that, because its proposed expert was designated pursuant to Rule 26(a)(2)(C), Rule 26(a)(2)(B) was inapplicable.  The Court, however, held otherwise.  Citing the Court's Scheduling Order, the Court stated that the Order "specifically identifies and emphasizes that parties are to provide their expert reports as set out under subsection (B) for 'ALL experts.'"  *Id.* (citation omitted).  Even if the Court found plaintiff's mistaken interpretation to be reasonable, the Court continued, Motio "failed to comply with the requirements of Rule 26(a)(2)(C).  *Id.*  Specifically, the Court noted that Motio had merely offered a list of topics that the proposed expert could speak toward with no facts or opinions.  Thus, the Court found that Motio did not "provide a meaningful 'summary of the facts and opinions to which [the proposed expert was] expected to testify."  *Id.*

Here, Mobility Workx makes three arguments surrounding why Dr. Helal's expert disclosure should not be stricken.  Each of Mobility's arguments fail.

### i.  Distinguishing *Motio*

First, Mobility Workx claims that the present action is distinguishable from *Motio* because, here, Dr. Helal and Dr. Hernandez concurred with Dr. Nair's expert report and, further, Dr. Helal concurred with the methodology and contents of Dr. Hernandez' report. Thus, this dispute, Mobility Workx argues, is one of form over substance that lacks merit because Verizon has effectively been placed on notice as to what Mobility Workx' experts will testify. Mobility Workx misses the mark. The judicial process is filled with formal requirements and rules for a purpose; namely, that each litigant receives a fair, full, and just judicial process. *See* FED. R. CIV. P. 1. Mobility Workx claims that this fair process can still be met because Verizon was placed on notice by the experts adopting and concurring with one another's opinions. While it is true, to an extent, that some form of notice has been provided to Verizon, that notice is legally inadequate. *Genband US*, 2015 WL 12911530 at *2. As previously stated, an expert report is simply inadequate when a party "peruses" another expert's report, adopts that expert's findings, and then merely signs "one's name at the bottom to signify agreement." *Quintel Technology*, 2018 WL 626355 at *9. Thus, Mobility Workx has categorically failed to comply with the requirements of Rule 26(a)(2)(B).

### ii.  Mistaken Interpretation of the Court's Scheduling Order

Mobility Workx' second argument is that it was unaware that it was under the requirements of Rule 26(a)(2)(B), rather than Rule 26(a)(2)(C). Because of this mistake, Mobility Workx claims that it should be granted leniency. This argument fails for two independent reasons. First, the Court's Scheduling Order is far from ambiguous. The language clearly states that the parties are to provide "expert witnesses report, to include for ALL experts all information set out in Rule 26(2)(B)" (Dkt. #88). That Mobility Workx is a "new participant to litigation in this District" does

not provide Mobility Workx with an excuse for not following the Court's Orders. If Mobility Workx was confused about the Court's Order, it should have sought clarification or researched how the Order had been construed in a nearly identical case. *See Motio, Inc.*, 2016 WL 74425, at *2. There is simply no tenable justification for misconstruing the Court's Order. For this reason, Mobility Workx' mistaken interpretation fails to serve as the shield that Mobility Workx desires.

Additionally, Mobility Workx claims that its mistaken interpretation caused Verizon no prejudice because Mobility Workx provided Verizon with the information required under Rule 26(a)(2)(C). Like in *Motio*, however, Mobility Workx did not comply with the rigors of Rule 26(a)(2)(C). As previously stated, Rule 26(a)(2)(C) requires that a party disclose the following information for any witness who does not provide a written report:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

> (ii) a summary of the facts and opinions to which the witness is expected to testify.

In *Motio*, Plaintiff Motio provided the following disclosure for its proposed expert, Lynn Moore:

> Mr. Moore, in addition to offering fact testimony that is not subject to disclosure under Rule 26(a)(2)(C), may present expert testimony on the patent-in-suit and the products at issue in this lawsuit including the operation of Motio's MotioCI product and Defendants' ICS/IVC product. He may also present expert testimony in response to the opinions expressed by Defendants' purported experts. It is expected that Mr. Moore may testify as to the validity of the patent in suit pursuant to 35 U.S.C. §§ 101, 102, 103 & 112 including secondary considerations of non-obviousness. It is expected that Mr. Moore may testify as to Defendants' infringement of the patents in suit and the resulting damage to Motio by Defendants' continued infringement.

*Motio, Inc.*, 2016 WL 74425, at *2. The Court, after holding that Motio's disclosures failed to meet the requirements of Rule 26(a)(2)(B), additionally held that Motio's disclosures failed to meet the requirements of Rule 26(a)(2)(C). Specifically, the Court found that "Plaintiff merely lists a set of topics that Mr. Moore may speak toward, but offers no actual facts or opinions, forcing Defendants to make assumptions based on things outside the disclosure as to what Mr. Moore will testify." *Id.* Motio claimed, however, that even if the disclosures were insufficient, there was no

prejudice to the defendants because they could refer to previous depositions of Moore to ascertain what Moore would testify to. *Id.* The Court rejected this argument and explicitly held that "referral to depositions is not an adequate substitute for the summary required by Rule 26." *Id.* (citing *Retractable Technologies, Inc. v. Becton, Dickinson and Co.*, 2013 WL 4776189, at *3–4 (E.D. Tex. Sep. 6, 2013)). As such, the Court found that Motio had not provided defendants with proper notice or disclosures and accordingly struck the expert disclosures of Motio's proposed expert.

Here, the facts, while not identical to those of *Motio*, compel the same conclusion. For the sake of clarity, Mobility Workx' disclosures, as summarized by Verizon, are laid out here:

Mobility Workx intends to offer expert testimony from Dr. Helal and Dr. Hernandez pursuant to Rule 26(a)(2)(C) on numerous topics, including the following:

- damages;
- defendant's [alleged] usage of plaintiff's '417 patent on their network;
- defendant's [alleged] usage of plaintiff's '330 patent and their [alleged] requirement that all of its vendors test phones using the '330 patent before it can be accepted for use on defendant's cellular network;
- matters that may be necessary or appropriate to rebut any of Defendant's defenses;
- that it is not possible for defendant Verizon to offer its cellular phone services without infringing upon the '417 patent because the teachings of the '417 patent are needed to prevent dropped calls when a cellular user travels from one cell to another;

*See* Ex. 1, 2-4. Mobility supplemented this designation and indicated that, in addition to the above topics, its witnesses would offer the following expert testimony:

