# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MOBILITY WORKX, LLC, | § | |
|     *Plaintiff*, | § | Civil Action No. 4:17-CV-00872 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| CELLCO PARTNERSHIP D/B/A | § | |
| VERIZON WIRELESS, | § | |
|     *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Mobility Workx, LLC's Motion Requesting an Adverse Inference Jury Instruction be Given Pursuant to FRCP 37(C) (Dkt. #168). Having considered the motion and the relevant pleadings, the Court finds that Mobility Workx' Motion is **DENIED**.

## BACKGROUND

Mobility Workx, due to what it claims is intentional bad-faith conduct on Verizon's part, requests that an adverse inference instruction be given to the jury. Mobility Workx argues that "Verizon strategically decided to withhold discoverable information called for by the local rules and this Court's Orders, [and] also refused to produce relevant documents even after receiving a discovery letter from Mobility specifically requesting Verizon to produce relevant documents" (Dkt. #168). Specifically, Mobility Workx contends that Verizon "intentionally has refused to provide any specific or proprietary documents other than generic documents pertaining to the LTE 4G systems in general and no internal documents whatsoever as to how their Emulator works in the NDET lab" (Dkt. #168) (citing Mahcat Decl at ¶¶ 2–31). This has resulted, Mobility Workx continues, in Mobility Workx being forced to resort to publicly available documents to attempt to prove infringement (Dkt. #168). In support of its claims, Mobility Workx provides the Court with

a list of documents that it contends "should have been produced voluntarily but were not" (Dkt. #168). The list of documents that were allegedly not produced includes:

- eNodeB configuration, test plans, KPI graphs charts on Handover, performance on handover (Handover Completion), etc.
- IP Addresses mappings of Verizon's network
- Diagrams and standards of X2 Handover interfaces and sample interface configurations
- Ericsson's documentation
- Any other vendor's documentation (e.g. Cisco, etc.)
- EPC or any other vendor documentation on ANR or Self-Organizing Networks (SON) where neighbor cells are discovered and handover parameters are optimized.
- All communications with Unified Patents
- Any deviation or customization made outside 3GPP Technical Specification documents.
- All drive test cases from different parts of the country
- Test Reports from 400+ devices tested by Verizon's NDET
- Lab test plans or instructions are provided to the lab technicians (or other individuals) at the NDET lab that perform the certification tests and direct them how to perform the tests required for certification under Verizon's standards
- Communications with manufacturers on all test cases
- Diagrams and design considerations in Verizon's NDET
- Test Reports from all test cases shown in the Open Development Network's Test Suites.

(Dkt. #168) (citing Machat Decl. at ¶ 27). Mobility Workx further points to Verizon's alleged decision to not produce any "documents showing how their 4G network operates" (Dkt. #168) (citing Machat Decl. at ¶¶ 10, 28) or any documents "showing exactly how testing is done in the lab []" (Dkt. #168) (citing Machat Decl. at ¶¶ 32–33). Mobility Workx argues that all of Verizon's alleged decisions to withhold documents were made in bad faith. In support of this bad-faith argument, Mobility Workx proffers three reasons that it claims should compel the Court to find bad faith. First Mobility Workx claims that because Verizon and its counsel frequently appear in the District, they could not have been mistaken on the rules of the Court and thus must have acted intentionally (Dkt. #168). Next, Mobility Workx argues that because Verizon purportedly did not produce "documents showing how their network operates," the Court should find that Verizon acted in bad faith (Dkt. #168). Finally, Mobility Workx argues that because Verizon allegedly did not respond to a letter requesting the information at issue nor respond to interrogatories, the Court

2

should find that Verizon acted in bad faith (Dkt. #168). Verizon opposes Mobility Workx' Motion (Dkt. #170).

