# EXHIBIT 1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
 2                 SHERMAN DIVISION
 3              CIVIL ACTION NO. 4:17-cv-00872-ALM
 4

 5

 6    MOBILITY WORKX, LLC,
 7                 Plaintiff,
      vs.
 8

      CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,
 9

                   Defendant.
10    _____/
11

12

13              Stearns Weaver Miller
                150 West Flagler Street, Suite 2200
14              Miami, FL 33130
                Friday, June 21, 2019
15              9:40 a.m. - 6:31 p.m.
16

17        VIDEOTAPED DEPOSITION OF MOBILITY WORKX, LLC
18                EDWIN HERNANDEZ-MONDRAGON
19

20    Taken before MARIA E. REEDER, RPR, FPR
21    and Notary Public for the State of Florida at
22    Large, pursuant to Notice of Taking Deposition
23    filed in the above cause.
24

25
```

Page 1

**Page 2**

1  APPEARANCES:
2  On behalf of the Plaintiff:
3  LAW OFFICES OF MICHAEL MACHAT, P.A.
   8730 West Sunset Boulevard, Suite 250
4  West Hollywood, FL 90069--2281
   BY:  MICHAEL MACHAT, ESQ.
5     michael@machatlaw.com
6
7  On behalf of Defendant:
8  ALSTON & BIRD, LLP
   101 South Tyron Street, Suite 4000
9  Charlotte, North Carolina 28280
   BY:  ROSS R. BARTON, ESQ.
10    ross.barton@alston.com
11
12
13  ALSO PRESENT:
14  Orlando Jimenez, Videographer
    Veritext Legal Solutions
15
16
17
18  REPORTED BY:
19  MARIA E. REEDER, RPR, FPR
    Veritext Florida Reporting
20  2 South Biscayne Boulevard, Suite 2250
    Miami, FL 33131
21
22
23
24
25

**Page 3**

1        I N D E X
2
3  Edwin Hernandez-Mondragon        Page
4  Direct by Mr. Barton        05
5
6
7     E X H I B I T S   M A R K E D
8
9  Plaintiff's For Identification       Page
10
11 Exhibit 1  First Amended Notice for Deposition  07
   For Mobility Workx
12 Exhibit 2  First Amended Notice for Deposition  08
   For Edwin A. Hernandez-Mondragon
13 Exhibit 3  Exhibit B        62
14 Exhibit 4  Mutual General Release       99
15 Exhibit 5  Appendix A       110
16 Exhibit 6  417 Patent       134
17 Exhibit 7  Adaptive Network Protocol    143
18 Exhibit 8  330 Patent       146
19 Exhibit 9  Drawing       184
20 Exhibit 10 Complaint for Patent Infringement  226
21 Exhibit 11 Edwin A. Hernandez-Mondragon CV  243
22 Exhibit 12 First Request for Admissions to   266
   Defendant
23 Exhibit 13 First Set of Request for Admissions  267
   Number 46 and Beyond to Plaintiff
24 Exhibit 14 First Set of Interrogatories to    268
   Defendant
25

**Page 4**

1        THE VIDEOGRAPHER:  Okay.  Good morning.  The
2  time is 9:40 a.m.  We're going on the record on
3  Friday, June 21, 2019.  This is Media Unit 1 of
4  the video deposition of Edwin A.
5  Hernandez-Mondragon taken in the matter of
6  Mobility Workx, LLC versus Verizon, filed in the
7  United States District Court for the Eastern
8  Court of Texas, Sherman Division.  Case number
9  417-CV-00872-ALM.
10      This deposition is being held at 150 West
11 Flagler Street, Suite 2200, Miami, Florida,
12 33130.
13      My name is Orlando Jimenez from the firm
14 Veritext Legal Solutions.  I'm the
15 videographer.  The court reporter is Maria
16 Reeder from the firm Veritext Legal Solutions.
17      Would counsel please state their
18 appearance and affiliation for the record.
19      MR. BARTON:  This is Ross Barton from Alston
20 & Bird on behalf of the Defendant, Cellco
21 Partnership d/b/a Verizon Wireless.
22      MR. MACHAT:  And this is Michael Machat on
23 behalf of Plaintiff, Mobility Workx.
24 Thereupon:
25      EDWIN HERNANDEZ-MONDRAGON,

**Page 5**

1    A witness named in the notice heretofore filed,
2  being of lawful age and having been first duly
3  sworn, testified on his oath as follows:
4    THE WITNESS:  I do.
5        DIRECT EXAMINATION
6  BY MR. BARTON:
7    Q   Good morning, Dr. Hernandez.
8    A   Good morning.
9    Q   State your full name and address for the
10 record, please.
11 ███████████████████████
12 ████████████████████
13
14   Q   And I know sometimes, I think, your last
15 name is hyphenated with Hernandez-Mondragon and
16 sometimes it's just Hernandez.
17     Can you maybe just explain that to me?
