# EXHIBIT 2

███████████████████████████

# TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT

(Including Amendments Effective May 1, 2018, June 1, 2018 and February 26, 2019)

### Client Under a Disability

17. In some situations, Rule 1.02(g) requires a lawyer representing a client under a disability to seek the appointment of a legal representative for the client or to seek other orders for the protection of the client. The client may or may not, in a particular matter, effectively consent to the lawyer's revealing to the court confidential information and facts reasonably necessary to secure the desired appointment or order. Nevertheless, the lawyer is authorized by paragraph (c)(4) to reveal such information in order to comply with Rule 1.02(g). See also paragraph 5, Comment to Rule 1.03.

### Mandatory Disclosure Adverse to Client

18. Rule 1.05(e) and (f) place upon a lawyer professional obligations in certain situations to make disclosure in order to prevent certain serious crimes by a client or to prevent involvement by the lawyer in a client's crimes or frauds. Except when death or serious bodily harm is likely to result, a lawyer's initial obligation is to attempt to dissuade the client from committing the crime or fraud or to persuade the client to take corrective action; see Rule 1.02(d) and (e).

19. Because it is very difficult for a lawyer to know when a client's criminal or fraudulent purpose actually will be carried out, the lawyer is required by paragraph (e) to act only if the lawyer has information "clearly establishing" the likelihood of such acts and consequences. If the information shows clearly that the client's contemplated crime or fraud is likely to result in death or serious injury, the lawyer must seek to avoid those lamentable results by revealing information necessary to prevent the criminal or fraudulent act. When the threatened crime or fraud is likely to have the less serious result of substantial injury to the financial interests or property of another, the lawyer is not required to reveal preventive information but may do so in conformity to paragraph (c)(7). See also paragraph (f); Rule 1.02(d) and (e); and Rule 3.03(b) and (c).

20. Although a violation of paragraph (e) will subject a lawyer to disciplinary action, the lawyer's decisions whether or how to act should not constitute grounds for discipline unless the lawyer's conduct in the light of those decisions was unreasonable under all existing circumstances as they reasonably appeared to the lawyer. This construction necessarily follows from the fact that paragraph (e) bases the lawyer's affirmative duty to act on how the situation "reasonably appears" to the lawyer, while that imposed by paragraph (f) arises only when a lawyer "knows" that the lawyer's services have been misused by the client. See also Rule 3.03(b).

### Withdrawal

21. If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.15(a)(1). After withdrawal, a lawyer's conduct continues to be governed by Rule 1.05. The lawyer's duties of mandatory disclosure under paragraph (e) are not affected by termination of the relationship. If disclosure during the relationship was permissive, disclosure thereafter remains permissive under paragraphs (6), (7), and (8) if the further requirements of such paragraph are met. Neither this Rule nor Rule 1.15 prevents the lawyer from giving

notice of the fact of withdrawal, and no rule forbids the lawyer to withdraw or disaffirm any opinion, document, affirmation, or the like.

### Other Rules

22. Various other Texas Disciplinary Rules of Professional Conduct permit or require a lawyer to disclose information relating to the representation. See Rules 1.07, 1.12, 2.02, 3.03 and 4.01. In addition to these provisions, a lawyer may be obligated by other provisions of statutes or other law to give information about a client. Whether another provision of law supersedes Rule 1.05 is a matter of interpretation beyond the scope of these Rules, but sub-paragraph (c)(4) protects the lawyer from discipline who acts on reasonable belief as to the effect of such laws.

### Rule 1.06. Conflict of Interest: General Rule

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

> (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

> (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer may represent a client in the circumstances described in (b) if:

> (1) the lawyer reasonably believes the representation of each client will not be materially affected; and

> (2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

(d) A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute.

(e) If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

(f) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct.