- Both Dr Helal and Dr. Hernandez may testify about the facts and opinions expressed in Dr. Suku Nair's revised expert report, which Dr. Helal and Dr. Hernandez concur with;
- Dr. Helal agrees with the methodology contained in each of the reports prepared by Dr. Hernandez and is prepared to testify about the contents of those report as well";
- Dr. Hernandez and Dr. Helal have reviewed the Expert Report of James A. Proctor and are prepared to explain how Mr. Proctor has misunderstood the teaching of the references relied on by Mr. Proctor to conclude the asserted claims of the patents in suit are invalid;
- Dr. Hernandez and Dr. Helal are prepared to testify about how the LTE system works compared to prior wireless communication networks, including the differences between the equipment that makes up the systems, the differences in hand over procedures between the different systems;
- Notwithstanding the foregoing, Plaintiff and their experts reserve the right to provide expert testimony on any matter for which they are asked to provide opinion

testimony during their depositions in this matter, and supplement any expert opinions and/or reports in rebuttal to any subject matter.

Dkt. #101. While there are quantitatively more disclosures here than in *Motio*, the quality of the disclosures fare no better. Each disclosure surrounding Dr. Helal is conclusory, unsupported by facts or opinions, and requires Verizon to make assumptions about what *exactly* Dr. Helal will testify to. Additionally, while Mobility Workx claims that Verizon has been given proper notice because Dr. Helal has *concurred* entirely with Dr. Nair and Dr. Hernandez' expert reports, the reference to another expert's report is insufficient. Like reference to deposition testimony, which at the very least comes from the *same* expert, reference to another expert's report is "not an adequate substitute for the summary required by Rule 26[(a)(2)(C)]." *Motio, Inc.*, 2016 WL 74425, at *2. Mobility Workx second argument accordingly fails.

### iii. Leave to File Late Expert Reports

The third and final argument that Mobility Workx makes is more of a request. Should the Court grant Verizon's Motion, Mobility Workx requests that it receive leave to file a late expert report by Dr. Helal and Dr. Hernandez. The Court would not be opposed to late expert reports, but the late expert reports that Mobility Workx offers are insufficient. The expert reports Mobility Workx suggests are merely reports "where each professor would simply sign the same report issued by Dr. Nair" (Dkt. #109). Such expert reports—reports that Mobility Workx unabashedly admits would be "ghost written"—would be wholly inadequate. *See Quintel Technology*, 2018 WL 626355 at *9. For these reasons, Mobility Workx request is denied.

### b. Scope of Dr. Hernandez' Expert Report

According to Verizon, "Mobility [served] expert reports authored by Dr. Hernandez, but they were limited to damages issues. Mobility did not provide any expert report from Dr. Hernandez on the remaining topics it identifies in the original and supplemental 'Designation of

Expert Witnesses'" (Dkt. #101). Mobility counters that because of "the language that [Dr.] Helal and [Dr.] Hernandez concur with the opinions expressed in Dr. Suku Nair's revised expert report, it is as if Dr. Helal and Dr. Hernandez signed the expert report signed by Dr. Nair" (Dkt. #109). As stated in Part II(a) *supra*, preparation of an expert report "implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Quintel Technology*, 2018 WL 626355 at \*9; *see also Genband US LLC*, 2015 WL 12911530 at \*2 ("Experts must undertake their own analyses and may not blindly rely on the opinions of others."). Given this interpretation of what it means to "prepare" an expert report, it is evident that Dr. Hernandez is not permitted to rely on Dr. Nair's analysis and adopt Dr. Nair's opinions wholesale without his own expert report. Dr. Hernandez' expert report only discusses damages (Dkt. #101). Consequently, Dr. Hernandez is only permitted to serve as an expert witness on damages. The merits of Dr. Hernandez' analyses, however, remain to be evaluated. The Court now turns to Defendant Verizon Wireless's Motion to Exclude the Opinion of Dr. Edwin A. Hernandez.

III.  Defendant Verizon Wireless's Motion to Exclude the Opinion of Dr. Edwin A. Hernandez (Dkt. #102);

Following Defendant's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin Hernandez (Dkt. #101), Defendant Verizon next filed a Motion to Exclude the Opinion of Dr. Edwin A. Hernandez (Dkt. #102). In its Motion, Verizon argues that Dr. Hernandez lacks the requisite qualifications to serve as an expert. Further, Verizon claims that, should the Court find that Dr. Hernandez is qualified, Dr. Hernandez' opinions are unreliable and not based on sufficient facts or data. Mobility Workx opposes each of Verizon's contentions. The Court addresses whether Dr. Hernandez is sufficiently qualified to serve as an expert first, then turns to the opinions Dr. Hernandez proffers.

a.  Dr. Hernandez' Qualifications

"Whether an individual is qualified to testify as an expert is a question of law." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614–15 (5th Cir. 2018) (citing *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002)).  Pursuant to Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion."  FED. R. EVID. 702; *see also United States v. Bourgeois,* 950 F.2d 980, 987 (5th Cir. 1992) ("[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth'"); *Kumho Tire Co.,* 526 U.S. at 151, 119 S. Ct. 1167 (stating that a witness may be an expert even if his or her expertise is based purely on experience).  Rule 702 does not require "that an expert be highly qualified in order to testify about a given issue." *Manitowoc Cranes*, 898 F.3d at 614–15.  Indeed, "[a]lthough an expert's qualifications may be less-than-sterling, she may still be certified." *Id.*  For all a Court must find "are 'sufficient indicia' that an individual will 'provide a reliable opinion' on the subject . . . ." *Id.* at 625 (citing *Huss v. Gayden*, 571 F.3d 442, 455–56 (5th Cir. 2009)).  This is because '[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.*  With that being said, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting *Holbrook v. Lykes Bros. Steamship Co., Inc.,* 80 F.3d 777, 781 (3d Cir. 1996)).  In making the determination of whether an expert is qualified, a district court is afforded "wide latitude." *Wilson v. Woods*, 163 F.3d 935, 936–37 (5th Cir. 1999) (citing *Watkins v. Telsmith, Inc.* 121 F.3d 984, 988 (5th Cir. 1997)).  The proponent of expert testimony has the burden of showing that the testimony is reliable.