In response, Verizon claims that it "not only produced these [disputed] documents, but repeatedly pointed them out to counsel for Mobility in correspondence, interrogatory responses, and on telephonic meet-and-confer conferences" (Dkt. #170). First, Verizon claims that "between July 24, 2018 and September 21, 2018 [Verizon] produced over 17,000 pages of technical materials" (Dkt. #170) (citing Barton Decl. at ¶¶ 14–15). This included, according to Verizon, "numerous relevant technical documents" such as:

| Technical Documents Relevant to the '417 Patent Produced by Verizon ||
| Bates Number | Document Description |
| --- | --- |
| VZ_MW_0000001-3773 | Nokia eNodeB LTE Parameter User Guide |
| VZ_MW_0003774-3779 | Inter-eNodeB X2-Based Handovers |
| VZ_MW_0003780-3984 | Verizon 2018 4G Network Upgrade Call Flows v.4.04 |
| VZ_MW_0003985-4260 | Verizon 2017 4G Network Upgrade Node Selection |
| VZ_MW_0004261-5204 | Verizon 2018 4G Network Upgrade Call Flows v.8.06 |
| VZ_MW_0005205-5366 | Alcatel-Lucent 9471 MME WM6.0.0 Product Engineering Guide |

| Technical Documents Relevant to the '330 Patent Produced by Verizon ||
| Bates Number | Document Description |
| --- | --- |
| VZ_MW_0006316 | SPIRENT_APEXDATA.jpg |
| VZ_MW_0006317 | UTS Client Interface Specifications.pdf |
| VZ_MW_0006593 | PRIVACY.XLS |
| VZ_MW_0006594 | SPIRENT_EMPTY_RACK.jpg |
| VZ_MW_0006595 | JDE83549.doc |
| VZ_MW_0006602 | UDM 3 60 Product Update.pdf |
| VZ_MW_0006604 | 6100244a_gpsperformance.doc |
| VZ_MW_0006949 | UTS Component Interface Specifications.pdf |
| VZ_MW_0007012 | UTS Interface Specifications.pdf |
| VZ_MW_0007576 | PLTS Product Update for Version 2.00.pdf |
| VZ_MW_0007579 | 6100244a_poslocation.doc |
| VZ_MW_0007599 | 9f841b19_poslocation.doc |
| VZ_MW_0007619 | SPIRENT_RFPARAM_GPS_LBS.jpg |
| VZ_MW_0007620 | JDE72984.doc |

| | |
|---|---|
| VZ_MW_0007627 | a8ee70d0_afltperformance.doc |
| VZ_MW_0007799 | a8ee717c_afltperformance.doc |
| VZ_MW_0007971 | F11240_TASKITC2KReferenceManual.pdf |
| VZ_MW_0008371 | 61e7b53e_gpsperformance.doc |
| VZ_MW_0008697 | 4c060391_gpsperformance.doc |
| VZ_MW_0009006 | F11241_TASKITC2KOperationsManual.pdf |
| VZ_MW_0009140 | poslocation.doc |
| VZ_MW_0009180 | 3868008b_poslocation.doc |
| VZ_MW_0009200 | 9f841b19_afltperformance.doc |
| VZ_MW_0009373 | 9f841b19_gpsperformance.doc |
| VZ_MW_0009677 | 3f0f300d_poslocation.doc |
| VZ_MW_0009699 | 3f0f3011_gpsperformance.doc |
| VZ_MW_0010003 | 4c060391_poslocation.doc |
| VZ_MW_0010025 | a8ee70d0_poslocation.doc |
| VZ_MW_0010047 | F11240_TASKITC2KReferenceManual.pdf |
| VZ_MW_0010447 | F11241_TASKITC2KOperationsManual.pdf |
| VZ_MW_0010581 | 3f0f3011_poslocation.doc |
| VZ_MW_0010603 | a8ee70d0_gpsperformance.doc |
| VZ_MW_0010907 | a8ee717c_gpsperformance.doc |
| VZ_MW_0011211 | eed2f9d6_gpsperformance.doc |
| VZ_MW_0011532 | eed2f9d6_afltperformance.doc |
| VZ_MW_0011704 | eed2f9d6_poslocation.doc |
| VZ_MW_0011726 | newparametric.jpg |
| VZ_MW_0011727 | UTS SDK - Getting Started.pdf |
| VZ_MW_0011788 | UTS Client Interface Specifications.pdf |
| VZ_MW_0012030 | UTS Component Interface Specifications.pdf |
| VZ_MW_0012093 | UTS Interface Specifications.pdf |
| VZ_MW_0012517 | 6100244a_afltperformance.doc |
| VZ_MW_0012689 | PLTS Operations Manual.pdf |
| VZ_MW_0012985 | 3523ce15_gpsperformance.doc |
| VZ_MW_0013322 | 3523ce19_poslocation.doc |
| VZ_MW_0013344 | 4c060391_afltperformance.doc |
| VZ_MW_0013516 | 3f0f300d_gpsperformance.doc |
| VZ_MW_0013820 | 3f0f300d_a670_gpsperformance.doc |
| VZ_MW_0014124 | 3523ce15_afltperformance.doc |
| VZ_MW_0014296 | PLTS Standalone (SR3452) Poster.pdf |
| VZ_MW_0014298 | SuperRack (TAS3450, SR5500, TAS5600) Poster.pdf |
| VZ_MW_0014300 | 3f0f300d_a670_afltperformance.doc |
| VZ_MW_0014472 | 3f0f300d_a670_poslocation.doc |