18   A   In Latin America we usually have both names
19 from your parents.
20   Q   Okay.
21   A   The last name from your mom is the second.
22 The last name from your father is the first.
23 Sometimes they swap that, but that's how I was named.
24   Q   Okay.  Are you okay if I just refer to you
25 as Dr. Hernandez?

2 (Pages 2 - 5)

1  identifies Rick Sanchez, for example, to have some
2  shares in a company called Marathon IP, where Marathon
3  IP has a --
4      Q   Martin IP?
5      A   Marathon.
6      Q   Marathon IP.
7      A   Yeah.
8      Q   Okay.
9      A   And some other things that you probably see
10 in the production, that it was sent to the FBI.  And
11 it's a total package.
12       As this was being delivered to them, then
13 I asked friends to just, like, look, this is what I
14 did.  I'm afraid.  I'm scared because I've never
15 done anything like that.  This is something on the
16 criminal side, not on the civil side.
17       So I had to tell some people to be witness
18 of that situation, and that's what happened.  That's
19 why I was a little hesitant to disclose the full
20 spectrum because I'm not -- I don't know if this is
21 an investigation that is ongoing or what's going on.
22 I have no idea.
23     Q   What communications did you provide to the
24 FBI?
25     A   I think it were, especially the Dallas when
Page 294

1  basically were with Mr. Eric Spamburger, I don't know
2  how to pronounce his name, from -- back in the days
3  when they had IP Nav, so they were all involved in IP
4  Nav.
5      Q   And what leads you to believe that in 2018
6  there was an ongoing criminal conspiracy?
7      A   Their behavior.
8      Q   And what about Alston & Bird's behavior led
9  you to that conclusion, that there was an ongoing
10 criminal conspiracy in 2018?
11     A   We have a witness that when we were in
12 discussion with our attorneys, in Cab's office, in
13 Austin, Texas, we had a discussion.
14       The content of that discussion were
15 private.  Somebody called from Nokia, one of your
16 ex-attorneys from Nokia actually, and he knew the
17 contents of discussion without us revealing
18 anything.  And then we were, like, how did he know
19 that if we just talk about it now.
20     Q   Contents of what discussion?
21     A   I don't recall the details.  It's in the --
22 it's probably recollected in my fact, but it was a
23 discussion about the patents and the whole -- because
24 you have Nokia there on your side, right, and then
25 Nokia has one of your attorneys?  What's his name?  I
Page 296

1  the -- when we had instructed counsel not to do
2  certain things and they did.  When we instructed
3  counsel to -- to proceed in a way and they didn't, so
4  we attached -- I attached all those dialogues as
5  exhibits to the letter to the FBI.
6      Q   That's the e-mail correspondence that you
7  had with Whitaker Chalk and Cab Connor?
8      A   Yes, sir.
9      Q   And those are some of the e-mails that you
10 appended to your opposition to Verizon's emergency
11 motion to dismiss the case?
12     A   Yes.
13     Q   Okay.  So you believe that because Mike
14 Newton and Alston & Bird had previous dealings with
15 David Pridham and Dominion Harbor that there was a
16 criminal conspiracy that involved Alston & Bird and
17 Dominion Harbor?
18     A   I believe so.
19     Q   Do you still believe that?
20     A   Yes.
21     Q   What is the factual basis for that?
22     A   A case in Minnesota I think it is, or
23 Michigan where Michael Newton basically got involved
24 in some sort of tampering a witness with David Pridham
25 and their CTO, Dominion Harbor's CTO.  And they all
Page 295

1  can't remember his name.  Anyway, so.
2      He was leading us and in a way we think it
3  was done in bad faith from Nokia, right, and
4  you're -- he was an ex-Alston & Bird attorney.
5  That's why we see the connection.
6      And then Cab and everybody there, they
7  knew -- like Michael Newton every single move
8  about Mobility Workx before anything.  And now we
9  see the difference today with these new attorneys.