Comment:

Loyalty to a Client

1. Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer must take effective action to eliminate the conflict, including withdrawal if necessary to rectify the situation. See also Rule 1.15. When more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by this Rule and Rules 1.05 and 1.09. See also Rule 1.07(c). Under this Rule, any conflict that prevents a particular lawyer from undertaking or continuing a representation of a client also prevents any other lawyer who is or becomes a member of or an associate with that lawyer's firm from doing so. See paragraph (f).

2. A fundamental principle recognized by paragraph (a) is that a lawyer may not represent opposing parties in litigation. The term "opposing parties" as used in this Rule contemplates a situation where a judgment favorable to one of the parties will directly impact unfavorably upon the other party. Moreover, as a general proposition loyalty to a client prohibits undertaking representation directly adverse to the representation of that client in a substantially related matter unless that client's fully informed consent is obtained and unless the lawyer reasonably believes that the lawyer's representation will be reasonably protective of that client's interests. Paragraphs (b) and (c) express that general concept.

Conflicts in Litigation

3. Paragraph (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation are not actually directly adverse but where the potential for conflict exists, such as co-plaintiffs or co-defendants, is governed by paragraph (b). An impermissible conflict may exist or develop by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met. Compare Rule 1.07 involving intermediation between clients.

Conflict with Lawyer's Own Interests

4. Loyalty to a client is impaired not only by the representation of opposing parties in situations within

paragraphs (a) and (b)(1) but also in any situation when a lawyer may not be able to consider, recommend or carry out an appropriate course of action for one client because of the lawyer's own interests or responsibilities to others. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b)(2) addresses such situations. A potential possible conflict does not itself necessarily preclude the representation. The critical questions are the likelihood that a conflict exists or will eventuate and, if it does, whether it will materially and adversely affect the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. It is for the client to decide whether the client wishes to accommodate the other interest involved. However, the client's consent to the representation by the lawyer of another whose interests are directly adverse is insufficient unless the lawyer also believes that there will be no materially adverse effect upon the interests of either client. See paragraph (c).

5. The lawyer's own interests should not be permitted to have adverse effect on representation of a client, even where paragraph (b)(2) is not violated. For example, a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See Rules 1.01 and 1.04. If the probity of a lawyer's own conduct in a transaction is in question, it may be difficult for the lawyer to give a client detached advice. A lawyer should not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.

### Meaning of Directly Adverse

6. Within the meaning of Rule 1.06(b), the representation of one client is "directly adverse" to the representation of another client if the lawyer's independent judgment on behalf of a client or the lawyer's ability or willingness to consider, recommend or carry out a course of action will be or is reasonably likely to be adversely affected by the lawyer's representation of, or responsibilities to, the other client. The dual representation also is directly adverse if the lawyer reasonably appears to be called upon to espouse adverse positions in the same matter or a related matter. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not constitute the representation of directly adverse interests. Even when neither paragraph (a) nor (b) is applicable, a lawyer should realize that a business rivalry or personal differences between two clients or potential clients may be so important to one or both that one or the other would consider it contrary to its interests to have the same lawyer as its rival even in unrelated matters; and in those situations a wise lawyer would forego the dual representation.

### Full Disclosure and Informed Consent

7. A client under some circumstances may consent to representation notwithstanding a conflict or potential conflict. However, as indicated in paragraph (c)(1), when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved should not ask for such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the full disclosure necessary to obtain informed

consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.

8. Disclosure and consent are not formalities. Disclosure sufficient for sophisticated clients may not be sufficient to permit less sophisticated clients to provide fully informed consent. While it is not required that the disclosure and consent be in writing, it would be prudent for the lawyer to provide potential dual clients with at least a written summary of the considerations disclosed.

9. In certain situations, such as in the preparation of loan papers or the preparation of a partnership agreement, a lawyer might have properly undertaken multiple representation and be confronted subsequently by a dispute among those clients in regard to that matter. Paragraph (d) forbids the representation of any of those parties in regard to that dispute unless informed consent is obtained from all of the parties to the dispute who had been represented by the lawyer in that matter.