*See United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Here, the Court finds that, while Dr. Hernandez' qualifications are "less-than-sterling," there is sufficient indicia that Dr. Hernandez can provide a reliable opinion on the subject of damages as an expert. *Williams*, 898 F.3d at 614–15. Dr. Hernandez is a Fulbright Scholar with a doctorate in computer engineering, master's degree in electrical and computer engineering, and bachelor's degree in electronics engineering. Dr. Hernandez has been issued eleven patents and has four additional patent applications pending. Further, Dr. Hernandez is the inventor of the patents in question here and is a principal at Mobility Workx. More importantly, for this dispute, Dr. Hernandez spent time with a number of companies prior to his time at Mobility Workx. One of those companies was Motorola. At Motorola, Dr. Hernandez "was called upon to evaluate patents, assess their market potential, look for flaws or weaknesses, and then advise how much the company should pay" (Dkt. #110) (citation omitted). This experience persuades the Court that Dr. Hernandez has sufficient qualifications to aid the trier of fact in assessing a patent's value. While none of Dr. Hernandez' degrees are in economics, a degree is not required to serve as an expert. *See* FED. R. EVID. 702; *Bourgeois,* 950 F.2d at 987. Accordingly, the Court holds that Dr. Hernandez has sufficient experience in evaluating technology and patents to license, providing third parties with economic advice, and evaluating assets to serve as the damages expert in this case.

Further, Verizon's arguments attacking Dr. Hernandez' qualifications are unpersuasive. Verizon claims that because Dr. Hernandez responded in deposition that a particular question was "a question for [a] damages expert," he is unqualified (Dkt. #102). But the deposition that Verizon

is referring to is one where Dr. Hernandez was serving as a fact witness and as a 30(b)(6) witness, not as an expert. Verizon next claims that Dr. Hernandez

> also stated that earlier licensing negotiations he was involved in were "entered into under stressful situations where the licensing party was naïve" and that "Mobility Workx has never before had the opportunity to conduct sophisticated negotiations where artificial time pressures and financial intimidation were not present," thus effectively admitting that he was not capable of acting as a damages expert in those situations

(Dkt. #102). But, as Mobility Workx notes, this was Dr. Hernandez' first patent negotiation. It takes no leap of logic to ascertain that an expert, whose expertise is predicated upon work-based experience, would not begin his or her career as an expert. Expertise does not occur over night. Thus, merely citing an early negotiation where Dr. Hernandez felt unqualified does not demonstrate that Dr. Hernandez is unqualified. While Dr. Hernandez' qualifications are "less than sterling," his qualifications are sufficient enough that his opinions may aid the jury who may then ferret out the truth. *Williams*, 898 F.3d at 614–15; *Hicks*, 389 F.3d at 525. Accordingly, the Court holds that Dr. Hernandez is qualified to serve as an expert on damages.

b. The Reliability of Dr. Hernandez' Royalty Rate

The legal standard that is outlined in Part I(b) *supra*, applies equally here and is therefore incorporated to this portion of the opinion. After claiming that Dr. Hernandez is not qualified to serve as an expert, Verizon next attacks the merits of Dr. Hernandez' expert opinion. Namely, Verizon claims that Dr. Hernandez: (1) disregarded relevant considerations in his damages calculations; and (2) utilized flawed theories in calculating damages. The Court addresses each argument below.

i. Relevant Considerations

Verizon claims that Dr. Hernandez impermissibly omitted previous licensing values in the formulation of his proposed royalty rate. Those previous licensing values include agreements that consisted of "a $500,000 license to the '508, '417, and '330 Patents to Apple; and a $175,000

license to the '508 and '417 Patents to T-Mobile" (Dkt. #102).  These licensing values, Verizon claims, were omitted due to Dr. Hernandez' belief that there was a "criminal conspiracy" which effected the value of those licenses; a criminal conspiracy, Verizon counters, that is "deeply serious, outlandish, and reflect[s] a disconnect with the facts" (Dkt. #102).  As a result of Dr. Hernandez' belief, Verizon asserts that "highly relevant" economic factors were excluded from Dr. Hernandez' royalty analysis.  Mobility Workx counters that it was proper to exclude these licensing values and the negotiations that occurred leading up to them.  Exclusion of these licensing values was proper, Mobility Workx continues, because, among other things, there were undisclosed relationships between Mobility Workx' prior legal team and T-Mobile's legal team as well as witness tampering which effected the value of the licenses.  True or not, Mobility Workx continues, the principals of Mobility Workx believe these claims and they should be omitted from the analysis.

The present dispute between Verizon and Mobility Workx illustrates the quintessential dispute that should be left to the jury; a dispute centered around premises and assumptions.  One party, Verizon, is arguing here that a particular statistic should have been included and that the reasoning for omitting that statistic is flawed.  The other party, Mobility Workx, is arguing that the statistic must be omitted and the reasoning behind its omission is sound.  The Court is not in the business of weighing whether evidence is weak or strong, that is the jury's job.  *Primrose Operating Co.*, 382 F.3d at 562; *Guy v. Crown Equip. Corp.*, 394 F.3d at 325.  *Saint Lawrence Communications LLC v. ZTE Corp.*, 2017 WL 679623 (E.D. Tex. Feb. 21, 2017) supports the Court's conclusion.

In *Saint Lawrence Communications*, Defendant Motorola filed a Motion to exclude Plaintiff Saint Lawrence Communication's expert witness, Roy Weinstein.  *Id.* at *1.  One of the

areas of contention in *Saint Lawrence Communications* was Mr. Weinstein's use of two LG proposals which "substantially differ[ed] from the ultimate agreement reached by SLC and LG, almost by a factor of ten" to support his adjusting of the proposed royalty upward. *Id*. The Court rejected Motorola's disagreement with Mr. Weinstein's reliance on prior licenses when it stated that, "[i]n principle, experts may increase royalty rates derived from prior licenses to account for discounts attributable to litigation risks and costs." *Id*. While the increase in royalty rate in the present action is not attributable to litigation risks and costs, it is another example of a permissible factor effecting the derivation of a royalty rate. When comparing the two cases side-by-side, it becomes evident that the present action requires the same conclusion. Like in *Saint Lawrence Communications*, the primary disagreement here is not with the methodology that Dr. Hernandez employs, "but with the inputs [Dr. Hernandez] uses." *Id.* at 2. Thus, like in *Saint Lawrence Communications*, the issue is not with the admissibility of the testimony, but the weight and credibility of the testimony. *Id.*; *see also Wallis*, 2014 WL 3809743 at *1 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact."). This means that any issue with Dr. Hernandez' testimony in this particular instance should be handled through cross-examination. To be sure, if the underlying reasoning for Dr. Hernandez' methodology is flawed, absurd, or even irrational, then "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" will serve as the proper antidote for attacking these potentially "shaky" arguments. *Daubert*, 509 U.S. at 596. Exclusion of Dr. Hernandez' opinion will not. Consequently, Verizon's Motion, in this instance, is denied.

ii.    Theories

Faced with proposed expert testimony, a district court judge must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *See Daubert*, 509 U.S. at 596.  The factors that a court may consider in determining whether an expert's methodology is valid have become commonly known as the "*Daubert* Factors."  Those factors, which are not exclusive, include:

> (1) whether the expert's theory or technique can be or has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the challenged method; and
> (4) whether the theory or technique is generally accepted in the relevant scientific community.