| | |
|---|---|
| VZ_MW_0014494 | 3523ce19_afltperformance.doc |
| VZ_MW_0014666 | PLTS with Impairments (TAS3450, TAS4500, TAS5600) Poster.pdf |
| VZ_MW_0014668 | PLTS with Impairments (SR3452, SR5500, TAS5600) Poster.pdf |
| VZ_MW_0014670 | SuperRack (SR3452, SR5500, TAS5600) Poster.pdf |
| VZ_MW_0014672 | PLTS with Impairments (TAS3450, TAS4500, TAS4600) Poster.pdf |
| VZ_MW_0014674 | GSS5060 Firmware Upgrade Procedure.pdf |
| VZ_MW_0014678 | UTS SDK - Getting Started.pdf |
| VZ_MW_0014739 | 3868008b_gpsperformance.doc |
| VZ_MW_0015043 | 3f0f300d_afltperformance.doc |
| VZ_MW_0015215 | 3f0f3011_afltperformance.doc |
| VZ_MW_0015387 | 3868008b_afltperformance.doc |
| VZ_MW_0015559 | a8ee717c_poslocation.doc |
| VZ_MW_0015581 | datarack.jpg |
| VZ_MW_0015582 | 3523ce15_poslocation.doc |
| VZ_MW_0015604 | 3523ce19_gpsperformance.doc |
| VZ_MW_0015908 | 3523ce68_afltperformance.doc |
| VZ_MW_0016166 | PLTS Standalone (Dual SR3452V2s) Poster.pdf |
| VZ_MW_0016168 | SuperRack (Dual 3452V2s, SR5500, TAS5600) Poster.pdf |
| VZ_MW_0016170 | PLTS Standalone (TAS3450) Poster.pdf |
| VZ_MW_0016172 | SuperRack (TAS3450, TAS4500, TAS4600) Poster.pdf |
| VZ_MW_0016174 | F16033_PLTSOperationsManual.pdf |
| VZ_MW_0016470 | F11240_TASKITC2KReferenceManual.pdf |
| VZ_MW_0016870 | F11241_TASKITC2KOperationsManual.pdf |

(Dkt. #170). Because of this production, Verizon avers that "Mobility's assertion that Verizon refused to produce 'any specific or proprietary documents other than generic documents pertaining to the LTE 4G systems in general and no internal documents whatsoever as to how their Emulator works in the NDET lab' is [] demonstrably false" (Dkt. #170) (citing Dkt. #168). After arguing that it produced thousands of pages of "highly-confidential technical documents," Verizon next claims that it identified the relevant documents that Mobility Workx sought multiple times—including documents "relating to the X2 Handover event" (Dkt. #170) (citing Exhibit 2). Verizon further points out that Mobility Workx identified the same documents it claimed were not produced

5

in its Emergency Motion to Modify the Protective Order (Dkt. #170) (citing Dkt. #82). Thus, Verizon argues, "not only did Mobility already have the relevant technical documents produced by Verizon, but Verizon repeatedly identified the location and contents of these documents to Mobility" (Dkt. #170).