10 You guys don't know what's going on.
11     Q   So you believed that there was someone in
12 Dominion Harbor or your counsel that was a mole for
13 Alston & Bird and T-Mobile and Nokia?
14     A   They were all associated -- you all share in
15 the same background, IP Nav.  They're all coming from
16 IP Nav.
17     Q   So in your view there's an ongoing criminal
18 conspiracy and espionage?
19     A   The way I phrase, and you will see the
20 letter, is that there is a fraud, a fraudulent
21 relationship between Dominion Harbor and the
22 inventors.
23       Dominion Harbor say to the inventors, to a
24 set of people, that they had already arranged,
25 priorly, licensing deals.  When they take them to
Page 297

75 (Pages 294 - 297)

1  there, then the inventor goes under the assumption
2  that this guy is an attorney and he's going to do
3  the best for them, when in reality what they are
4  doing is a brokerage agreement where they probably
5  collect the most amount of money.  And they
6  fictitiously have these litigations and they are
7  kind of, like, in a way with certain different law
8  firms where they only work with only those law
9  firms, especially Rick Sanchez and Whitaker and
10  Chalk, and especially Cab.  They're the same people
11  all the time doing the same type of tasks and they
12  have, unfortunately, a relationship between Michael
13  Newton, your lead counsel, with David for decades.
14        There were in more than 100 cases, or
15  something 90, whatever, with IP Nav.  So I think
16  that that is a -- that was never disclosed to
17  Mobility Workx ever.
18     Q   And so your view is that Dominion Harbor was
19  back-channeling privileged details about the
20  litigation to Alston & Bird?
21     A   Probably.
22     A   Probably.
23        Do you believe that or not?
24     A   I think so.
25     Q   It's a very serious --

Page 298

1     A   Yeah, yeah.
2     Q   You believe that -- you believe that in your
3  heart of hearts?
4     A   Yeah, I believe that in my heart.  Yes.
5     Q   You understand that's a very serious
6  allegation.
7     A   Well, if the FBI investigate.  They might
8  have recorded you already for the last nine month.
9     Q   Do you think that's likely?
10     A   I don't know what it is.  But if they never
11  come back with anything, then, okay, maybe I was
12  wrong.
13     Q   Okay.  Any other facts that lead you to the
14  conclusion that there was an ongoing criminal
15  conspiracy in the T-Mobile case where the parties were
16  conspiring against you?
17     A   Yes.
18     Q   What else?
19     A   The expert report contained false
20  information that we identified.
21     Q   What expert report?
22     A   The damages expert report.
23     Q   Whose damages expert report?
24     A   Mobility Workx.
25     Q   Okay.  And whose false information did it

Page 299

1  contain?
2     A   It contained information from Sisvel
3  negotiation.  You used the Sisvel, I think, actually a
4  few minutes ago, a few hours ago.
5        So they used that when we had already had
6  a meeting with Sisvel and the expert knew that, so
7  we pointed that out and said, "Look, the Sisvel
8  factor that you used in there is wrong.  You have to
9  remove it because simply it's not -- it didn't
10  occur."  And then they refused and they still sent
11  to your firm the expert report.
12     Q   And because of that you conclude that Alston
13  & Bird is engaged in a criminal conspiracy with your
14  attorneys and Dominion Harbor to conspire against
15  Mobility Workx; is that correct?
16     A   And they stated the same thing with the
17  technical expert report.  They refuse to include the
18  Anritsu report in that expert report.
19     Q   And so, again, because of that you believe
20  that Alston & Bird was and potentially continues to be
21  engaged in a criminal conspiracy with your attorneys
22  and Dominion Harbor conspiring against Mobility Workx;
23  is that right?
24     A   Probably.  Yes, that's right.  I believe
25  that.

Page 300

1     Q   Does Dr. Helal share your view?
2     A   Yes.