10. A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.

11. Ordinarily, it is not advisable for a lawyer to act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated and even if paragraphs (a), (b), and (d) are not applicable. However, there are circumstances in which a lawyer may act as advocate against a client, for a lawyer is free to do so unless this Rule or another rule of the Texas Disciplinary Rules of Professional Conduct would be violated. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in a matter unrelated to any matter being handled for the enterprise if the representation of one client is not directly adverse to the representation of the other client. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for declaratory judgment concerning statutory interpretation.

### Interest of Person Paying for a Lawyer's Service

12. A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See Rule 1.08(e). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors or employees, if the clients consent after consultation and the arrangement ensures the lawyer's professional independence.

### Non-litigation Conflict Situations

13. Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.

14. For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation may be permissible where the clients are generally aligned in interest even though there is some difference of interest among them.

15. Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration it may be unclear whether the client is the fiduciary or is the estate or trust, including its beneficiaries. The lawyer should make clear the relationship to the parties involved.

16. A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of professional judgment, the lawyer should not serve as a director.

### Conflict Charged by an Opposing Party

17. Raising questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with great caution, however, for it can be misused as a technique of harassment. See Preamble: Scope.

18. Except when the absolute prohibition of this rule applies or in litigation when a court passes upon issues of conflicting interests in determining a question of disqualification of counsel, resolving questions of conflict of interests may require decisions by all affected clients as well as by the lawyer.

**Imputed Conflicts, Nonlawyer Employees, and Lawyers Formerly Employed in a Nonlawyer Role**

19.  A law firm is not prohibited from representing a client under paragraph (f) merely because a nonlawyer employee of the firm, such as a paralegal or legal secretary, has a conflict of interest arising from prior employment or some other source. Nor is a firm prohibited from representing a client merely because a lawyer of the firm has a conflict of interest arising from events that occurred before the person became a lawyer, such as work that the person did as a law clerk or intern. But the firm must ordinarily screen the person with the conflict from any personal participation in the matter to prevent the person's communicating to others in the firm confidential information that the person and the firm have a legal duty to protect. *See* Rule 5.03; *see also* MODEL RULES PROF' L CONDUCT r. 1.10 cmt. 4 (AM. BAR ASS'N 1983); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 123 cmt. f (AM. LAW INST. 2000).

**Rule 1.07. Conflict of Interest: Intermediary**

(a) A lawyer shall not act as intermediary between clients unless:

> (1) the lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges, and obtains each client's written consent to the common representation;

> (2) the lawyer reasonably believes that the matter can be resolved without the necessity of contested litigation on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and

> (3) the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.

(b) While acting as intermediary, the lawyer shall consult with each client concerning the decision to be made and the considerations relevant in making them, so that each client can make adequately informed decisions.

(c) A lawyer shall withdraw as intermediary if any of the clients so requests, or if any of the conditions stated in paragraph (a) is no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation.

(d) Within the meaning of this Rule, a lawyer acts as intermediary if the lawyer represents two or more parties with potentially conflicting interests.

(e) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member of or associated with that lawyer's firm may engage in that conduct.

33

**Comment:**

1. A lawyer acting as intermediary may seek to establish or adjust a relationship between clients on an amicable and mutually advantageous basis. For example, the lawyer may assist in organizing a business in which two or more clients are entrepreneurs, in working out the financial reorganization of an enterprise in which two or more clients have an interest, in arranging a property distribution in settlement of an estate or in mediating a dispute between clients. The lawyer seeks to resolve potentially conflicting interests by developing the parties' mutual interests. The alternative can be that each party may have to obtain separate representation, with the possibility in some situations of incurring additional cost, complication or even litigation. Given these and other relevant factors, all the clients may prefer that the lawyer act as intermediary.