*Id.* at 593–94.

Here, Verizon alleges five "errors and inconsistencies" in Dr. Hernandez' report.[2]  Those alleged errors include the claims that: (1) Dr. Hernandez' damages figures are inconsistent; (2) Dr. Hernandez' report relies upon "unsubstantiated and conclusory factual premises"; (3) Dr. Hernandez assigned arbitrary values to "certain alleged benefits of the Asserted Patents" to reach the proposed royalty rates; (4) Dr. Hernandez utilized "unreliable damages theories for the '417 Patent, including an arbitrary 5 times multiplier"; and (5) Dr. Hernandez incorrectly asserted "that the hypothetical negotiation date for the '330 Patent should be June 12, 2007" (Dkt. #102).

1.    Arguments 1, 2, & 3

The first three arguments are easily dismissed.  Like the dispute over the omission of certain licensing values discussed in Part III(b)(i) *supra*, disputes over allegedly inconsistent damages

---

[2] Verizon seemingly makes the argument that the rebuttal report of Dr. Keith Ugone illustrates further errors and inconsistencies in Dr. Hernandez' Expert Report.  To the extent that those have not been briefed, however, they are waived.

figures, unsubstantiated and conclusory factual premises, and arbitrary value assignments are better left to cross examination than exclusion. *Daubert*, 509 U.S. at 596. To be sure, it is a well-known facet of evidentiary law that "questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact." *Wallis*, 2014 WL 3809743 at *1. As such, the Court will not exclude the opinions of Dr. Hernandez based on Verizon's first three arguments.

## 2. Argument 4

Verizon next argues that Dr. Hernandez utilized "unreliable damages theories for the '417 Patent . . . ." (Dkt. #102). Those theories, according to Verizon include: "(1) an arbitrary 5 times multiplier to [Dr. Hernandez'] damages number for the '330 Patent; and (2) an analysis that facially appears to analyze the *Georgia-Pacific* factors but rests on faulty premises" (Dkt. #102). Mobility Workx responds by stating that Dr. Hernandez employed an analytical method that was used in parallel with the *Georgia-Pacific* Factors. The '417 Patent was thus valued by using the Key Performance Indicator ("KPI") factors that are part of the GPPS Standards and LTE Standards Requirements, according to Mobility Workx. The Court need not take time discussing whether the *Georgia-Pacific* Factors survive *Daubert*; the *Georgia-Pacific* Factors have already passed muster. *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014). Irrespective of which method Dr. Hernandez employed, Verizon claims that his basis for the 5 times multiplier and his decision to impose a 0.12% royalty rate on all LTE revenue of Verizon is arbitrary and unsupported. *Saint Lawrence Communications* is again helpful.

As previously discussed, *Saint Lawrence Communications* concerned Defendant Motorola challenging numerous aspects of Plaintiff Saint Lawrence Communication's expert witness, Roy Weinstein's expert testimony. 2017 WL 679623 at *1. One of Motorola's arguments was that

Weinstein arbitrarily adjusted the royalty rate upward by five cent increments under the *Georgia-Pacific* framework. *Id.* at 2. According to Motorola, Weinstein's opinion should have been excluded because of a failure to "substantiate why five cents is a reasonable value to apply . . . ." *Id.* The Court rejected Motorola's argument. Rather than requiring rigid, exact certainty in the determination of a royalty rate, the court stated that "[a] reasonable royalty analysis "necessarily involves an element of approximation and uncertainty . . . ." *Id.* at 2 (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)). Thus, the Court continued, "mathematical precision is not required." *Id.* (citing *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012)). At the *Daubert* stage, all that is required is that the expert explain "why and generally to what extent the particular factor impacts the royalty calculation is needed." *Id.* (citing *Whitserve*, 694 F.3d at 31).

Here, Dr. Hernandez outlines each approach. To analyze the '330 Patent, Mobility Workx claims that Dr. Hernandez employed a "Cost Savings Approach." Under this approach, Dr. Hernandez "analyze[d] how much it would cost not to use the patent and to rely solely upon field testing . . ." (Dkt. #110). This led Dr. Hernandez, Mobility Workx claims, to arrive "conservatively at a cost savings per phone" (Dkt. #110). Following this calculation, Dr. Hernandez then multiplied "the number of phones by the cost savings per phone, and then he apportion[ed] the savings between the patentee ("Mobility") and the infringer ("Verizon") in the hypothetical negotiation" (Dkt. #110). The Cost Savings Approach, according to Mobility Workx, has been accepted by multiple courts. *See e.g.*, *Lucent Technologies, Inc. V. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986); *TC Technology LLC v. Sprint Corporation*, WL 2515779, at *2–5 (D. Del. Jun. 18, 2019). As for the '417 Patent, Mobility Workx maintains that Dr. Hernandez applied an analytical method

that was used in parallel with the *Georgia Pacific* Factors (Dkt. #110). To value the '417 Patent, Dr. Hernandez used the KPI factors, which are part of the GPPS Standards and LTE Standards (Dkt. #110). Dr. Hernandez then applied a "five times multiplier" to the Cost Savings Approach "provided by the '330 Patent to Verizon to arrive at a value for the '417 Patent to Verizon" (Dkt. #102, Exhibit 1). This five times multiplier, Dr. Hernandez states, was implemented to account for the handover feature which is "of greater magnitude and used every day by customers on the Verizon network . . . ." (Dkt. #102, Exhbit 1).