Following its first two arguments, Verizon next asserts that it "indicated to Mobility that additional detailed information was in the possession of Verizon's third-party suppliers" (Dkt. #170). In support of this argument, Verizon cites an email it sent to Mobility Workx whereby Verizon states:

> [A]ll of the accused network equipment is designed, manufactured, and provided by third parties, as acknowledged by Mobility's Complaint and Infringement Contentions. Verizon's engineers generally focus on interoperability of the various parts that Verizon purchases, and more often than not Verizon's engineers have limited knowledge of the internal working of any of the third-party parts purchased. *Thus most, if not all, of the technical documentation (including source code) that will be at issue in this case is not in Verizon's possession, custody, or control*.

(Dkt. #170, Exhibit 2) (emphasis added). Despite being made aware that Verizon's "suppliers had 'most, if not all, of the technical documentation (including source code) that will be at issue in this case,'" Verizon contends that "Mobility made no effort to seek third-party discovery from any party, on any subject. [And, further, that] Mobility did not serve a single document subpoena on any of Verizon's suppliers, and did not seek to take a single deposition of Verizon's suppliers" (Dkt. #170) (citing Dkt. #86).

Next, Verizon notes that Mobility Workx, on April 19, 2019, sent a letter to Verizon requesting additional documents (Dkt. #170). A great deal of those documents, Verizon maintains, had already been produced (Dkt. #170). Verizon further maintains that the other documents that were requested in the April 19 letter were overbroad and irrelevant (Dkt. #170). In an attempt to meet and confer over the request for said documents, Verizon claims Mobility Workx' counsel, rather than enumerating specific documents that he needed, responded that "you [counsel for

Verizon] should know" because "you've done this way more times than I have" (Dkt. #170) (citing Barton Decl. at ¶ 16). Verizon claims that Mobility Workx "never provided the requested clarity" (Dkt. #170). Verizon also points to Mobility Workx' decision to decline to take multiple depositions, cancel certain depositions, and thus only take "one deposition in the entire case" (Dkt. #170).[1]

Finally, Verizon maintains that Mobility Workx' fails to carry its burden in establishing that Verizon acted in bad faith in three ways. First, Verizon contends that Mobility Workx is simply manipulating the Local Rules to try and harm Verizon and that, regardless of Verizon's familiarity with the Eastern District, "Verizon *did* produce relevant technical documents in compliance with the Local Rules, and Mobility ignored them" (Dkt. #170). Second, Verizon further argues that it responded to proper discovery and points out that when it told Mobility Workx that it would not respond to late discovery, "Mobility [did not] seek relief from the court . . . " (Dkt. #170). Third, Verizon argues that Mobility Workx demand that Verizon produce every drive test report Verizon has ever conducted "makes no sense" (Dkt. #170). To require such production, according to Verizon, would be to disregard each relevant parameter of every specific drive test and to require the production of other drive tests which are not accused of infringement in this case (Dkt. #170). For these reasons, Verizon opposes Mobility Workx' Motion. The Court now addresses Mobility Workx' Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes sanctions in a number of instances. One of those instances is when a party fails to disclose, to supplement an earlier response, or to admit. FED. R. CIV. P. 37(c). Pursuant to Federal Rule of Civil Procedure Rule 37(c)(1):

---

[1] In that one deposition, Verizon points out that Mobility Workx' expert stated he did not need any additional documents to render his opinions (Dkt. #170).