3     Q   Did you share this opinion with him?
4     A   I share everything with him.
5     Q   And he concurs wholeheartedly?
6     A   Yes.
7     Q   That is Mobility Workx' official position;
8  is that fair?
9     A   That's fair.
10     Q   Okay.  Let's turn to the substance of this
11  case.  Go ahead and turn back to Plaintiff's responses
12  to Defendant's interrogatories, that is Exhibit Number
13  14.
14        Do you see here, and this is where we left
15  off before the break, Interrogatory Number 11 is
16  seeking information about objective indicia of
17  non-obviousness, right?
18     A   Yes.
19     Q   Do you know what "objective indicia of
20  non-obviousness" means?
21     A   If you can maybe just to confirm, right.
22     Q   Objective facts that would tend to support a
23  conclusion that a patent was not obvious.  Does that
24  make sense?
25     A   Okay.

Page 301

76 (Pages 298 - 301)

Job No. 3427294

| | |
|---|---|
| 1    CERTIFICATE OF OATH | 1    ERRATA SHEET |
| 2 | 2    Re:  Mobility Workx, LLC vs Cellco Partnership d/b/a |
| 3 |      Verizon Wireless |
| 4    STATE OF FLORIDA  ) | 3    DEPO OF:  Edwin A. Hernandez-Mondragon |
| 5    COUNTY OF MIAMI-DADE ) |      Date of :  June 21, 2019 |
| 6 | 4    Case No.:  4:17-cv-00872-ALM |
| 7        I, the undersigned authority, certify that | 5 |
| 8    EDWIN A. HERNANDEZ-MONDRAGON, personally | 6    PAGE  LINE     REMARKS |
| 9    appeared before me and was duly sworn. | 7    _____ |
| 10    WITNESS my hand and official seal this 27th day | 8    _____ |
| 11    of June 2019. | 9    _____ |
| 12 | 10    _____ |
| 13 | 11    _____ |
| 14 | 12    _____ |
| | 13    _____ |
| | 14    _____ |
| 15    MARIA E. REEDER, RPR, FPR | 15    _____ |
|      Notary Public, State of Florida | 16    _____ |
| 16    My Commission No. GG 073176 | 17    _____ |
|      Expires: 4/10/2021 | 18    _____ |
| 17 | 19    _____ |
| 18 | 20    _____ |
| 19 | 21    _____ |
| 20 | 22    Signature of Witness |
| 21 | 23    Dated this _____ day of _____, _____. |
| 22 | 24 |
| 23 | 25 |
| 24 | |
| 25 | |
|                                      Page 326 |                                      Page 328 |

| | |
|---|---|
| 1    CERTIFICATE | 1    michael@machatlaw.com |
| 2 | 2              June 27, 2019 |
| 3    STATE OF FLORIDA  ) | 3    RE: Mobility Workx, LLC v. Verizon |
| 4    COUNTY OF MIAMI-DADE ) | 4    DEPOSITION OF: Edwin A. Hernandez-Mondragon (# 3427294) |
| 5 | 5        The above-referenced witness transcript is |
| 6        I, MARIA E. REEDER, RPR, FPR, do hereby certify | 6    available for read and sign. |
| 7    that I was authorized to and did | 7        Within the applicable timeframe, the witness |
| 8    stenographically report the foregoing | 8    should read the testimony to verify its accuracy. If |
| 9    deposition of EDWIN A HERNANDEZ-MONDRAGON; that | 9    there are any changes, the witness should note those |
| 10    a review of the transcript was requested; and | 10    on the attached Errata Sheet. |
| 11    that the transcript is a true record of my | 11        The witness should sign and notarize the |
| 12    stenographic notes. | 12    attached Errata pages and return to Veritext at |
| 13    I FURTHER CERTIFY that I am not a relative, | 13    errata-tx@veritext.com. |
| 14    employee, attorney, or counsel of any of the | 14        According to applicable rules or agreements, if |
| 15    parties, nor am I a relative or employee of any | 15    the witness fails to do so within the time allotted, |
| 16    of the parties' attorney or counsel connected | 16    a certified copy of the transcript may be used as if |
| 17    with the action, nor am I financially | 17    signed. |
| 18    interested in the action. | 18              Yours, |
| 19    Dated this 27th day of June 2019. | 19              Veritext Legal Solutions |
| 20 | 20    cc:  All counsel |
| 21 | 21 |
| 22    MARIA E. REEDER, RPR, FPR | 22 |
|      and Notary Public | 23 |
| 23 | 24 |
| 24 | 25 |
| 25 | |
|                                      Page 327 |                                      Page 329 |

83 (Pages 326 - 329)