2. Because confusion can arise as to the lawyer's role where each party is not separately represented, it is important that the lawyer make clear the relationship; hence, the requirement of written consent. Moreover, a lawyer should not permit his personal interests to influence his advice relative to a suggestion by his client that additional counsel be employed. See also Rule 1.06(b).

3. The Rule does not apply to a lawyer acting as arbitrator or mediator between or among parties who are not clients of the lawyer, even where the lawyer has been appointed with the concurrence of the parties. In performing such a role the lawyer may be subject to applicable codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint Committee of the American Bar Association and the American Arbitration Association.

4. In considering whether to act as intermediary between clients, a lawyer should be mindful that if the intermediation fails the result can be additional cost, embarrassment and recrimination. In some situations, the risk of failure is so great that intermediation is plainly impossible. Moreover, a lawyer cannot undertake common representation of clients between whom contested litigation is reasonably expected or who contemplate contentious negotiations. More generally, if the relationship between the parties has already assumed definite antagonism, the possibility that the clients' interests can be adjusted by intermediation ordinarily is not very good.

5. The appropriateness of intermediation can depend on its form. Forms of intermediation range from informal arbitration, where each client's case is presented by the respective client and the lawyer decides the outcome, to mediation, to common representation where the clients' interests are substantially though not entirely compatible. One form may be appropriate in circumstances where another would not. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating a relationship between the parties or terminating one.

**Confidentiality and Privilege**

6. A particularly important factor in determining the appropriateness of intermediation is the effect on client-lawyer confidentiality and the attorney-client privilege. In a common representation, the lawyer is still required both to keep each client adequately informed and to maintain confidentiality of information

34

relating to the representation, except as to such clients. See Rules 1.03 and 1.05. Complying with both requirements while acting as intermediary requires a delicate balance. If the balance cannot be maintained, the common representation is improper. With regard to the attorney-client privilege, the general rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.

7. Since the lawyer is required to be impartial between commonly represented clients, intermediation is improper when that impartiality cannot be maintained. For example, a lawyer who has represented one of the clients for a long period and in a variety of matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.

### Consultation

8. In acting as intermediary between clients, the lawyer should consult with the clients on the implications of doing so, and proceed only upon informed consent based on such a consultation. The consultation should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances.

9. Paragraph (b) is an application of the principle expressed in Rule 1.03. Where the lawyer is intermediary, the clients ordinarily must assume greater responsibility for decisions than when each client is independently represented.

10. Under this Rule, any condition or circumstance that prevents a particular lawyer either from acting as intermediary between clients, or from representing those clients individually in connection with a matter after an unsuccessful intermediation, also prevents any other lawyer who is or becomes a member of or associates with that lawyer's firm from doing so. See paragraphs (c) and (e).

### Withdrawal

11. In the event of withdrawal by one or more parties from the enterprise, the lawyer may continue to act for the remaining parties and the enterprise. See also Rule 1.06(c)(2) which authorizes continuation of the representation with consent.

### Rule 1.08. Conflict of Interest: Prohibited Transactions

(a) A lawyer shall not enter into a business transaction with a client unless:

>   (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client;

>   (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

35

(3) the client consents in writing thereto.

(b) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as a parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.

(c) Prior to the conclusion of all aspects of the matter giving rise to the lawyer's employment, a lawyer shall not make or negotiate an agreement with a client, prospective client, or former client giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.

(d) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation or administrative proceedings, except that:

(1) a lawyer may advance or guarantee court costs, expenses of litigation or administrative proceedings, and reasonably necessary medical and living expenses, the repayment of which may be contingent on the outcome of the matter; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

(e) A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) the client consents;

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.05.

(f) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement to guilty or nolo contendere pleas, unless each client has consented after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the nature and extent of the participation of each person in the settlement.

(g) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

(h) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation

the lawyer is conducting for a client, except that the lawyer may:

> (1) acquire a lien granted by law to secure the lawyer's fee or expenses; and
>
> (2) contract in a civil case with a client for a contingent fee that is permissible under Rule 1.04.