Verizon objects to Dr. Hernandez' calculations, as well as what Verizon deems as an arbitrary assertion of a 0.12% royalty on all LTE revenue of Verizon. At the outset, the Court again notes that the methodology employed by Dr. Hernandez is generally accepted. *See e.g.*, *Lucent Technologies*, 580 F.3d at 1324; *Dura Corp.,* 789 F.2d at 899; *TC Technology*, WL 2515779 at *2–5. Moreover, Verizon does not focus on attacking the reliability of the *Georgia-Pacific* factors or the analytical approaches utilized. The issue that Verizon has, rather, is with what it deems are arbitrary inputs. Mobility Workx disagrees and claims that each input is a "conservative" decision grounded in accepted methodologies. Irrespective of this dispute, the law remains clear; "mathematical precision" in royalty calculations is not required. *Lucent Technologies*, 580 F.3d at 1325; *Saint Lawrence Communications*, 2017 WL 379623 at *2. Dr. Hernandez has provided an explanation for why each factor he has utilized has been considered and how it impacts his royalty calculation. At the *Daubert* stage, that is all that Dr. Hernandez is required to provide. *Whitserve*, 694 F.3d at 31; *Saint Lawrence Communications*, 2017 WL 379623 at *2. Any dispute that Verizon and Mobility Workx may have over the inputs utilized by Dr. Hernandez are better characterized as disputes over weight and credibility than admissibility.

Thus, these disputes are better resolved by the jury.[3]  *See Wallis*, 2014 WL 3809743 at *1. Verizon's Motion, in this instance, is therefore denied.

### 3.  Argument 5

Finally, Verizon argues that Dr. Hernandez incorrectly asserted "that the hypothetical negotiation date for the '330 Patent should be June 12, 2007" (Dkt. #102).  Like the disputes over allegedly inconsistent damages figures, unsubstantiated and conclusory factual premises, and arbitrary value assignments, a dispute over when the hypothetical negotiation date would have occurred is better left to cross examination than the exclusion of Dr. Hernandez' entire opinion. *Daubert*, 509 U.S. at 596.  Verizon's Motion, in this instance, is again denied.

### IV.  Plaintiff Mobility Workx, LLC's Motion to Strike Portions of James Proctor's Expert Report (Dkt. #104)

Mobility Workx requests that the Court strike certain portions of James Proctor's— Verizon's expert—Expert Report.  Specifically, Mobility Workx requests that the Court strike Mr. Proctor's obviousness opinions, standards opinions, all portions referring to new references, discussion of the '330 background, all unsupported written description opinions, all portions contrary to the Court's claim construction, all references to incorporated invalidity charts, paragraph 208 referring to Claim 7, and any highlighted portions in Mr. Proctor's Expert Report not discussed in Mobility Workx' Motion (Dkt. #104).  Verizon opposes Mobility Workx' Motion (Dkt. #108).  The Court will address each dispute individually below.

### a.  Obviousness Opinions

"The Local Patent Rules 'exist to further the goal of full, timely discovery and provide all parties with adequate notice of information with which to litigate their cases." *Fenner Invs., Ltd.*

---

[3] If, for instance, Dr. Hernandez incorrectly applied his rate to the "royalty base of Verizon's *entire LTE revenue*," then cross examination may uncover such an error.  At this juncture, however, it is not for the Court to judge whether Dr. Hernandez' conclusions are correct or incorrect.

*V. Hewlett-Packard Co.*, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). Under Local Patent Rule 3-3, a party charged with infringement must "identify each item of prior art that allegedly anticipates each asserted claim or renders it obvious." P.R.3-3(a). The invalidity contentions must also include a "chart identifying where specifically in each alleged item of prior art each element of each asserted claims is found." *Id.* at 3-3(c). Should a party fail to provide this necessary information, a court may impose any "just" sanction. *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). With that being said, "striking invalidity contentions 'is an extreme decision comparable to determining "whether evidence should be excluded for discovery violations.'" *Eolas Technologies Inc. v. Amazon.com, Inc.*, 2016 WL 7666160, at *1 (E.D. Tex. Dec. 5, 2016) (citing *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. Aug. 24, 2007)). "Therefore, courts are hesitant to strike contentions absent evidence of unreasonable delay and prejudice." *Id.*

Here, Mobility Workx asserts that "every obviousness opinion disclosed in Proctor's invalidity report in Sections X.A., X.C., X.D., and XI.A., XI.B., XI.C., and XI.D. was either not disclosed at all or was inadequately disclosed in Verizon's invalidity contentions and thus should be stricken" (Dkt. #104). Mobility Workx provides the Court with no argument that Sections XI.A., XI.B., XI.C., and XI.D., were undisclosed or inadequately disclosed. Rather, Mobility Workx rests on conclusory allegations that each of these Sections are improper and thus must be stricken. Such arguments do not persuade the Court. Therefore, Mobility Workx' requested relief as to Sections XI.A., XI.B., XI.C., and XI.D is denied. The Court now considers the remaining Sections.

Mobility Workx first calls into question Section X.A. Mobility Workx claims that Section X.A. combines "the Liu Paper and the Liu Patent with the Gwon I reference, even though these

two combinations were never disclosed in Verizon's invalidity Contention Charts" (Dkt. #104). As Verizon counters, however, these "obviousness combinations were explicitly disclosed in the Invalidity Contentions. Ex. 3 at 10 ("U.S. Pub. No. 2002/0131386 [Gwon I] in combination with U.S. Patent No. 5,825,759 [Liu Patent]. U.S. Pub. No. 2002/0131386 [Gwon I] in combination with 'A Virtual Distributed System Architecture' [Liu Paper].")" (Dkt. #108). Mobility Workx does not refute Verizon's assertion. The Court will not strike contentions which have already been disclosed. Mobility Workx' Motion, in this instance, is accordingly denied.

Mobility Workx next asserts that Section X.C. combines "the 3G UMTS with the Bahl reference, even though these two combinations were never disclosed . . . ." (Dkt. #104). This is all that Mobility Workx states. Verizon counters that, again, its invalidity contentions support its disclosures. More specifically, Verizon points to each of the 3G UMTS claim charts it provided which state:

> Alternatively, Claims 1, 4, and 7 are obvious over the 3G UMTS standard's soft handover procedures because any alleged difference between the claimed subject matter of the '417 Patent and the 3G UMTS standard's soft handover procedures would have been obvious at the time the invention was made to a person of ordinary skill in the art in view of the knowledge related to Mobile IP, Wi-Fi, and/or cellular telecommunications of one of skill in the art, and/or in view of the prior art references identified in Defendant's Invalidity Contentions including but not limited to those references identified in [Section II.D]."