7

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

*Id.* Rule 37(b)(2)(A)(i)–(vi) permits a court to "issue further just orders" including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party;

*Id.* "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express. v. Piper*, 447 U.S. 752, 763–64 (1980).

## ANALYSIS

Pursuant to the Court's Order Governing Proceedings, the parties are on notice that they "shall disclose, without further request or order, all information required by the Patent Rules in accordance with the deadlines set by the Rules" (Dkt. #16). The Court's Order Governing Proceedings continues by stating that "Mandatory Disclosures shall be completed by the date set in the Scheduling Order entered after the Rule 16 management conference" (Dkt. #16). Those Mandatory Disclosures include the initial disclosures required by Federal Rule of Civil Procedure Rule 26(a)(1) which provides that:

> [a] party must, without awaiting a discovery request, provide to the other parties: the name and, if known, the address and telephone number of each individual likely to have

discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment

FED. R. CIV. P. 26 (a)(1). The Order also provides that "all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party relevant to the claims or defenses of any party" shall be disclosed by each party (Dkt. #16). The Order directs the parties to Local Rule CV-26(d) for the meaning of "relevant to the claims or defense of any party" (Dkt. #16). Local Rule CV-26 provides:

> (d) Relevant to Any Party's Claim or Defense. The following observations are provided for counsel's guidance in evaluating whether a particular piece of information is "relevant to any party's claim or defense:"
> (1) it includes information that would not support the disclosing parties' contentions;
> (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
> (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;
> (4) it is information that deserves to be considered in the preparation, evaluation, or trial of a claim or defense; and
> (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

L.R. CV-26. The duty to disclose, as governed by the Federal Rules of Civil Procedure, is "continuing and requires supplementation" (Dkt. #16) (citing FED. R. CIV. P. 26 (e)).

Should a party fail to disclose or supplement "information required to be disclosed by any order of this court or the Patent Rules of this court . . ." Federal Rule of Civil Procedure Rule 37 provides a number of remedies (Dkt. #16). One of those remedies is particularly relevant here. Rule 37(c)(1) provides that a court "may inform the jury" if a party fails to disclose or supplement relevant evidence as required by the federal rules. FED. R. CIV. P. 37(c)(1). This remedy is commonly known as an adverse inference instruction.

Fifth Circuit precedent in the adverse inference instruction realm generally concerns the spoliation of evidence, not the withholding of documents. The Second Circuit, however, has

provided guidance. In *Residential Funding Corp. v. DeGeorge Financial Corp.*, the Second Circuit held that

> [W]here, as here, an adverse inference instruction is sought on the basis that the evidence was not produced in time for use at trial, the party seeking the instruction must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had "a culpable state of mind"; and (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

306 F.3d 99, 107 (2d Cir. 2002). While not binding on the Court, this statement of the law is persuasive. To be sure, the Second Circuit's framework comports with Fifth Circuit precedent. In *United States v. Wise*, the Fifth Circuit stated that "absent a showing of bad faith, failure to produce records is insufficient to warrant a spoliation or *missing evidence instruction*." 221 F.3d 140, 156 (5th Cir. 2000) (citing *Higgins v. Martin Marietta Corp.*, 752 F.2d 492 (10th Cir. 1985)). Additionally, *Residential Funding Corp.* has been looked upon favorably by the Eastern District of Texas. *See Cummins-Allison Corp. v. Glory Ltd.*, 2006 WL 8441019, at *2 (E.D. Tex. Jan. 23, 2006) (citing *Residential Funding Corp.* for the proposition that an adverse inference instruction predicated upon discovery misconduct absent spoliation requires a finding of bad faith); *Kamantani v. Benq Corporation*, 2005 WL 8131835, at *11 (E.D. Tex. Aug. 5, 2005) (same). Accordingly, the Court proceeds with the understanding that an adverse inference instruction will only be proper should the Court find that Verizon acted in bad faith. *See VirnetX Inc. v. Cisco Systems, Inc.*, 2012 WL 7997962, at *5 (E.D. Tex. Aug. 8, 2012) ("At the same time, to give an adverse inference instruction, as requested by VirnetX, is to conclude that Apple did in fact terminate the deposition to give it an opportunity to coach the witness and that the testimony would have been unfavorable to Apple.").