(i) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member of or associated with that lawyer's firm may engage in that conduct.

(j) As used in this Rule, "business transactions" does not include standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others.

### Comment:

### Transactions between Client and Lawyer

1. This rule deals with certain transactions that per se involve unacceptable conflicts of interests.

2. As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others such as banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.

3. A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. Paragraph (b) recognizes an exception where the client is a relative of the donee or the gift is not substantial.

### Literary Rights

4. An agreement by which a lawyer acquires literary or media rights concerning the conduct of representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Paragraph (c) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property, if the arrangement conforms to Rule 1.04 and to paragraph (h) of this Rule.

### Person Paying for Lawyer's Services

5. Paragraph (e) requires disclosure to the client of the fact that the lawyer's services are being paid for by a third party. Such an arrangement must also conform to the requirements of Rule 1.05 concerning confidentiality and Rule 1.06 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure. Where an insurance company pays the lawyer's fee for representing an insured, normally the insured has consented to the arrangement by the terms of the insurance contract.

### Prospectively Limiting Liability

6. Paragraph (g) is not intended to apply to customary qualification and limitations in legal opinions and memoranda.

### Acquisition of Interest in Litigation

7. This Rule embodies the traditional general precept that lawyers are prohibited from acquiring a proprietary interest in the subject matter of litigation. This general precept, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these Rules, such as the exception for contingent fees set forth in Rule 1.04 and the exception for certain advances of the costs of litigation set forth in paragraph (d). A special instance arises when a lawyer proposes to incur litigation or other expenses with an entity in which the lawyer has a pecuniary interest. A lawyer should not incur such expenses unless the client has entered into a written agreement complying with paragraph (a) that contains a full disclosure of the nature and amount of the possible expenses and the relationship between the lawyer and the other entity involved.

### Imputed Disqualifications

8. The prohibitions imposed on an individual lawyer by this Rule are imposed by paragraph (i) upon all other lawyers while practicing with that lawyer's firm.

### Rule 1.09. Conflict of Interest: Former Client

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

   (1) in which such other person questions the validity of the lawyer's services or work product for the former client;

   (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or

   (3) if it is the same or a substantially related matter.

38

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

(c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

Comment:

1. Rule 1.09 addresses the circumstances in which a lawyer in private practice, and other lawyers who were, are or become members of or associated with a firm in which that lawyer practiced or practices, may represent a client against a former client of that lawyer or the lawyer's former firm. Whether a lawyer, or that lawyer's present or former firm, is prohibited from representing a client in a matter by reason of the lawyer's successive government and private employment is governed by Rule 1.10 rather than by this Rule.

2. Paragraph (a) concerns the situation where a lawyer once personally represented a client and now wishes to represent a second client against that former client. Whether such a personal attorney-client relationship existed involves questions of both fact and law that are beyond the scope of these Rules. See Preamble: Scope. Among the relevant factors, however, would be how the former representation actually was conducted within the firm; the nature and scope of the former client's contacts with the firm (including any restrictions the client may have placed on the dissemination of confidential information within the firm); and the size of the firm.

3. Although paragraph (a) does not absolutely prohibit a lawyer from representing a client against a former client, it does provide that the latter representation is improper if any of three circumstances exists, except with prior consent. The first circumstance is that the lawyer may not represent a client who questions the validity of the lawyer's services or work product for the former client. Thus, for example, a lawyer who drew a will leaving a substantial portion of the testator's property to a designated beneficiary would violate paragraph (a) by representing the testator's heirs at law in an action seeking to overturn the will.

4. Paragraph (a)'s second limitation on undertaking a representation against a former client is that it may not be done if there is a "reasonable probability" that the representation would cause the lawyer to violate the obligations owed the former client under Rule 1.05. Thus, for example, if there were a reasonable probability that the subsequent representation would involve either an unauthorized disclosure of confidential information under Rule 1.05(b)(1) or an improper use of such information to the disadvantage of the former client under Rule 1.05(b)(3), that representation would be improper under paragraph (a). Whether such a reasonable probability exists in any given case will be a question of fact.