(Dkt. #108) (citing Exhibit 4 and Exhibit 3). Verizon also points to its disclosure of Bahl in its Preliminary Invalidity Contentions (Dkt. #108) ("identifying U.S. Patent No. 6,385,454 [Bahl] in Section II.D, where Bahl is one of just eleven references apart from the 3G UMTS standards") (citing Exhibit 3). Again, the Court will not strike contentions which have been previously disclosed. Thus, Mobility Workx Motion is again denied.

Finally, Mobility Workx asserts that Section X.D. should be struck when it merely states that the Section "combines Gwon I with Gwon II [as] a completely undisclosed reference" (Dkt. #104). Verizon admits that Gwon II "was not explicitly identified in the Invalidity

Contentions" yet argues that any reliance on Gwon II should be permitted because it was a "central reference during prosecution of the parent patent, U.S. Patent No. 7,697,508 ("'508 Patent"), and during claim construction in the related case of *Mobility Workx, LLC v. T-Mobile US, Inc. et al.*, No. 4:17-cv-567-ALM . . ." (Dkt. #108). In the interest of fairness, the Court declines to strike such references at this moment. Rather, like Defendant's Motion which seeks to strike certain portions of Dr. Nair's expert testimony (Dkt. #99), the Court elects to hear argument by the parties at the final pretrial conference on whether Section X.D. should be struck. Accordingly, the parties are hereby on notice that the inclusion of Section X.D. will be argued at the final pretrial conference.

### b. Standards Opinions

Mobility Workx next asserts that under *Kyocera Wireless Corp. v. International Trade Com'n*, 545 F.3d 1340, 1351 (2008), Proctor may not combine specifications and treat them as a single anticipatory reference. To support this contention, Mobility Workx cites the following language:

> This court requires that in order to anticipate a claim, "a single prior art reference must expressly or inherently disclose each claim limitation." *Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1334 (Fed. Cir. 2008). The record evidence suggests that the GSM standard is not a single reference. The different specifications that comprise the GSM standard were authored by different subsets of authors at different times. Indeed, the GSM standard includes hundreds of individual specifications drafted by approximately ten different subgroups, each with its own title and separate page numbering. Each specification, though part of the greater GSM standard, stands as a separate document in its own right. Even Qualcomm's witness—admittedly one of the most knowledgeable people in the world about the operation of GSM—testified that she had not read the entire standard and did not know of any person who had read the entire standard. Open Session Tr. 1712, Mar. 15, 2006. Under these circumstances, the GSM standard is actually several prior art references with separate dates of creation, rather than a single prior art reference.

*Id.* Mobility Workx accordingly states that "all opinions of Mr. Proctor where he treats standards as a single unitary reference must be stricken under *Kyocera*" (Dkt. #104). Mobility Workx misreads *Kyocera*. In *Kyocera*, the United States International Trade Commission ("ITC")

determined that Qualcomm infringed Broadcom Corporation's United States Patent 6,714,983 ("'983 Patent"). *Id.* at 1340. As a remedy for this conduct, the ITC issued a limited exclusion order ("LEO"). *Id.* Qualcomm, along with Qualcomm's customers, appealed the ITC's determination. One of the numerous arguments Qualcomm made on appeal was that the ITC incorrectly found that Qualcomm's specifications did not anticipate the asserted '983 Patent because they did not constitute a single reference under 35 U.S.C. § 102. *Id.* at 1351. The courts determination in *Kyocera*, however, was not a blanket prohibition against different specifications being used as a single anticipatory reference. Rather, *Kyocera*, as discussed in *Finjan, Inc. v. Symantec Corp.*, was heavily grounded in the facts. 2013 WL 5302560, at *17 (D. Del. Sept. 19, 2013) (interpreting *Kyocera* as "concluding that a collection of technical specifications collectively known as the GSM standard, written by several different authors over several years and each constituting a separate document in its own right, do not function as a single prior art reference").

Here, the present action is not an action—or is at least not alleged to be an action—where the specifications were authored by different subsets of authors at different times, with hundreds of specifications, ten different subgroups, individual titles and separate page numbering, and a witness who had "not read the entire standard." *Id.* at 1351. Indeed, in the present case, Mobility Workx, who dedicates less than a full page to this argument, does not allege any analogous facts. Rather, Mobility Workx merely copies a paragraph from a Federal Circuit opinion and says that Proctor has violated the language. There is no specific language quoted from Mr. Proctor's Expert Opinion that impermissibly combines specifications, no references to where these violations occurred, and no citation to which specifications Mr. Proctor combined. Without more, the Court does not find that Proctor has combined standards as a single anticipatory reference in an

impermissible manner because Mobility Workx has failed to adequately brief the Court on the issue. Mobility Workx' Motion, as to standards opinions, is denied.

### c. New References

The legal standard that Part IV(a) outlines *supra*, applies equally here. Mobility Workx contends that Mr. Proctor is attempting to present undisclosed invalidity contentions at trial. Specifically, Mobility Workx cites Mr. Proctor's reference to Mobile IPv6, Gwon II, 3GPP TS 25.331 V.5.1.0 (2002–06), and 3GPP 23.060 v5.1.0 (2002–03) (collectively "3G UMTS Standard") (Dkt. #104). Mobility Workx requests that any reference to the aforementioned specifications be stricken. Verizon opposes the Court striking these specifications and maintains that Mr. Proctor's reliance on these specifications is proper (Dkt. #108). The Court has already addressed the Gwon II specifications and stated that Mobility Workx' Motion as to this matter is denied. As to Mobile IPv6, the Court finds that Verizon's Invalidity Contentions support Verizon's argument that Mr. Proctor's theories are not new. Moreover, like in the '330 background *infra*, any discussion of the Mobile IPv6 standard as background is permissible. But, because the Court finds that the Invalidity Contentions support that discussion of the Mobile IPv6 Standard, the Court need not fully reach Verizon's argument that any discussion is background material. As to the 3G UMTS Standard, Verizon counters that:

> These particular 3GPP specifications were explicitly identified in Verizon's Invalidity Contentions, along with their combination with Shimizu. *See* Ex. 3 at 9-10 ("U.S. Pub. No. 2002/0045450 [Shimizu] in combination with the … 3G UMTS Standard"); Ex. 4 at 421, 427, 440-41, 449-50, 462, 465, 471, 474, 478-79, 487-89, 502, 504, 518-19, 529-31.

(Dkt. #108). As previously stated, the Court will not strike previously disclosed invalidity contentions. For these reasons, Mobility Workx' Motion as to new references is denied.