Mobility Workx asserts that Verizon "intentionally has refused to provide any specific or proprietary documents other than generic documents pertaining to the LTE 4G systems in general

and no internal documents whatsoever as to how their Emulator works in the NDET lab" (Dkt. #168) (citing Mahcat Decl ¶¶ 2–31). As a result of what Mobility Workx claims is intentional conduct, Mobility Workx requests that an adverse inference instruction be entered. Mobility Workx argues that the request for an adverse inference instruction is supported by bad faith because (1) Verizon and its counsel frequently appear in the District and thus any failure to disclose cannot be a misunderstanding; (2) Verizon did not produce "documents showing how their network operates"; and (3) Verizon did not respond to a letter requesting the information at issue nor respond to interrogatories (Dkt. #168). The Court disagrees and finds that Mobility Workx has failed to carry its burden in establishing bad faith on Verizon's part.

First, the fact that Verizon and/or its counsel have been frequent litigants in this district is not a proper argument nor is it sufficient to find bad faith. Second, simply by responding to discovery requests with "objections"[2] does not compel the conclusion that Verizon "knowingly sought to frustrate Mobility's preparation for trial and deprive Mobility of obviously relevant documents" (Dkt. #168). As Verizon states in its response, Verizon: (1) attempted to meet-and-confer when there were discovery issues, (2) offered to demonstrate where particular documents were located, (3) made Mobility Workx' well aware of the fact that many of Verizon's third party suppliers—which were listed in Verizon's initial disclosures—had the information that Mobility Workx requested; and (4) made common objections when it believed a request was overly broad or irrelevant (Dkt. #170). None of these actions point to a bad-faith actor that should receive a *severe* sanction. Third, Verizon was not required to respond to untimely interrogatories. *See* L.R. CV-5(d) ("Service after 5:00 p.m. Central Time shall be deemed served on the following day for purposes of calculating responsive deadlines."). That Verizon chose to forgo a response to a late

---

[2] The Court disregards Mobility Workx characterization of the objections as "nuisance objections."

11

attempt to conduct discovery does not mean that Verizon must now be labeled a bad-faith actor. Moreover, it is telling that Mobility Workx "did not respond to Verizon's email," "did not protest Verizon's position," and did not "seek relief from the Court on this issue" (Dkt. #170). The Local Rules do not require Mobility Workx to seek the Court's intervention to receive what could be considered mandatory disclosures. Alerting the Court at an earlier time of a potential dispute[3]—rather than waiting until the eve of trial and requesting an adverse inference instruction—would have been a wiser decision, however. Put simply, even if the Court were to assume that Verizon did not produce some documents,[4] Mobility Workx has failed to carry its burden in establishing that Verizon acted in bad faith. Mobility Workx itself admits that a bad faith finding is required (Dkt. #168). Without that finding, the Court will not impose the "full gauntlet of sanctions" on Verizon as Mobility Workx requests.

## CONCLUSION

It is therefore **ORDERED** Mobility Workx, LLC's Motion Requesting an Adverse Inference Jury Instruction be Given Pursuant to FRCP 37(C) (Dkt. #168) is **DENIED**.

**SIGNED this 18th day of November, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[3] The Court provides a mechanism for this very type of discovery dispute whereby the parties may alert the Court to such a dispute, seek a telephone conference or referral to the Hotline, and only then file a motion to compel.

[4] With that being said, Mobility Workx has submitted a Motion in Limine which requests that any of the aforementioned documents that have not been produced be precluded from disclosure or discussion at trial (Dkt. #140). This decision does not affect that Motion which the Court will address at the Final Pretrial Conference, but generally a party cannot use a document not proffered.