4A. The third situation where representation adverse to a former client is prohibited is where the

39

representation involved the same or a substantially related matter. The "same" matter aspect of this prohibition prevents a lawyer from switching sides and representing a party whose interests are adverse to a person who disclosed confidences to the lawyer while seeking in good faith to retain the lawyer. The prohibition applies when an actual attorney-client relationship was established even if the lawyer withdrew from the representation before the client had disclosed any confidential information. This aspect of the prohibition includes, but is somewhat broader than, that contained in paragraph (a)(1) of this Rule.

4B. The "substantially related" aspect, on the other hand, has a different focus. Although that term is not defined in the Rule, it primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person. It thus largely overlaps the prohibition contained in paragraph (a)(2) of this Rule.

5. Paragraph (b) extends paragraph (a)'s limitations on an individual lawyer's freedom to undertake a representation against that lawyer's former client to all other lawyers who are or become members of or associated with the firm in which that lawyer is practicing. Thus, for example, if a client severs the attorney-client relationship with a lawyer who remains in a firm, the entitlement of that individual lawyer to undertake a representation against that former client is governed by paragraph (a); and all other lawyers who are or become members of or associated with that lawyer's firm are treated in the same manner by paragraph (b). Similarly, if a lawyer severs his or her association with a firm and that firm retains as a client a person whom the lawyer personally represented while with the firm, that lawyer's ability thereafter to undertake a representation against that client is governed by paragraph (a); and all other lawyers who are or become members of or associates with that lawyer's new firm are treated in the same manner by paragraph (b). See also paragraph 19 of the comment to Rule 1.06.

6. Paragraph (c) addresses the situation of former partners or associates of a lawyer who once had represented a client when the relationship between the former partners or associates and the lawyer has been terminated. In that situation, the former partners or associates are prohibited from questioning the validity of such lawyer's work product and from undertaking representation which in reasonable probability will involve a violation of Rule 1.05. Such a violation could occur, for example, when the former partners or associates retained materials in their files from the earlier representation of the client that, if disclosed or used in connection with the subsequent representation, would violate Rule 1.05(b)(1) or (b)(3).

7. Thus, the effect of paragraph (b) is to extend any inability of a particular lawyer under paragraph (a) to undertake a representation against a former client to all other lawyers who are or become members of or associated with any firm in which that lawyer is practicing. If, on the other hand, a lawyer disqualified by paragraph (a) should leave a firm, paragraph (c) prohibits lawyers remaining in that firm from undertaking a representation that would be forbidden to the departed lawyer only if that representation would violate subparagraphs (a)(1) or (a)(2). Finally, should those other lawyers cease to be members of the same firm as the lawyer affected by paragraph (a) without personally coming within its restrictions, they thereafter may undertake the representation against the lawyer's former client unless prevented from doing so by some other of these Rules.

8. Although not required to do so by Rule 1.05 or this Rule, some courts, as a procedural decision, disqualify a lawyer for representing a present client against a former client when the subject matter of the present representation is so closely related to the subject matter of the prior representation that confidences obtained from the former client might be useful in the representation of the present client. See Comment 17 to Rule 1.06. This so-called "substantial relationship" test is defended by asserting that to require a showing that confidences of the first client were in fact used for the benefit of the subsequent client as a condition to procedural disqualification would cause disclosure of the confidences that the court seeks to protect. A lawyer is not subject to discipline under Rule 1.05(b)(1), (3), or (4), however, unless the protected information is actually used. Likewise, a lawyer is not subject to discipline under this Rule unless the new representation by the lawyer in reasonable probability would result in a violation of those provisions.