### d. The '330 Background

As previously stated, under the Local Patent Rules, a party asserting infringement must "serve infringement contentions on each defending party." *ROY-G-BIV*, 63 F. Supp. 3d at 699 (discussing U.S. DIST. CT. RULES E.D. TEX., Patent Rule 3–1). These contentions must "set forth specific theories of infringement at the outset of the case." *Orion IP*, 407 F. Supp. 2d at 817. This Rule, however, "does not expressly, or by implication, require the production of all evidence that may be relevant in any way to the issue of obviousness, such as background evidence going to the state of the art at the time of the invention or evidence bearing on any secondary considerations that the patentee may invoke to help rebut the defendant's obviousness case." *Allegran, Inc. v. Teva Pharmaceuticals USA, Inc. et al.*, 2:15-cv-1455, at \*5 (E.D. Tex. Aug 3, 2017). Consequently,

> courts in the Eastern District have permitted defendants to rely on references that were not included in their invalidity contentions when the references were not proposed as invalidating prior art, but were directed to other purposes, such as showing the state of the art at the time of the invention or rebutting the patentee's secondary consideration evidence

*Id.* at \*7.

Here, Mobility Workx argues that Mr. Proctor's Export Report "improperly relies on the references cited in Sections VIII.B.1. through VIII.B.5. as prior art to support his obviousness position" (Dkt. #104). Mobility Workx maintains that *Godo Kaisha IP Bridge 1 v. Broadcom Limited*, 2017 WL 2869344, at \*1 (E.D. Tex. Apr. 20, 2017), compels this conclusion. Specifically, Mobility Workx relies upon the following language from *Godo Kaisha IP Bridge 1*:

> IP Bridge also moves to strike portions of Dr. Lee's invalidity opinion concerning claim 20 of the '726 patent. IP Bridge contends that Dr. Lee improperly relies on U.S. Patent No. 5,674,788 (the '788 Patent) as prior art to support his obviousness position. IP Bridge contends that out of the hundreds of pieces of prior art and dozens of claim charts, the '788 Patent was never mentioned in required disclosures under the Local Rules. Defendants respond that Dr. Lee cites the '788 Patent as background, not prior art. Specifically, Dr. Lee cites the '788 Patent to show that the technique of using gate insulators containing nitrogen was known.

The Court agrees with IP Bridge. Generally, experts that rely on references solely as background include those references in the report (often in a section titled "Background of the Technology" or the like), not exclusively in claim charts. But Dr. Lee's discussion of the '788 Patent is included only in his claim chart for claim 20. The Court is persuaded that if Defendants were truly using the '788 Patent solely for background on the technology, it would not be citing the references within a claim chart and moreover, for only one asserted claim. As presented to the Court, the Court is persuaded that the '788 patent is being used as a backdoor prior art reference that was not timely disclosed. The '788 is an untimely disclosed prior art reference.

*Id.* Because Mr. Proctor contains an incorporating clause in his Expert Report at paragraphs 23–24, Mobility Workx contends that Mr. Proctor is making an improper attempt to backdoor prior art references into his Expert Report that "were not timely and properly disclosed under the Local Rules" (Dkt. #104). Mr. Proctor's attempt to backdoor in this prior art, Mobility Workx continues, is prohibited under *Godo Kaisha IP Bridge 1*. Verizon disagrees. Verizon counters that the cited language from *Godo Kaisha IP Bridge 1* "confirms that it is appropriate for the background section of a report to contain references in addition to those charted" (Dkt. #108). Further, Verizon argues, "Verizon does not assert that the references discussed *solely* in Mr. Proctor's background section comprise anticipatory or obviousness references . . . ." (Dkt. #108). The Court agrees with Verizon.

Mobility Workx has not pointed to any reference to this background material in Mr. Proctor's Expert Report aside from a generic incorporating clause. There is no argument that Mr. Proctor has impermissibly cited "the references within a claim chart" like in *Godo Kaisha IP Bridge 1*. Indeed, Mobility Workx provides no *specific* accusations of impermissible reliance on background material anywhere in the one paragraph where it opposes the '330 Background. If the '330 Background was an improper attempt to backdoor prior art references, then Mobility Workx should have demonstrated where that backdoor attempt was occurring. Mobility Workx did not. Therefore, its Motion, as to the '330 Background, is denied.

###### e. Unsupported Written Description Opinions

Mobility Workx next takes issue with the following written descriptions provided by Mr.

Proctor in paragraphs 277, 347, and 484 of his Expert Report:

> In my opinion, the '417 Patent fails to provide a written description of a system that triggers registration . . . by "relaying" shared secrets from a mobile node to another node. That said, the '417 Patent discloses a "shared key" in connection with the use [of] the MD5 algorithm for security and authentication using a public key cryptosystem. *See* '417 Patent at 9:18-36. As an alternative, the '417 Patent also discloses the use of an asymmetric authentication protocol such as 802.1X. *Id.* at 9:48–53.

(Dkt. #104, Dkt. #108). According to Mobility Workx, "Mr. Proctor provides no analysis or basis

for his conclusory opinion" (Dkt. #104). Thus, Mobility Workx requests that these opinions be

stricken for failing to comply with *Daubert*. Verizon counters that Mr. Proctor stated that "he

reviewed and considered the '417 Patent and its prosecution history (*id.* at ¶ 22) and specifies that

he could not find written description support for the term 'relaying'" (Dkt. #108). Yet again,

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof" are better means for attacking the weight and credibility of Mr. Proctor's analysis

and conclusion; not exclusion. *See Daubert*, 509 U.S. at 596. Mobility Workx' Motion, as to the

allegedly unsupported written description opinions, is denied.

###### f. Portions Contrary to Court's Claim Construction

Mobility Workx provides no briefing on this argument and, apparently, merely highlights

portions of Mr. Proctor's 351-page Export Report that it wishes the Court to strike. The Court will

not address Mobility Workx' arguments when Mobility Workx does not address them itself.

###### g. Incorporated Invalidity Charts

Mobility Workx provides no briefing on this argument and, apparently, merely highlights

portions of Mr. Proctor's 300 plus page Export Report that it wishes the Court to strike. The Court

will not address Mobility Workx' arguments when Mobility Workx does not address them itself.

h.  Claim 7

Section 282(b) of Title 35 enumerates a series of permissible defenses that can be pleaded

by a defendant in an infringement action.  Those defenses include:

> (1) Noninfringement, absence of liability for infringement or unenforceability.
> (2) Invalidity of the patent or any claim in suit on any ground specified in part II as a condition for patentability.
> (3) Invalidity of the patent or any claim in suit for failure to comply with--
>> (A) any requirement of section 112, except that the failure to disclose the best mode shall not be a basis on which any claim of a patent may be canceled or held invalid or otherwise unenforceable; or
>> (B) any requirement of section 251.
> (4) Any other fact or act made a defense by this title.