9. Whether the "substantial relationship" test will continue to be employed as a standard for procedural disqualification is a matter beyond the scope of these Rules. See Preamble: Scope. The possibility that such a disqualification might be sought by the former client or granted by a court, however, is a matter that could be of substantial importance to the present client in deciding whether or not to retain or continue to employ a particular lawyer or law firm as its counsel. Consequently, a lawyer should disclose those possibilities, as well as their potential consequences for the representation, to the present client as soon as the lawyer becomes aware of them; and the client then should be allowed to decide whether or not to obtain new counsel. See Rules 1.03(b) and 1.06(b).

10. This Rule is primarily for the protection of clients and its protections can be waived by them. A waiver is effective only if there is consent after disclosure of the relevant circumstances, including the lawyer's past or intended role on behalf of each client, as appropriate. See Comments 7 and 8 to Rule 1.06.

### Rule 1.10. Successive Government and Private Employment

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation.

(b) No lawyer in a firm with which a lawyer subject to paragraph (a) is associated may knowingly undertake or continue representation in such a matter unless:

> (1) The lawyer subject to paragraph (a) is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

> (2) written notice is given with reasonable promptness to the appropriate government agency.

(c) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows or should know is confidential government information about a person or other legal entity acquired when

the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person or legal entity.

(d) After learning that a lawyer in the firm is subject to paragraph (c) with respect to a particular matter, a firm may undertake or continue representation in that matter only if that disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.

(e) Except as law may otherwise expressly permit, a lawyer serving as a public officer or employee shall not:

> (1) Participate in a matter involving a private client when the lawyer had represented that client in the same matter while in private practice or nongovernmental employment, unless under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or

> (2) Negotiate for private employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially.

(f) As used in this rule, the term "matter" does not include regulation-making or rule-making proceedings or assignments, but includes:

> (1) Any adjudicatory proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge accusation, arrest or other similar, particular transaction involving a specific party or parties; and

> (2) any other action or transaction covered by the conflict of interest rules of the appropriate government agency.

(g) As used in this rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.

(h) As used in this Rule, "Private Client" includes not only a private party but also a governmental agency if the lawyer is not a public officer or employee of that agency.

(i) A lawyer who serves as a public officer or employee of one body politic after having served as a public officer of another body politic shall comply with paragraphs (a) and (c) as if the second body politic were a private client and with paragraph (e) as if the first body politic were a private client.

**Comment:**

1. This Rule prevents a lawyer from exploiting public office for the advantage of a private client.

law in another jurisdiction or resulting in lawyer discipline in another jurisdiction unless that conduct constitutes professional misconduct under Rule 8.04.

4. Normally, discipline will not be imposed in this state for conduct occurring solely in another jurisdiction or judicial system and authorized by the rules of professional conduct applicable thereto, even if that conduct would violate these Rules.

## IX. SEVERABILITY OF RULES

### Rule 9.01. Severability

If any provision of these rules or any application of these rules to any person or circumstances is held invalid, such invalidity shall not affect any other provision or application of these rules that can be given effect without the invalid provision or application and, to this end, the provisions of these rules are severable.

### Comment:

The history of the regulation of American lawyers is replete with challenges to various rules on grounds of unconstitutionality. Because many of these Rules, particularly those in Article VII, are interrelated to an extent, the voiding of a particular rule or of a single provision in a rule could raise questions as to whether other provisions should survive. Rule 9.01 makes it clear that these Rules should be construed so as to minimize the effect of a determination that a particular application or provision of them is unconstitutional. The process of amending the Texas Disciplinary Rules of Professional Conduct is unusually difficult and time consuming and a decision invalidating one provision or application of a rule should not be expanded unnecessarily so as to invalidate other provisions or applications. These Disciplinary Rules have the specificity found in statutes, and it is appropriate for Rule 9.01 to contain a provision, frequently found in legislation, that reasonably limits the effect of the invalidity of one provision or one application of a rule.