35 U.S.C. § 282.  *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657 (Fed. Cir.

2008), interpreted § 282(b) as being the exclusive list of defenses that may be brought.  *Id.* at 660–

64.

Here, Mobility Workx argues that Mr. Proctor is impermissibly "acting as counsel's

mouthpiece" in stating that "he has been informed that Claim 7 was issued by mistake by the U.S.

Patent and Trademark Office" (Dkt. #104).  According to Mobility Workx, *Aristocrat* holds that,

"as a matter of law[,] 'improper revival' of a patent [cannot] be raised as a defense under 35 U.S.C.

§ 282(b) in a patent infringement action" (Dkt. #104) (citing *Aristocrat*, 543 F.3d at 661).  Mobility

Workx accordingly seeks that paragraph 208 be stricken.  Verizon, on the other hand, argues that

"Mr. Proctor is not providing an opinion regarding the impropriety of the issuance of the '417

Patent, but instead reserving his right to opine on the invalidity of Claim 7 without waiving

Verizon's unenforceability argument" (Dkt. #108).  Moreover, Verizon contends that *Aristocrat* is

inapposite.  *Aristocrat*, according to Verizon, only stated that the defendant could not assert an

invalidity defense, not an unenforceability defense.  Further, "a mistaken issuance of a claim is not

the same as, or even analogous to, the 'improper revival' of a patent due to late payment at issue

in *Aristocrat*," according to Verizon (Dkt. #108).  Rather, Verizon claims that the "instant

circumstances are more akin to an uncorrected claim, and the Federal Circuit has held that a patentee cannot assert an uncorrected claim" (Dkt. #108).

Verizon is correct that an unenforceability defense, unlike an "improper revival" defense, is proper under § 282(b). *See Aristocrat Techs. Austl. PTY Ltd.*, 543 F.3d at 661. Further, from a plain reading of paragraph 208 of Mr. Proctor's Expert Report, it is readily apparent that Mr. Proctor is stating the evidence that was provided to him and then "reserving his right to opine on the invalidity of Claim 7 without waiving Verizon's unenforceability argument" (Dkt. #108). Mr. Proctor's statement, in paragraph 208, is as follows:

> I have been informed that Claim 7 of the '417 Patent was issued by mistake by the U.S. Patent and Trademark Office. The prosecution history of the '417 Patent demonstrates that Claim was withdrawn from consideration in a Response to a Restriction Requirement dated May 13, 2011, was never examined by the Examiner in any subsequent office actions, and was mistakenly included in the list of allowed claims in the Notice of Allowance. I am informed that the circumstances render Claim 7 unenforceable in this action. However, *because Mobility Workx maintains its assertion of Claim 7 of the '417 Patent, I provide my analysis regarding the invalidity of Claim 7 of the '417 Patent out of an abundance of caution.*

(Dkt. #108) (emphasis added). As the emphasized portion illustrates, Mr. Proctor's analysis is merely a means to not waive a potentially contested issue. It is not his "serving as counsel's mouthpiece" (Dkt. #104). Accordingly, Mobility Workx' Motion, as to Claim 7, is denied.[4]

### i. Highlighted Portions

Mobility Workx states that a "highlighted version of Mr. Proctor's report reflecting those portions of his report that are impacted by this motion is attached as Exhibit 1 to the declaration of Michael Machat" (Dkt. #104) (citation omitted). Submitting a 351-page Expert Report and

---

[4] Mobility Workx claims that "[t]he fact that the PTO decided to withdraw the restriction requirement and allow claim 7, is simply not reviewable" (Dkt. #104). This assertion is conclusory and lacks any legal citation. Because the Court has not been afforded adequate briefing by Mobility Workx, and, more importantly, because the Court has held that Mr. Proctor is merely reserving Verizon's option to contest the enforceability of Claim 7, the Court finds that it is unnecessary to address Mobility Workx final argument at this juncture.

highlighting various portions of the Report without providing any briefing on why those portions should be struck is impermissible. Thus, the portions in the following chart, which have not been addressed, are denied.

| | Highlighted Paragraphs of the Proctor Invalidity Report (Exhibit 1) |
|---|---|
| **Not Addressed in the Present Motion** | 210, 215-220, 556-57, 613-14, 665-66, 673-76, 680-96, 716-725. |

Moreover, the following portions which Mobility Workx submitted without adhering to the Local Rules meet-and-confer requirements, L.R. CV-7(h), are also denied.

| | Highlighted Paragraphs of the Proctor Invalidity Report (Exhibit 1) |
|---|---|
| **Not Addressed in the Meet-and-Confer[5]** | 59, 160-85, 210, 215-20, 265 n.23, 509-15, 535-53, 556-57, 569-70, 590-608, 613-14, 626-27, 644-662, 665-66, 673-76, 678-79, 680-96, 696-715, 716-725. |

---

[5] Both of these charts were provided by Verizon in its Response (Dkt. #108).

## CONCLUSION

It is therefore **ORDERED** as follows:

- Defendant's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Sukumaran Nair, Ph.D. (Dkt. #99) **DENIED** in part.  Accordingly, the inclusion of Dr. Nair's '417 Patent and '330 Patent theories, which are allegedly new, will be discussed at the final pretrial conference.  Verizon's *Daubert* challenge, however, is **DENIED**.

- Defendant's Motion to Strike the Expert Disclosure of Dr. Sumi Helal and Dr. Edwin Hernandez (Dkt. #101) is **GRANTED**.  Dr. Helal's disclosures are hereby stricken and Dr. Hernandez is hereby limited to testifying to damages.

- Defendant Verizon Wireless's Motion to Exclude the Opinion of Dr. Edwin A. Hernandez (Dkt. #102) is **DENIED**.

- Plaintiff Mobility Workx, LLC's Motion to Strike Portions of James Proctor's Expert Report (Dkt. #104) is **DENIED** in part.  As to Section X.D., the inclusion of this portion of Mr. Proctor's obviousness opinion will be addressed at the final pretrial conference.

**IT IS SO ORDERED**.

 **SIGNED** this 5th day of November, 2019.


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE